## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| **SCOTT LOREN LEVENTHAL,** | ) | **Case No. 21-55036** |
| | ) | |
| Debtor. | ) | |

## RECEIVER'S (A) ACCOUNTING; (B) EMERGENCY MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE; (C) EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND (D) MOTION FOR EXPEDITED HEARING

**COMES NOW** S. Gregory Hays, not individually, but as Pre-Petition Receiver ("**Receiver**") appointed pursuant to the Order Appointing Receiver dated May 26, 2021 ("**Receiver Order**") that was entered by the Superior Court of Cobb County Georgia (the "**Superior Court**") in Case Nos. 05-1-06700 and 18-1-5244 (the "**Receivership**"), by and through counsel, and files this *Receiver's (A) Accounting; (B) Emergency Motion for Order Excusing Receiver from Compliance with Section 543 of the Bankruptcy Code; (C) Emergency Motion for Relief from the Automatic Stay and (D) Motion For Expedited Hearing* as follows:

### PRELIMINARY STATEMENT AND RELIEF REQUESTED

1.      On May 26, 2021, the Superior Court appointed S. Gregory Hays as the Receiver for the estate of Scott L. Leventhal ("**Leventhal**"), the debtor herein. A copy of the Receiver Order is attached hereto as **Exhibit A** and incorporated herein by reference.[1]

---

[1] All pleadings relating to the Receivership were filed under two separate case numbers 18-1-5244 and  05-1-6700. Each pleadings attached hereto were filed in both cases.

2.      Incident to the appointment of the Receiver at the request of Choate Construction Company ("**Choate**"), the Superior Court made several factual findings with respect to this Debtor as follows:

a.  that on November 21, 2016, the Superior Court in the matter styled *Choate Construction Company v. Interfinancial Midtown. Inc. et. al.*, CAFN: 005-1-6700-48, entered a Final Judgment (the "**Choate II Final Judgment**") against Leventhal "personally for manipulating the various businesses he owned and controlled to perpetrate a scheme of fraudulent transfers to avoid paying monies owed to Choate." *See* Receiver Order ¶ 2.

b.  That "Leventhal, both for himself and for the companies he owns, manages, and controls, has repeatedly withheld relevant information from Choate and intentionally misrepresented and misled both Choate and the Court at to what assets he possesses for satisfaction the Choate II Final Judgment, rendering Choate's efforts to employ its legal remedies meaningless." *See* Receiver Order ¶ 5.

3.      The Receiver Order further found that Leventhal was: a) dissipating assets charged with payment of the Choate II Final Judgment such as continuing to draw on a revolving line of credit that he issued to himself incident to his interest in Blue Horseshoe Investments, LLC ("**Blue Horseshoe**"), *see* Receiver Order ¶ 6; b) was subject to claims by his business partner in The Trillist Companies, Inc. ("**Trillist**"), Joseph Kavana, seeking to remove him as CEO/COO of Trillist *see* Receiver Order ¶ 7; and c) being sued for allegedly engaging in a scheme to divert assets from Choate, *see* Receiver Order ¶ 8.

4.    The Superior Court specifically stated that Leventhal had "Lied" on several occasions, including, in particular that he lied "about his assets" and he lied to "hide salary payments."  *See* Receiver Order ¶ 5(a) and (b).

5.    The Superior Court further found the following:

> Leventhal's established record in this case of manipulating the businesses that he owns and controls to engage in fraudulent transfers to avoid paying Choate, his ongoing misrepresentations about his available assets in post-judgment discovery to evade and render meaningless Choate's legal remedies, the lawsuits that he is embroiled in with Mr. Kavana suggesting the possibility that he is diverting assets into the companies he controls to avoid paying Choate, and his ongoing actions to dissipate of his assets and avoid making distributions that would be subject to Choate's charging order by incurring debts to the companies he owns, manages, and controls (specifically, Blue Horseshoe Investments, LLC) all constitute extraordinary circumstances and give rise to a manifest danger of continued loss, destruction, and dissipation of and material injury to Choate and Choate's interests in Leventhal's assets.

*See* Receiver Order ¶ 9.

6.    The Superior Court also found that the

> record also reflects an imminent and urgent need for the appointment of a receiver because Leventhal is actively marketing and on the cusp of selling two of Trillist's primary assets, the YOO on the Park project and property located at 1122 Crescent Avenue, Atlanta, GA, in which he holds an interest and stands personally to benefit financially from their sale through his ownership and control of The Trillist Companies, Inc., Tivoli Investment Holdings, LLC, and Blue Horseshoe Investments, LLC.

*See* Receiver Order ¶ 10.

7.    It should be noted that the Superior Court entered the Receiver Order only after it had taken an interim step of appointing a Special Master.  It was only after Leventhal disregarded and refused to comply with the Special Master's requests that the Superior Court entered the Receiver Order.  The Receiver Order contains a broad array of remedies imposed upon Leventhal

by a Court clearly frustrated with Leventhal's deceptions and failures to comply with Court rules and orders.  The Superior Court stripped him of control of his membership and ownership interests and placed the voting rights for those entities in the hands of the Receiver in order to ensure that his misconduct could not continue.

8.      YOO on the Park was already under a Letter of Intent with a potential buyer as of the appointment of the Receiver (the "**YOO Transaction**"). *See* Receiver Order ¶ 11. Since being appointed, the Receiver has served as a reliable fiduciary in the YOO Transaction with the ability to ensure that proceeds from the YOO Transaction are not diverted away from creditors of Leventhal. With the assistance and involvement of the Receiver, the agreements relating to the sale of the YOO on the Park property have been fully executed and the sale of this property is scheduled to close on July 27, 2021.[2]

9.      Although Leventhal was ordered to produce documents and information to assist the Receiver, *see* Receiver Order ¶¶ 11-14, and consistent with his past failures to comply with demands from the Special Master, Leventhal failed to fulfill his obligations under the Receiver Order.

10.     The Receiver filed two reports with the Superior Court outlining the work performed by the Receiver as well as Leventhal's non-compliance with the Receiver Order.   A true and correct copy of the First Report is attached as **Exhibit B** and a true and correct copy of the Second Report is attached as **Exhibit C**.

---

[2] Just prior to the filing of this Accounting, the Receiver was advised that the approval of the Atlanta Development Authority, the only remaining condition to close the sale, might not be obtained until August which would delay the closing to late August.

11.     Despite numerous attempts to obtain Mr. Leventhal's voluntary cooperation with the Receiver Order, Leventhal refused to cooperate with the Receiver.   During the Receiver's one visit to the Trillist offices, Leventhal showed the Receiver the files maintained by him related to his businesses.  Despite Leventhal's promise to make those records available to the Receiver made in the presence of his counsel and the fact that such records are apparently readily available, Leventhal simply refused to permit the Receiver to have access to such records in direct violation of the Receiver Order.  As a result, on June 22, 2021, the Receiver filed his *Emergency Motion by Receiver for Order: 1) to Show Cause Why Scott L. Leventhal Should Not be Held in Contempt; 2) Holding Scott L. Leventhal in Contempt; and 3) Granting Other Relief and Brief in Support Thereof*  (the "**Contempt Motion**") to find Leventhal in contempt for failing to comply with the Receiver Order.  A true and correct copy of this Motion is attached as **Exhibit D**.

12.     On July 1, 2021, the Superior Court, after denying Motions to Stay the Receivership filed by Leventhal, issued a Rule Nisi directing a hearing on the Contempt Motion for July 23, 2021.   A true and correct copy of the Rule Nisi is attached hereto as **Exhibit E**.   Four days later, and over a holiday weekend, Leventhal filed this case.

13.     The Receiver respectfully submits that this Bankruptcy Case is an improper attempt to: a) take control of real estate assets from the Receiver in order to divert them from creditors and b) to avoid the consequences of the Contempt Motion without taking steps to purge himself of such contempt.

14.     For the reasons set forth herein, the Receiver requests that the Court, in accordance with § 543(d) of the Bankruptcy Code:

      a.   Accept the Accounting provided herein;

b.  excuse the Receiver from compliance with the turnover provisions of § 543 of the Bankruptcy Code and authorize the Receiver to continue to act as Receiver under the Receiver Order including the authority to hold and administer all of Leventhal's direct and indirect membership, ownership or other interests in any limited liability company or company, which include but are not limited to: (i) The Trillist Companies, Inc.; (ii) Trillist Realty Advisors LLC; (iii) Blue Horseshoe, LLC, Series A; (iv) Tivoli Investment Holdings, LLC and (v) 13th Street Holdings LLC;

c.  authorize the Receiver to continue to administer the Receivership Estate as set forth in Receiver Order including, but not limited to, ¶¶ 8(A), (C), (D) and (E) of the Receiver Order.

d.  Alternatively, at a minimum, the Receiver requests that he be permitted to complete the YOO on the Park Transaction and preserve all funds otherwise payable to Leventhal entities from that transaction, to do the same for 1122 Crescent Avenue and 1138 Peachtree Street properties as identified below and to manage the wind down of Trillist Companies, Inc., including, if necessary, exercising the voting rights held  directly or indirectly by Leventhal in each of those transactions;

e.  lift the automatic stay to permit the Receiver to continue to act as Receiver as may be permitted by this Court and also, in particular, to pursue the Contempt Motion; and

f.  for an expedited hearing on the relief sought herein.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction to consider this mater pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ADDITIONAL BACKGROUND AND § 543 ACCOUNTING

### A. Real Estate Indirectly Controlled by Leventhal.

### 1. <u>YOO on the Park.</u>

16.     Based on the Receiver's investigation, and as noted in the financial statements filed by the Debtor, Leventhal controls, through several limited liability companies, three real estate developments, all located in midtown Atlanta.  Mr. Leventhal conducts business primarily through the Trillist Companies, Inc., a Delaware Corporation.   Mr. Leventhal is a 50% owner of Trillist and serves as its President with authority to manage the day to day affairs of Trillist.    The remaining 50% interest is held by Jose Kavana, a Florida resident who serves as Chairman. Management of this entity is governed through a Shareholder Agreement, a copy of which has been delivered to the Receiver.

17.     The first, and largest, development in which Trillist and Mr. Leventhal is involved is YOO on the Park.  This property is a recently developed,  multi-story apartment complex located at 207 13th Street, Atlanta, Georgia 30309.   The ownership and control of this entity is complex and several parties have interests in this property.  A chart showing the ownership and equity interests in YOO on the Park is attached as **Exhibit F**.  Mr. Leventhal's interest in this property is held through Tivoli Investment Holdings, LLC ("**Tivoli**") a Delaware Limited Liability

Company.  The Receiver requested, but was not provided with, the operating agreement for Tivoli. The Receiver is advised and informed that Tivoli is either controlled or managed by Blue Horseshoe LLC, Series A, a series Wyoming Limited Liability Company ("**Blue Horseshoe**"), in which Leventhal is the owner of Series A and Ron Leventhal, his father, is the owner of Series B.

18.    In support of a Motion filed by an entity named 13th Street Holdings LLC, ("**13th Street Holdings**") Mr. Leventhal and his mother Dorothy Leventhal filed affidavits with the Superior Court in which they alleged that Tivoli was indebted to 13th Street Holdings.  Leventhal also stated that he held a nominal interest in 13th Street Holdings which is controlled by his mother, Dorothy Levenson.  Mrs. Dorothy Leventhal further asserted that Scott Leventhal separately owed her over $450,000.  Finally, 13th Street Holdings filed a claim against the Receivership based on these affidavits and separately asserted that 13th Street Holdings had advanced $1 Million to Blue Horseshoe.  These affidavits and the claim are attached as **Exhibit G**.

19.    A contract to sell YOO on the Park for $112,500,000 has been executed with the involvement of the Receiver and is expected to close on July 27, 2021 although, as noted above, there is some chance that this closing will be delayed until late August.  The Receiver was extensively involved in the final negotiation of the sale agreement.   Indeed, the transaction was complicated by the resignation of the Jones Day law firm upon the appointment of the Receiver. Although Jones Day, which was Mr. Leventhal's historic real estate counsel, was given assurances that it would be paid for its work on this transaction, it appeared to have decided to drop Leventhal as a client and removed itself from the transaction entirely because of other amounts owed to it. The final stages of the sale process were managed by Atlantic American Federal Fund, LP, an equity participant in YOO on the Park.

8

20.     During the course of the Receivership, Mr. Leventhal provided the Receiver with two, complex waterfall analyses showing the flow of funds of this transaction[3].  The waterfalls show that a limited liability company named TPKG 13th Street Sponsor LLC ("**TPKG Sponsor**") would receive as much as $3.5 Million from the sale of YOO on the Park which would then be disbursed to entities owned by Kavana and Leventhal.  Disputes exist as to how these funds should be divided.  The waterfalls, and statements of Leventhal to the Receiver, estimate the payment to Tivoli (Leventhal's LLC) to be between $1.9 and $2.3 Million.

21.     The Receiver believed his role in the closing of the YOO Transaction to be critical. As evidenced in the waterfalls provided by Leventhal, the flow of funds out of this transactions will go through several layers of companies each with separate obligations.  For example, an entity named TPKG 13th Street Development LLC, which will be paid over $9 Million, will be required to make payments to investors before funds flow to TPKG Sponsor.  The Receiver, working with Kavana, had intended to ensure that no funds were diverted in this process to Leventhal entities. Indeed, there are several ways Leventhal could divert money through holdbacks and other devices. As examples of this, Leventhal had requested a "disposition fee" of $250,000 of which a "bonus" of $50,000 be paid to his girlfriend who works at YOO at the Park.  Kavana claims he was unaware of these items.   Second, in the first waterfall provided by Leventhal, no holdback was provided for withholding of taxes.  In the second waterfall, approximately $1.3 Million was set aside for tax withholding, presumably at least some of which would revert to Leventhal since these are each

---

[3] Due to confidentiality and other concerns, the Receiver will not attach these documents to this pleading but will make them available for Court review at any hearing on this Motion.

pass through entities.   As far as the Receiver is aware, there has been no analysis of any withholding obligations.

22.     Once the YOO Transaction is closed, Trillist's management of YOO on the Park will come to end along with a revenue stream from its management of this property.   Trillist will itself then be in a wind down mode with the need to reduce employees and expenses and conserve cash.  It will then be managing only the much smaller property at 1122 Crescent which is being sold.  Again, the Receiver expected to be extensively involved in this process to ensure that cash was preserved for the benefit of creditors of Leventhal.

23.     To the extent that Leventhal were to proffer to hold some unspecified amount of money at some level of the waterfall in an effort to avoid either the continuation of the Receivership or the appointment of a third fiduciary to manage his affairs, this simply would not be enough.  The transactions are complex and will need to be managed by a fiduciary at every level as well as the wind down of Trillist in which there will likely be disputes between Leventhal and Kavana regarding the disbursement of its assets.

24.     It appears that should Mr. Leventhal remain in control of the YOO Transaction, there is a significant risk that he will pay any funds received by Tivoli to 13th Street Holdings for the benefit of his mother and himself and deprive his personal creditors of access to these funds for payment of valid claims.   Indeed, this scheme is clearly evident in Exhibit G.   Although requested by the Receiver, 13th Street Holdings has never provided either its operating agreement or any proof of the family loans described in Exhibit G.

25.     In order to protect these funds from diversion, the Receiver had reached an agreement with Kavana to freeze funds otherwise distributable to Tivoli, Leventhal, Kavana or

any other insider entity until disputes between them could be resolved.  The Receiver's intent was to recover as much as possible from any possible share payable to Leventhal or any entity controlled by him for the benefit of Leventhal's creditors.

2.  **1122 Crescent Avenue.**

26.      A second property controlled by Mr. Leventhal is located at 1122 Crescent Avenue, Atlanta.  An organizational chart showing ownership of this property is attached as **Exhibit H**.

27.      As noted in that chart, an entity named Angel Oak Prime Bridge, LLC ("**Angel Oak**") is a preferred member of 1122 Crescent Land Holdings, LLC, a Georgia Limited Liability Company which is the actual owner of the property; however,  Mr. Leventhal has been in control of the management of this property.  After satisfaction of a first lien and the Angel Oak interest, any remaining proceeds would be payable to Trillist for division between Kavana and Leventhal.

28.      At present, this property consists of an older apartment building.  However, the property is currently for sale with the intention that it be redeveloped.   The Receiver has been advised that Kavana and Angel Oak each support a sale of this property.   Since the property is currently being marketed for sale, the Receiver will not provide further details regarding the status of the sale or expected recoveries except to state that it appears that Mr. Leventhal has interest in the outcome of the sale if the sale generates sufficient funds to make a distribution to Trillist. Again, these funds would then be  divided between Kavana and Leventhal.

29.      Shortly after the Receiver was appointed,  Angel Oak advised the Receiver that it wanted to remove Mr. Leventhal from control of the property due to a lack of information and

trust.  While the Receiver had such discussions with Angel Oak, no action had been taken by the Receiver on this issue at the time this Bankruptcy case was filed.

30.     The Receiver is further advised that the maturity date of the senior secured debt on the 1122 Crescent Property is November 1, 2021 and that time is of the essence in pursuing and completing a sale transaction; otherwise, a substantial fee, which could be as much as $500,000 for a six month extension,  will likely have to be paid for any extension of the maturity date.

31.     The Receiver cannot estimate Mr. Leventhal's share of the proceeds of any sale at this time since no contract has been finalized.

### 3.  1138 Peachtree

32.     This property is currently a parking lot in midtown Atlanta with significant development potential.   The Receiver's analysis of this property is preliminary, although a chart showing the ownership structure is attached as **Exhibit I**.   The Receiver is advised and informed, but has not confirmed, that NELL Partners, Inc. and Northside Guaranty LLC has sold their interests in this property to BHI 1138 Peachtree LLC and that BHI 1138 Peachtree LLC is the sole holder of the 49% interest in 1138 Peachtree Land Holdings, LLC, the owner of this property. Crescent Street, LLC, which owns the remaining 51% of 1138 Peachtree Land Holdings, LLC is an unrelated entity which manages the parking lot currently located on this property and which is entitled to a fee or preferred dividend if the property is sold.

33.     Ultimately, Leventhal's interests in this property are held through Blue Horseshoe. As noted above, 13th Street Holdings asserts claims against Blue Horseshoe.  *See* Exhibit G.

34.     The Receiver cannot estimate the value of Mr. Leventhal's interest in this property nor provide a timetable as to when any value would be realized.  However, it does appear that this property has significant development potential and possibly significant value to Leventhal.

35.     Although Trillist is not apparently involved in 1138 Peachtree, the Receiver is advised that Kavana alleges: (i) that Leventhal has improperly pledged assets from 1122 Crescent as repayment to investors in 1138 Peachtree and (ii) that Leventhal's development of this property outside of Trillist was a violation of the Trillist shareholder agreement.   The Receiver had not completed his investigation of these claims as of the Petition Date.

## B.  **The Kavana Disputes**

36.     As noted above, Leventhal is a fifty-percent owner of Trillist.  The other 50% owner is Jose Kavana.  Mr. Kavana and Leventhal are currently embroiled in two contentious lawsuits in the State of Florida:

      a.   *Leventhal v. Kavana*, United States District Court for the Southern District of Florida, Case No. 21-cv-60349-RKA ("Federal Case").

      b.   *KGH International Development, LLC[4] v. Scott Leventhal, et.al.*, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2021-011007 ("State Case").

---

[4] This entity is owned by Kavana.

37.     As part of the authority granted to him in the Receiver Order, the Receiver engaged the law firm of Genovese, Joblove & Battista to represent his interests in each of those cases and that firm has appeared in each case on behalf of the Receiver.

38.     With respect to the Federal Case, Leventhal entered into an agreed "*Order Resolving Expedited Motion for Temporary Restraining Order or, in the alternative, A Preliminary Injunction*" ("**Agreed TRO Order**") on June 28, 2021, a true and correct copy of which is attached hereto as **Exhibit J**.   Among other things, the Agreed TRO Order required Leventhal to provide information and access to Mr. Kavana, limited Mr. Leventhal's ability to manage the business affairs of Trillist without the consent of Mr. Kavana and provided that Mr. Leventhal's salary from Trillist would terminate effective August 31, 2021.  The Receiver was involved in the negotiation of the Agreed TRO Order and approved the form of same.

39.     As of the Petition Date, discovery was on-going in the Federal Case and Mr. Leventhal had just completed an initial document production to Kavana.   Kavana has apparently separately conducted extensive third party discovery.

40.     Leventhal was represented by Fox Rothschild in the Federal Case.  According to the information provided to date, Fox Rothschild has unpaid legal bills totaling over $120,000.   It was not clear to the Receiver how Leventhal could fund this litigation and the Receiver therefore worked with Kavana's counsel and Leventhal's counsel to stay the litigation pending a closing of the YOO Transaction.

41.     An Amended Complaint in the State Court case was filed on June 8, 2021, a true and correct copy of which (without exhibits) is attached hereto as **Exhibit K**.   The Amended Complaint alleges, *inter alia*, that Leventhal engaged in an "elaborate scheme" to "divert assets

from his creditors" and seeks injunctive and other relief against Leventhal as well as Tivoli and Trillist.

42.     Through extensive negotiations and discussions between the Receiver's counsel and Kavana's counsel, the Receiver was able to procure an agreement with Kavana's lawyers for an extension of time to respond to the Amended Complaint to and through August 16, 2021.   The reason for this lengthy extension was to permit the closing of the YOO Transaction to take place and then determine how best to resolve or adjudicate the disputes between Kavana and Leventhal related to any remaining funds as well as managing the distribution process.   The Receiver's intent, as a fiduciary, was to preserve and maximize the value of Leventhal's interests for the benefit of his creditors.   Again, the Receiver did not see how Leventhal could fund this litigation in light of the large balance owed to Fox Rothschild.

### a.  <u>The Instant Bankruptcy Case</u>

43.     The Receiver was advised of the filing of this case late in the afternoon of July 5, 2021, a federal holiday.   At the time the case was filed, (i) the hearing on the Contempt Motion had been scheduled, (ii) the Receiver was pressing to take Mr. Leventhal's deposition,  (iii) the Receiver had reached agreements with Kavana's  lawyer to freeze funds from the closing of the YOO Transaction; (iv) the Receiver was actively engaged in the process of selling 1122 Crescent; (v) the Receiver had begun the process of selling the real property in which Mr. Leventhal resides; and (vi)  as evidenced in the schedules, Leventhal had no money to pay his lawyers.

44.     Although the case is filed a reorganization under Subchapter V of the Bankruptcy Code, the actual business assets which would fund any reorganization are not before the Court. Further, the Receiver is advised and informed that Mr. Leventhal now takes the position that the

Agreed TRO Order no longer applies to him and it is clear that he has used this bankruptcy filing to re-assert full control over the labyrinth of entities he uses to shield assets from creditors and to avoid contempt sanctions from the Cobb County Superior Court.

### C. **Accounting Required by §543 of the Bankruptcy Code**

45.     The efforts of the Receiver to identify, and take control over of the Receivership Assets were thwarted by the failure of Leventhal to fully comply with the Receiver Order. Because of Leventhal's refusal to cooperate and refusal to provide all information requested by the Receiver, the Receiver is unable to account to this Court for all Receivership Assets that may be subject to the Receiver Order and can only account for those assets which the Receiver has identified to date.

46.     Below is an accounting of property of Leventhal or proceeds, offspring, rents, or profits of such property that came into the possession, custody, or control of the Receiver pursuant to § 543:

       a.   Shareholder interest in The Trillist Companies, Inc. The Receiver does not have possession of any certificates evidencing these shares.

       b.   Membership interest in Series A of Blue Horseshoe LLC: The Receiver has only a copy of the Operating Agreement for this entity and does not have possession of any certificates evidencing these shares or know whether such certificates exist.

       c.   Membership interest in Tivoli Investment Holdings, LLC: The Receiver does not have a copy of the Operating Agreement for this entity and does not have

possession of any certificates evidencing these shares or know whether such certificates exist.

    d.   <u>Membership interest in 13th Street Holdings, LLC</u>:  The Receiver does not have a copy of the Operating Agreement for this entity and does not have possession of any certificates evidencing these shares or know whether such certificates exist.

    e.   <u>Residence located at 5887 Riverstone Circle, Atlanta, Georgia 30339</u>:  This townhouse is subject to competing lien claims from Choate and Mrs. Dorothy Leventhal, the Debtor's mother, with likely no equity available to unsecured creditors of the Debtor;[5]

    f.   <u>Rolex Watch valued at $5,000</u>.  Leventhal willfully disobeyed the Receiver Order and failed to turn the watch over to the Receiver and Leventhal remains in possession of same.

    g.   <u>Cadillac Escalade.</u> This car is located in Hampton Island, Georgia and the value is unknown.  Leventhal remains in possession of this asset.

    h.   <u>Approximately 7 – 10 guns and firearms:</u>  Leventhal willfully disobeyed the Receiver Order in failing to account to the Receiver for these guns and firearms and Leventhal remains in possession of same.  The Receiver is informed and

---

[5] A summary of the Receiver's investigation of the title to this residence is attached as Exhibit 2 to the Second Report.  As set forth therein, the Receiver had concluded that Mrs. Leventhal's security interest in the house had reverted to the Debtor and that Choate's judgment lien was in first position.

advised that Leventhal did not disclose these weapons in prior discovery with Choate.

i.   7 shares of Stock in Coca-Cola: The Receiver received these original shares of stock from Choate and remains in  possession of the stock certificates.

j.   Late Model Mercedes:  Leventhal advised the Receiver that he is leasing a late model Mercedes sedan for approximately $2,400 per month.  The Receiver has not been provided with any documents to verify the lease or Leventhal's interest in the car.

k.   Investment account at RobinHood with approximately $500:  Mr. Leventhal provided monthly statements for the past year. As of 5/31/21 the account had a value of $550.97. Leventhal traded minor positions in Bitcoin, AMC, GameStop and other securities

l.   Investment account at E*Trade:   The closing balance of this account, as of 4/30/21, was $277.68.

m.   Credit Cards:  The Receiver is in possession of two credit cards issued by Visa and American Express.  The Receiver believes that Leventhal was in possession of other personal credit cards as of the Petition Date which he had not turned over to the Receiver.

n.   Retirement Accounts:   Leventhal claimed he did not have any retirement or pension accounts but this has not been verified by the Receiver.

o.  <u>Cash:</u> Mr. Leventhal advised the Receiver that he had approximately $5,000 in cash in bank accounts at Renasant Bank and Bank of America.   Leventhal willfully disobeyed the Receiver Order in failing to turn this cash over to the Receiver and remains in possession of this cash, the amount of which was never verified by the Receiver.

p.  <u>Salary:</u>  Leventhal receives a salary of $190,000 per year from Trillist.  Per the Agreed TRO, this salary will end in August, 2021 and Kavana has actively contested Mr. Leventhal's authority to pay a salary to himself from Trillist. Indeed, the source of funds to pay this salary, management fees from the YOO on the Park, will end as soon as that closing takes place.

q.  <u>Sources of Assets:</u>   Based upon the incomplete information available to the Receiver, the Receiver believes that the only sources of assets to Leventhal to fund distributions to creditors are from the disposition of the three real estate entities outlined herein and Trillist, each of which is subject competing claims and interests, including, allegedly, claims asserted by Leventhal's parents which have never been verified by any third party.

47.    Pursuant to the Receiver Order, the Receiver and its representatives extended significant effort and incurred certain fees and expenses that remain unpaid. As of the Petition Date, the unpaid fees and expenses of the Receivership Estate are as follows:

a.  Receiver: $51,910

b.  Hays Financial Consulting, LLC:  $18,500

      c.   Law Offices of Henry F. Sewell, Jr., counsel to the Receiver:  $50,020

      d.   Genovese, Joblove & Battista, Florida counsel to the Receiver: $5,000

48.    The Receiver and his professionals reserve the right to seek payment of these fees and expenses, along with post-petition fees and expenses, as permitted by the Bankruptcy Code, from this Bankruptcy Estate, depending upon the Court's consideration of the instant motion.

49.    The Receiver shows that a significant portion of the fees incurred by the Receiver and his professionals were directly caused by the failure of Leventhal to comply with the Receiver Order causing the Receiver to ultimately seek contempt relief against Leventhal.

50.    Based on the information available to the Receiver, the Receiver cannot confirm that this Debtor is eligible to seek relief under Subchapter V of the Bankruptcy Code ("**SubV**"). A debtor seeking relief through SubV is subject to a debt limit of $7.5 million. *See* 11 U.S.C. § 1182.  As a preliminary matter, the pre-petition financial statements of the Debtor, as of December 31, 2019 and as filed with this Court, show that this Debtor is solvent with a net worth of $17,143,678, including liabilities of $93,533,261.  (Docket No. 18, Page 7 of 129).

51.    Further, the Receiver is aware that Jones Day may be a creditor of Mr. Leventhal but is not scheduled.  Leventhal also never paid court-ordered fees to the Special Master appointed in the Superior Court Case.   Mrs. Dorothy Leventhal, Leventhal's mother has claimed to the Receiver that she is owed as much as Choate and asserted a lien in the approximate amount of $450,000 against Leventhal's home.  *see* Exhibit G, Paragraph 9 of Dorothy Leventhal Affidavit. Leventhal further advised the Receiver that he borrowed money from Blue Horseshoe through a

line of credit established for him by that entity which was purportedly funded by 13th Street Holdings.   These debts are not accounted for in the information filed to date.

52.      During the course of his administration as the Receiver, the Receiver has learned that Leventhal would pledge interests from real estate sales to other creditors.   For example, the Receiver has been advised by attorneys representing a group referred to as the "Sterling Investors" that Leventhal pledged assets from a disposition of 1122 Crescent to repay them for monies the Sterling Investors invested in 1138 Crescent.   Similarly, he apparently pledged some share of TPKG Sponsor to an employee of Atlantic American Federal Fund, LP in exchange for a loan.   It is not clear whether either of these conveyances were properly authorized.   It is the impression of the Receiver, although not yet verified through his currently incomplete investigation of the affairs of Leventhal, that he would promise funds from unrelated transactions in order to obtain money for himself or other transactions.  This would also be consistent with the findings of the Superior Court.  It is therefore currently impossible to know the full extent of non-contingent claims against Mr. Leventhal or against assets which he might claim to use to repay creditors in this Bankruptcy.

53.      The Receiver respectfully submits that the interests of the Debtor, creditors of the Debtor, the estate of the Debtor, and all parties in interest would be best served by the Court granting the relief sought herein and to allow the Receivership to continue or, at a minimum, to allow the Receiver to remain in possession of the direct and indirect membership and ownership interests of Leventhal in the many companies he uses to conduct his business.  These entities, as currently known by the Receiver, are discussed in the First and Second Reports of the Receiver.

**BASIS FOR RELIEF**

1) **The Receiver Should be Excused from Complying with the Turnover Requirements of 11 U.S.C. § 543 and Authorized to Retain the Receivership Assets incident to the**

21

**Receivership.**

54.     The Receiver is currently in possession, custody, or control of assets in the Receivership Estate that are also property of the Debtor and is therefore a custodian within the meaning of 11 U.S.C. § 101(11). *See In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995), as amended (Nov. 28, 1995)(finding that receiver was excused from turning over building to debtor).[6]  As noted above, these assets primarily consist of membership and ownership interests of corporations and limited liability companies.

55.     Under §§ 543(a), (b), and (c) of the Bankruptcy Code, a custodian of property of the estate with knowledge of a bankruptcy case is unable to make disbursements and must turnover and account for all property of the estate to the trustee.   The Receiver has now identified the assets in his possession.   The Receiver has not made any distributions to creditors and now asks for further instructions from this Court as to how the Receiver should proceed.

56.     § 543(d) of the Bankruptcy Code allows the Court to excuse a custodian from compliance with these provisions and to maintain possession, custody, and control of such property if doing so is in the best interests of creditors. *See* 11 U.S.C. § 543(d). In pertinent part, § 543(d) of the Bankruptcy Code provides that the Court "may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security

---

[6] Choate remains liable for the fees, costs, and expenses incurred during the course of the Receivership and any period in which the Receiver serves as custodian; however, a receiver who turns over possession of property of the debtor is entitled to file an administrative expense claim in the bankruptcy case for expenses, compensation, and legal and other fees. *See In re 29 Brooklyn Ave., LLC*, 548 B.R. 642, 644-45 (Bankr. E.D.N.Y. 2016).  The Receiver reserves the right to seek payment of outstanding expenses, compensation, and legal and other fees, including any right to file in the Superior Court a final report and account and request for an order approving compensation and reimbursement of fees, costs and expenses in the Receivership.

holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." *See* 11 U.S.C. § 543(d) (creating an exception where interests would be better served by permitting custodian to continue in possession of such assets). More specifically, § 543(d) allows a bankruptcy court to continue the prepetition receivership and is a modified abstention provision that reinforces policies set forth in the Bankruptcy Code section governing abstention. *See Lizeric Realty Corp.*, 188 B.R. at 506 (noting that § 543 "is a modified abstention provision that reinforces the policies underlying § 305 of the Code").[7]

57.    Here, the interests of creditors would be better served by permitting the Receiver to continue in possession, custody or control of the Receivership Assets through at least the consummation of the YOO Transaction and, indeed, through any disposition of each of 1122 Crescent and 1138 Peachtree.  The Receiver respectfully submits that he is advised and informed that several of Mr. Leventhal's creditors will support this Motion and will oppose Leventhal remaining in control of his interests in the real estate investments outlined herein.

58.    Although a SubV Trustee has been appointed herein, the SubV Trustee has limited powers and the Debtor remains in possession of his assets.  Indeed,  Leventhal has apparently reasserted control over his membership interests, including now reneging on the Agreed TRO Order entered just prior to the Petition Date.

59.    The Receiver, who was the second fiduciary appointed by the Superior Court, is already in place and ready to conclude the YOO Transaction, pursue the sales of 1122 Crescent

---

[7] "Section 543(d)(1) excepts a custodian from the turnover requirements of § 543(b) if the interests of creditors and equity security holders, if the debtor is solvent, would be better served by permitting the custodian to continue in possession, custody or control of such property." *Id*.

and 1138 Peachtree, wind down the affairs of Trillist in cooperation with Kavana and to continue the administration of the Receivership Estate.  As found by the Superior Court, this Debtor has in the past manipulated assets to engage in fraudulent transfers to avoid paying creditors and circumstances indicating an imminent and urgent need for a fiduciary to administer the assets of the Debtor, particularly the direct and indirect membership interests and ownership interests in the numerous limited liability companies managed by Leventhal.  Engaging a new party to administer the property of the estate will result in additional delay and expenses and may disrupt the YOO Transaction, delay the sale of 1122 Crescent, risking a default to the secured lender, result in diminution of assets from Trillist and cause the assets to be diverted away from creditors.

60.    The Receiver respectfully submits that this Debtor has come to this Court with unclean hands and that under the circumstances the interests of creditors and parties-in-interest would be better served by excusing the Receiver from complying with the turnover requirements of § 543 of the Bankruptcy Code and permitting the Receiver, pursuant to the terms of the Receiver Order, to continue as Receiver, including: a) in possession, custody and control of the assets in the Receivership Estate through the sale of three properties identified herein and the wind down of Trillist; and b) to manage the orderly administration of the assets in the Receivership Estate rather than by encumbering the limited resources of the Debtor with another layer of potentially significant professional fees and expenses from the Bankruptcy Case.

a) **Excusing the Receiver from the Turnover Provisions of  Section 543 of the Bankruptcy Code is in the Best Interests of Creditors and Parties-in-Interest**

61.    "When analyzing whether the interests of creditors would be better served by permitting a receiver to continue in possession, custody, or control of the debtor's property, courts have weighed a number of factors based on the specific facts of each case." *In re Falconridge*,

LLC, No. 07-BK-19200, 2007 WL 3332769, at *7 (Bankr. N.D. Ill. Nov. 8, 2007) (excusing

receiver from complying with § 543(b) and noting that the "the paramount and sole concern is the

interest of *all* creditors") (emphasis in original). In *Falconridge,* the court identified the following

seven factors:

> (1) The likelihood of a reorganization;
> (2) The probability that funds required for reorganization will be available;
> (3) Whether there are instances of mismanagement by the debtor;
> (4) Whether turnover would be injurious to creditors;
> (5) Whether the debtor will use the turned over property for the benefit of its creditors;
> (6) Whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and
> (7) The fact that the bankruptcy automatic stay has deactivated the state court receivership action.

*Falconridge*, 2007 WL 3332769, at * 7 (citation omitted).

62.    All seven of the factors identified in *Falconridge* weigh in favor of granting relief

pursuant to 11 U.S.C. § 543(d) to excuse the Receiver from the turnover requirements and

authorize the Receiver to remain in possession of the assets in the Receivership Estate.

63.    First, a reorganization is unlikely given that Mr. Leventhal has limited assets in his

own name and the assets which would fund any plan are outside the jurisdiction of the Bankruptcy

Court. Moreover, this case is expressly not a reorganization. The Receiver is advised and

informed that Leventhal's counsel is advising the press and interested parties that he intends to

fund plan payments through the liquidation of corporate assets not part of his bankruptcy estate.

As a preliminary matter, Leventhal has made similar promises in the past and a mere promise by

him to, at some point in the future, use monies from a sale of corporate assets, in which other

individuals and entities have ownership interests, has no credibility. Further, Leventhal plans on

selling these assets to pay creditors and thus already contemplates a liquidation and not a reorganization.   There are no assets or business in this Court to be reorganized and it is clear that this case was filed in bad faith to delay the Contempt Motion and frustrate the efforts of Mr. Leventhal's creditors to prevent dissipation of assets.[8]   In fact, per Exhibit G, it appears that Leventhal intends to have his share of these projects paid to either Tivoli or Blue Horseshoe for ultimate distribution to 13th Street Holdings.

64.    Second, the Debtor lacks sufficient capital to fund a reorganization.  Based on the information available to the Receiver, the Debtor has no funds on hand and it is unlikely that this Debtor can raise any funds from the business community given the findings of the Superior Court. To the best of the knowledge and information of the Receiver, Leventhal has apparently relied on loans from his parents and friends.  It can only be expected that if these insiders were to make any further loans, they would expect preferential treatment.

65.    In fact, the Receiver respectfully submits that substantial questions exist as to how Leventhal even funded the retainer necessary to file this case. As of the Petition Date, and as evidenced by his own Petition, Leventhal was unable to pay his lawyers defending him in the Superior Court and Federal Case and they are each owed substantial amounts of money.  Leventhal represented to the Receiver that he had only a few thousand dollars in cash which was frozen by the Receiver Order.   If he used his own money to fund the retainer, he both lied to the Receiver and violated a Court Order to fund the retainer.  If he took money from Trillist, he did so in violation of the shareholder agreement.  It is not clear whether he had authority to use funds from

---

[8] The Receiver will defer to creditors and parties in interest as to whether this Case should be dismissed or whether this Court should abstain from hearing it, although the Receiver is advised and informed that one or more creditors may seek dismissal of this case.

any other entity.   The Receiver believes that the most likely source of the retainer are his parents who are also his creditors and who stand to benefit if Leventhal is permitted to use this Bankruptcy Case to move assets through Tivoli to 13th Street Holdings.  Indeed, it is entirely likely that if his parents funded the filing of this case, they did  so to enable Leventhal to move the funds from the YOO on the Park transaction through Tivoli and ultimately to them without interference from the Receiver.

66.    Third, the necessity of the Receivership as a result of the conduct of the Debtor is evidence that the Debtor did not manage the assets in the Receivership Estate properly prior to the appointment of the Receiver and cannot be trusted to manage his assets in this case.  The findings in the Receiver Order clearly evidence the need for a fiduciary to manage the affairs of the Debtor. The Receiver respectfully submits that the creditors of this Debtor are in desperate need of a fiduciary shield to protect them from Leventhal's potential misconduct and that the best solution is to allow the Receiver to remain in place as opposed to appointing a third fiduciary to now manage his affairs.

67.    Moreover, the Court's remedies in this circumstance are limited.  §1112(b)(1) states that the court *shall* dismiss or convert a chapter 11 case for cause, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment of a trustee or an examiner under §1104 is in the best interests of the estate.   However, the remedy of appointing a Chapter 11 Trustee or Examiner is not available to this Court in this SubV Case because §1104 does not apply in a SubV Case pursuant to §1181(a).  The only remedies available herein are conversion or dismissal.  Alternatively, since a receiver was appointed for this Debtor pre-petition, there does not appear to be any statutory impediment to leaving the Receiver in place.

68.     Fourth, the application of the turnover provisions of § 543 would prevent the Receiver from participating in the imminent closing of the YOO Transaction and ensuring that the proceeds thereof are not diverted away from creditors of the Debtor. The risk of diverted assets places at risk the potential repayment of creditors of the Debtor.   Further, the Receiver is situated and prepared to promptly pursue a sale of 1122 Crescent and the wind down of Trillist.  Turnover may also be injurious to creditors given the additional layer of administrative expenses that would be incurred from having a new court-appointed fiduciary administer the property of the Debtor.

69.     Indeed, one of the strengths of the Receiver Order is that it places the Receiver in control of Leventhal's ownership interests and voting rights.  Using this authority, the Receiver has been able to successfully interact with Mr. Leventhal's counter-parties in the numerous entities in which he is involved and manage the wind down of his affairs.   The Receiver also had the authority to investigate the claims of his parents against entities through which funds would flow and, in fact, to freeze and escrow funds until disputes could be resolved.   As noted above, the flows of funds in these transactions will be complex and it is important that a person or entity with authority have the authority to freeze or escrow funds at all levels.   The Receiver had reached preliminary agreements to freeze funds flowing out of the YOO Transaction (for both Kavana and Leventhal) until disputes could be resolved and was further working with the counter-parties in the 1122 Crescent property regarding the sale of that property.   Due to this bankruptcy filing, Leventhal now appears to be asserting unfettered control of his membership interests.  The Receiver respectfully submits that the Receiver's granting of control over the ownership and membership interests was of critical importance and should be restored immediately.

70.     Fifth, it is not known whether the Debtor would use the proceeds from the YOO Transaction or other sales for the benefit of creditors; however, the track record of the Debtor in avoiding the payment of Choate suggests that it may be an issue.

71.     Sixth, there are no avoidance issues raised with respect to property of the Debtor that cannot be dealt with in the Superior Court.  In fact, the Superior Court is active and involved in this case and interested in moving it along.

72.     Finally, the deactivation of the Receivership as to property of the Debtor as a result of the automatic stay would cause additional expense and delay. Given that the Superior Court has found that Leventhal  has a record of manipulating the businesses that he owns to engage in fraudulent transfers to avoid paying creditors and circumstances still exist to justify the need for the Receiver in the YOO Transaction, cause exists to modify the stay pursuant to 11 U.S.C. §362(d)(1) to allow the Receiver to remain as Receiver.   If nothing else, the Receiver should remain as Receiver to at least consummate the YOO Transaction and pursue the sale of each of 1122 Crescent Avenue and 1138 Peachtree Street and wind down of Trillist.   Indeed, the Debtor has failed to account for or demonstrate the ability to adequately protect the property of the Debtor that is subject to the Receivership Estate and is otherwise unable to demonstrate that the proceeds of the YOO Transaction will be utilized to pay the creditors of the Debtor. To the extent that relief from the stay is necessary, the automatic stay should be modified to authorize the Receiver to consummate the YOO Transaction.

73.     Since the Receiver's appointment, Leventhal has attempted to disparage the Receiver as an agent of Choate.  A reading of the Receiver Order demonstrates that this is not the situation and that the Receiver is charged as a fiduciary for Leventhal's assets.  As this Court is

well aware, the Receiver appointed by the Superior Court is an experienced fiduciary, regularly serving as a Trustee in this Court with extensive experience in the liquidation of assets and establishment of procedures to pay creditor claims and determine priorities.  Among other tasks, the Receiver, in consultation with Leventhal's creditors and under the supervision of the Superior Court, has already identified the following items as requiring investigation and follow up by the Receiver:

    a.   Prevent further fraud or dissipation of assets;

    b.   Preserve assets from pending real estate transactions and wind down of Trillist;

    c.   Take physical possession of documents and electronic data;

    d.   Establish budget for Leventhal living expenses as contemplated in Receiver Order;

    e.   Manage dispute resolution of Kavana claims and negotiate or litigate final resolution of those issues;

    f.   Determination of the validity and priority of claims asserted by parents through 13th Street Holding;

    g.   Determine validity and priority of secured claims against residence and selling the residence;

    h.   Investigate and determine possible additional third party claims against Leventhal;

    i.   If the Leventhal parents directly or indirectly assert claims against Leventhal assets, conduct forensic accounting examination with respect to related Leventhal entities including Tivoli, Blue Horseshoe and 13th Street Holding since inception;

    j.   Investigate line of credit purportedly established for Leventhal through Blue Horseshoe**;**

    k.   Work with creditors to prepare and submit distribution plan to Superior Court based upon asset recoveries and priority of claims.

74.    Under the circumstances, excusing turnover is clearly in the best interests of creditors and, as such, the Receiver should be excused from the turnover requirements and permitted to remain in possession, custody, and control of the assets in the Receivership Estate.

**b) The Terms of the Receivership Should Remain Unchanged.**

75.    In instances where a receiver remains in possession of property under 11 U.S.C. § 543(d), the receiver may—depending on the circumstances—continue to administer the property in accordance with the existing receivership. *See, e.g., In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888, 895 (Bankr. S.D.N.Y. 1997) (noting that "receiver left in possession by the bankruptcy court has no role in the bankruptcy case other than to manage and preserve the property in his charge in accordance with the orders governing his appointment"). Indeed, a receiver tasked with selling certain property may remain in possession, custody, and control of the property through the consummation of the related sale. *See In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298, at *11 (Bankr. D.N.M. Apr. 26, 2013)(excusing turnover of assets by receiver and suspending case under § 305(a)(1) until the receiver has sold the assets). The Receiver Order

and terms of the YOO Transaction and sale of the assets in the Receivership Estate are consistent with the goal of the Bankruptcy Code to preserve value for the estate and overall transparency for all affected parties.

76.    Ample authority exists to excuse the Receiver from the turnover requirements of the Bankruptcy Code and leave the prepetition receivership in place pursuant to 11 U.S.C. § 543(d). *See, e.g., In re Packard Square LLC*, No. 17-52483, 2017 WL 4570699, at *11 (Bankr. E.D. Mich. Oct. 13, 2017) (allowing state court receiver to continue to perform and control the construction, completion, and ultimate stabilization of the project, under the supervision and control of the state court) *Picacho Hills*, 2013 WL 1788298, at *9  (suspending case until after the Receiver completed the sale of the assets of the debtor); *In re Basil St. Partners, LLC*, 477 B.R. 856, 864–65 (Bankr. M.D. Fla. 2012)(granting motion to excuse turnover and ordering receiver to remain in place until further order of the court to avoid potential damage).

## 2)    The Court Should Grant Relief from the Automatic Stay to Allow the Receiver to Continue to Act as Receiver and Pursue the Contempt Motion.

77.    "The automatic stay of § 362(a) applies unless one of the exceptions in § 362(b) is relevant." *Forsberg v. Pefanis*, No. CIVA107CV03116JOF, 2010 WL 2331465, at *1 (N.D. Ga. June 7, 2010)(noting that a contempt proceeding is outside the scope of the stay if it is to uphold the dignity of the court).

78.    A majority of courts "have considered whether the civil contempt proceeding is one intended to effectuate collection of a judgment or one which is intended to uphold the dignity of the court. If it is to uphold the court's dignity, the civil contempt order is outside the scope of the bankruptcy stay." *See Forsberg v. Pefanis*, No. CIVA107CV03116JOF, 2010 WL 2331465, at *1 (N.D. Ga. June 7, 2010). Indeed, where a contempt proceeding—such as the Contempt Motion "is

directed at defiance of a court order that involves the production of documents and not the payment of money, the bankruptcy filing does not stay contempt proceedings." *See Burr & Forman, LLP v. Perihelion Glob., Inc.*, No. CV-08-BE-0526-S, 2010 WL 11561483, at *1 (N.D. Ala. Jan. 15, 2010) (noting that bankruptcy filing does not stay power to enter contempt order to enforce pre-bankruptcy order to compel production where pre-bankruptcy relief did not involve the payment of money and that contempt proceeding may fall withing an exception under § 362(a) as "'the Court may conduct proceedings to uphold the dignity of the Court to vindicate the authority of the Court to enforce its orders'").

79.     Here, the Contempt Motion seeks to uphold the dignity of the Superior Court as it is directed at the production of documents and information required under the Receiver Order and seeks to remedy Leventhal's flouting of the judicial system and ignoring his obligations under the Receiver Order.   Just four days after the Superior Court issued a Rule Nisi setting a hearing on the Contempt Motion, Leventhal filed this Bankruptcy Case.  As such, the bankruptcy filing should not stay the power to enter a contempt order to enforce the pre-bankruptcy Receiver Order requiring the production of documents and information

80.     Cause also exists to modify the stay pursuant to 11 U.S.C. §362(d)(1).

81.     As set forth herein and in the exhibits attached hereto, cause exists to modify the stay pursuant to 11 U.S.C. §362(d)(1) to allow the Receiver to remain as Receiver and/or for the Receiver to seek contempt relief against Leventhal.  Indeed, the Debtor has failed to account for or demonstrate the ability to adequately protect the property of the Debtor that is subject to the Receivership Estate and is otherwise unable to demonstrate that the proceeds of his other properties will be utilized to pay the creditors of the Debtor. To the extent that relief from the stay is

necessary, the automatic stay should be modified to authorize the Receiver to act as Receiver and seek contempt relief against Leventhal.

## REQUEST FOR HEARING ON SHORTENED NOTICE

82.    The    Receiver submits this Motion pursuant    to §105(a) of    the    Bankruptcy Code, Bankruptcy Rule 9006(c)(1), and Bankruptcy Local Rule 9013-4 for the entry of an order shortening applicable notice periods and scheduling a hearing on an expedited basis to consider this Motion.

83.    The need for an expedited hearing on this Motion arises from the facts that the closing on the YOO on the Park transaction is imminent, this Debtor has a long history of deception and dissipation of assets, time is of the essence in moving forward the sale of 1122 Crescent and a need for protecting the status quo exists.

84.    Bankruptcy Local Rule 9013-4 provides that "[u]pon written motion and for good cause shown, the Bankruptcy Court may shorten the time for notice and hearing with regard to an emergency matter requiring immediate attention or a matter requiring expedited consideration." B.L.R. 9013-4. The Receiver requests that this Court shorten applicable notice periods and hear this motion as soon as possible.

85.    The Receiver believes that the relief requested in this Motion is in the best interests of the Estate and its creditors and will not unduly prejudice the rights of any party in interest in these cases. Conversely, to deny the request to consider this Motion on an expedited basis would likely result in irreparable harm to the creditors of this Estate. Given these circumstances, good cause exists for both an emergency hearing and granting this Motion.

86.     Accordingly, the Receiver respectfully requests an order from this Court shortening applicable notice periods and scheduling a hearing on an expedited basis.

## **CONCLUSION**

87.     Based on the foregoing, the Receiver submits that the relief requested herein is necessary and appropriate, is in the best interests of the creditors of the Debtor, and should be granted in all respects. To avoid any further disruption relating to the assets subject to the Receivership Estate and the Bankruptcy Case, the Receiver requests that the Court consider this matter on an emergency basis.

WHEREFORE, the Receiver respectfully requests that the Court: (1) grant the relief sought herein (2) reduce notice and schedule an emergency hearing hereon as soon as practicable after telephonic notice is provided to counsel for the Debtor and to the U.S. Trustee; (3) accept the accounting set forth herein; (4) excuse the Receiver from compliance with § 543 of the Bankruptcy Code and authorize the Receiver to remain as Receiver for the purposes authorized in the Receiver Order and (5) grant the Receiver such other and further relief as may be just and proper.

Dated: July 12, 2021.          Respectfully submitted,

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

*Counsel for S. Gregory Hays, not individually, but as Pre-Petition Receiver for the estate of Scott L. Leventhal*

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of July, 2021, the foregoing *Receiver's (A) Accounting;*

*(B) Emergency Motion for Order Excusing Receiver from Compliance with Section 543 of the*

*Bankruptcy Code; (C) Emergency Motion for Relief from the Automatic Stay and (D) Motion For*

*Expedited Hearing* was electronically filed using the Court's CM/ECF system, which sends a

notice of this document and an accompanying link to this document to all counsel of record

registered in this case through CM/ECF and was further served via first class, United States Mail

upon

J. Robert Williamson
Scroggins & Williamson, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA  30327

Office of the U.S. Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
Attn:  Vanessa A Leo, Esq.

Todd E. Hennings, Esq.
Subchapter V Trustee
Macey, Wilensky & Hennings, LLP
5500 Interstate Parkway North, Suite 435
Sandy Springs, GA 30328

*/s/ Henry F. Sewell, Jr.*

Henry F. Sewell, Jr.
Georgia Bar No. 636265

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053

hsewell@sewellfirm.com

*Counsel for S. Gregory Hays, not individually, but as Pre-Petition Receiver  for the estate of Scott L. Leventhal*