# EXHIBIT C

# RECEIVER'S SECOND REPORT

ID# 2021-0081351-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**18105244**

**Mary Staley Clark - 28**
**JUN 22, 2021 02:48 PM**

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

CHOATE CONSTRUCTION COMPANY,  )
                                                         )
         Plaintiff,                                    )
                                                         )
v.                                                      )   Civil Action No.:   05-1-06700
                                                         )   18-1-5244
INTERFINANCIAL MIDTOWN, INC.,       )
PIEDMONT FOUNTAINS, LLC, and SCOTT L. )
LEVENTHAL,                                       )
                                                         )
         Defendants.                               )

### RECEIVER'S AMENDED SECOND STATUS REPORT

COMES NOW, S. Gregory Hays, Receiver ("Receiver") herein appointed pursuant to this Court's Order dated May 26, 2021 ("Receiver Order") and files this Amended Second Status Report[1] as directed in Paragraph 49 of the Order as follows:

1. Immediately upon his appointment, the Receiver began the process of discharging his duties pursuant to the Receiver Order. The Receiver filed an Interim Report (the "First Report") with this Court on June 1, 2021 in order to advise the Court of his initial efforts in this case, of his retention of counsel and to clarify his understanding of his role in this case in light of the filing of a Notice of Appeal. Since filing the First Report, the Receiver has continued to discharge his duties in accordance with the Receiver Order.

2. Since the Receiver's appointment, the Receiver has been pursuing the following activities:

---

[1] The purpose of this Amendment is to correct a typographical error at Paragraph 40 of the Report as submitted to the Court on June 17, 2021 and to correctly identify each case into which the Amended Report is filed.

1

    a.  Ensuring compliance with the Receiver Order by Mr. Leventhal:

    b.  Monitoring the closing of the Yoo on the Park transaction;

    c.  Addressing issues arising from litigation in the State of Florida in which Mr. Leventhal is named as a party and in which his interests in the Trillist Companies are involved.

    d.  Investigating the Receiver's interest in Mr. Leventhal's Residence;

    e.  Investigating the status of transactions relating to property known as two developments known respectively as 1122 Crescent and 1138 Peachtree Street;

    f.  Reviewing information produced by Mr. Leventhal and identifying assets in the Receivership:

3. This Report will address each of these issues separately below and provide the status of Receiver fees and expenses to date.

## A. **Compliance with Receiver Order.**

4. As of the filing of this Report, Mr. Leventhal is <u>not</u> in compliance with the reporting requirements contained in the Receiver Order. In particular, Mr. Leventhal has not fully produced the information directed in Paragraphs 11 – 14 of the Receiver Order and has not provided the sworn statement directed by Paragraph 11. It should be noted that the deadline to produce and file these materials was extended from June 7 to and through June 11 through a consent order negotiated with the Receiver.

5. The Receiver is advised and informed that after the Receiver Order was entered, and with full knowledge of the Receiver Order and the requirements contained therein, Mr. Leventhal traveled to Mexico for a social function and was out of the country for several days. Although Mr. Leventhal made himself available for two phone calls

while in Mexico, Mr. Leventhal's absence from the country has significantly impeded his compliance with the Receiver Order and he has clearly willfully failed to comply with the Receiver Order.

6. Further, as noted in Exhibit "A", Mr. Leventhal has failed to permit the Receiver to inspect his residence and personal property to review and inspect records at his offices. Mr. Leventhal has also refused to turn over certain other documents and records which are detailed in Exhibit "A". The Receiver has notified Mr. Leventhal's counsel of the failure to provide this information in the letter attached hereto as Exhibit "A".

7. On the afternoon of June 11, counsel for the Receiver was contacted by Hylton DuPree counsel for Mr. Leventhal. Mr. DuPree stated that his client was concerned about filing a declaration with the Court due to confidentiality concerns. Counsel for the Receiver pointed out that this issue should have been raised earlier and advised Mr. DuPree that he should take up the confidentiality issue with the Court, but that the Receiver expected to receive an unredacted declaration and documents in accordance with the terms of the Receiver Order. The Receiver did not receive the requested information. Exhibit "A" does identify the information produced to date.

8. As of the filing of this Report, the existing deficiencies have not been cured and the Receiver has not received any response to Exhibit "A". The Receiver does not believe he has received complete disclosure from Mr. Leventhal of his assets and liabilities and therefore is unable to provide a complete summary of his assets and liabilities in this Report. The Receiver will therefore file a Contempt Motion with this Court to compel Mr. Leventhal's compliance with the Order. Upon compliance with the Receiver Order by Mr. Leventhal and full disclosure of his assets and liabilities, the Receiver will

3

update and supplement this Report.

**B. Yoo on the Park Transaction.**

9.  In his First Report to this Court, the Receiver advised the Court that a closing on the Yoo on the Park Transaction was scheduled for June 17, 2021. The Receiver has since participated in several discussions with the Parties to that transaction. As of the date of this report, the potential purchaser of Yoo on the Park has not executed a Purchase and Sale Agreement due to one, significant business issue remaining to be resolved. That issue concerns certain alleged defects in the construction of the building and a corresponding economic adjustment requested by the Purchaser. These issues are under negotiation.

10. The Receiver has addressed a separate issue which has arisen with respect to the Yoo on the Park Transaction. Shortly after the Receiver was appointed he consulted with the law firm of Jones Day, which represented the seller entity and Mr. Leventhal individually in connection with the transaction. The Receiver is advised and informed that Jones Day is Mr. Leventhal's long-time real estate counsel. Even though the Receiver provided an agreement to Jones Day that the Receiver would agree to pay Jones Day paid for its services out of the closing proceeds, Jones Day withdrew from representing the seller in the transaction. However, Jones Day did provide final comments to the proposed Purchase and Sale Agreement and the only remaining issue is the issue raised above with respect to alleged construction defects. The Receiver does not believe that this will be an impediment to closing the transaction

11. In addition, any sale, which will include an assignment of bond debt to the purchaser, must be approved by the Atlanta Development Authority. Due to the unresolved issue

with the purchaser, this transaction has not yet been submitted for approval to the Atlanta Development Authority.

12. Based on the information currently available to the Receiver, this transaction will not close until at least July 30, 2021 and it is not certain that it will close at all.

## C. Florida Litigation.

13. As set forth in the First Report, Mr. Leventhal is a party to two lawsuits pending the State of Florida styled as follows:

    a. *Leventhal v. Kavana*, United States District Court for the Southern District of Florida, Case No. 21-cv-60349-RKA ("Federal Case").

    b. *KGH International Development, LLC v. Scott Leventhal, et.al.*, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2021-011007 ("State Case").

14. The Defendant in the Federal Case is Joseph Kavana who asserts a 50% ownership interest in the Trillist Companies, Inc., Mr. Leventhal's primary operating company. Mr. Leventhal owns the remaining 50% of Trillist. Mr. Kavana is also the principal of KGH International Development, LLC, the Plaintiff in the State Case.

15. Very simply stated, the ultimate issues in each of the Federal Case and the State Case are (i) the duties and obligations of Messrs. Leventhal and Kavana to each other arising out of Trillist and (ii) the ultimate shares and claims of each of Mr. Kavana and Mr. Leventhal arising from the sale of Yoo on the Park and other properties in which Trillist or Mr. Leventhal is involved.

16. Much like the instant litigation, the litigation between Mr. Kavana and Mr. Leventhal has been contentious with each party accusing the other of deception, failures of

5

disclosure and breaches of contract. If this litigation were to continue it would be expensive and time consuming and could jeopardize the Yoo on the Park and other Trillist-related developments.

17. To date the primary role of the Receiver in these case has been to seek a stay of each lawsuit pending a closing of the Yoo on the Park transaction, as well as possibly other transactions, in order that the Parties can avoid expense. The Receiver does not have any information as to how Mr. Leventhal intends to fund the litigation with Mr. Kavana. The Receiver has retained the Florida law firm of Genovese Joblove & Battista, P.A. to represent him with respect to this matter to the extent that he is required to appear or take action in either case.

18. A hearing has been scheduled for June 28, 2021 in the Federal Case. The purpose of this hearing is to consider a request for a Temporary Restraining Order filed by Mr. Kavana seeking a stay and other relief pending the closing of the Yoo on the Park transaction. Mr. Kavana is also seeking discovery. Prior to the appointment of the Receiver, Mr. Leventhal, through counsel, had proffered to enter into a stay order. The Receiver has continued those discussions.

19. The State Case was filed just prior to the appointment of the Receiver. The Receiver has procured an extension of time for Mr. Leventhal and the other Defendants in that case to respond to the Plaintiff's Complaint until July 2.

20. The Receiver intends to continue to seek a stay of the litigation without compromising any legal position or claim of Mr. Leventhal and preserving the value of his interests with respect to Mr. Kavana.

21. The current situation is extremely troubling to the Receiver because the Receiver does

6

not have all of the documents and information necessary to support Mr. Leventhal's position with respect to his dispute with Mr. Kavana and to otherwise protect his position. Indeed, the disputes between Mr. Kavana and Mr. Leventhal are complex and involve years of business history between the two of them. The Receiver considers this litigation to be one of the most critical matters facing the Receiver at this time.

## D. Mr. Leventhal's Residence

22. As an initial matter, Mr. Leventhal has turned over his homeowner's insurance policy to the Receiver. Mr. Leventhal's home is insured for $530,000 and the Receiver believes that the amount of insurance in place is adequate to protect the value of the house.

23. During his initial interview with the Receiver, Mr. Leventhal advised the Receiver that he resides at 5887 Riverstone Circle (the "Leventhal Residence") with another person. Mr. Leventhal further advised the Receiver that his residence was encumbered by a security interest in favor of his mother, Dorothy Leventhal.

24. The Receiver caused an examination of the title to the Leventhal Residence to be conducted. The Receiver reviewed the title report and further reviewed Mrs. Leventhal's deed. The Receiver's conclusion is that Mrs. Leventhal's security interest reverted back to Scott Leventhal in January, 2020 and that Choate Construction, the Plaintiff herein, now holds a first lien on the Leventhal Residence. A letter to Mr. Leventhal's counsel detailing the Receiver's position is attached as Exhibit "B".[2]

25. The Receiver is in the process of retaining a real estate broker to sell the Leventhal Residence and intends to sell it pursuant to the authority granted to him in the Receiver

---

[2] The lengthy title report is omitted from this Report, but can be provided upon request.

7

Order.

26. As detailed in Exhibit "A", the Receiver had requested a meeting with Mr. Leventhal at his residence.  Mr. Leventhal, with his counsel present, agreed to make his house available for inspection by the Receiver during a face to face meeting held at Trillist's offices on June 9, 2021.  Mr. Leventhal also agreed to turn over credit cards in his possession and a Rolex during the June 9 meeting  After the meeting, the Receiver followed up with Mr. Leventhal on several occasions to formally schedule the meeting and to inspect the Mr. Leventhal's Residence.

27. Mr. Leventhal has not responded to the Receiver's inquiries and the Receiver still has not had access to Mr. Leventhal premises.   Mr. Leventhal has clearly intentionally breached his agreement with the Receiver and his interference with the Receiver's duties constitutes contempt of the Receiver Order.

**E.   1138 Peachtree Street and 1122 Crescent Avenue.**

28. In addition to Yoo on the Park, Mr. Leventhal has interests in two other developments, one at 1138 Peachtree Street and the other at 1122 Crescent Avenue.

29. Prior to the appointment of the Receiver, a sale process had commenced for 1122 Crescent Avenue.  The Receiver has conferred with the third party equity partner in that development.  The sale process is on-going and the Receiver is still investigating and determining the Receivership's interest in that property.

30. 1138 Peachtree Street is an undeveloped tract of land currently used as a parking lot managed by a third party equity partner.  Similarly, the Receiver is still evaluating the Receivership's interest in this property.

**F.   Overall Status**

8

31. As noted in the First Report, Mr. Leventhal manages his affairs through a labyrinth of companies in which he has either direct or indirect ownership or direct or indirect control. A list of entities which the Receiver is investigating is attached as Exhibit "C". The Receiver is informed and believes that Mr. Leventhal uses this complex structure to shield assets from creditors and business partners and may also use these entities as vehicles to transfer funds and protect these funds from disclosure to creditors and business partners.

32. Indeed, Mr. Leventhal seems to frequently engage in a "layering" of entities such that he signs one document in several different capacities. Further, he uses similar names for his entities such that it can often be confusing as to which entity holds which position. An example of this at Exhibit "D" where, in order to sign one document, Mr. Leventhal referenced four entities, including three entities with virtually identical names.

33. The Receiver has requested corporate governance documents, tax returns and bank information for these entities. The Receiver understands and is informed that Mr. Kavana has already issued subpoenas in the Federal Case seeking similar information and has procured certain bank records. The Receiver has sought to avoid the cost and expense of using discovery procedures and contempt motions, but in light of Mr. Leventhal' failure to cooperate, the Receiver has no choice but to use these methods going forward. The Receiver cannot fully determine and investigate Mr. Leventhal's assets and discharge his duties herein without obtaining this information

34. Overall, the Receiver has acted cautiously in this Receivership. The Receiver is keenly aware of the stakes involved in the potential transactions at issue as well as the

9

significance of the issues in the Federal Case and the State Case. The Receiver has worked to assuage and reassure equity partners and counter-parties that the Receivership will not interfere in any pending transactions. The Receiver's efforts in this regard have been welcomed by these parties and the Receiver has opened lines of communication with them and their counsel. For example, in the Yoo on the Park Transaction, the Receiver agreed to sign a consent agreement indicating that Scott Leventhal had authority to sign the closing documents and, if necessary, to seek an Order from this Court confirming such authority. Similarly, the Receiver plans to provide assistance in closing the other transactions. However, this will require Mr, Leventhal's cooperation. In addition, one of the major disputes between Mr. Leventhal and Mr. Kavana relates to disclosure of information and documents and the Receiver has attempted to resolve this without Court involvement while preserving Mr. Leventhal's position in the disputes with Mr. Kavana.

35. Further, although the Receiver has instructed Mr. Leventhal to cease use of personal credit cards and has confiscated two of his credit cards, the Receiver has allowed Mr. Leventhal to remain in his home pending the sale and has not removed any other assets. The receiver requested that he turn over the Rolex watch but he has not done so.

36. During the June 9 meeting, Mr. Leventhal disclosed that he had a gun collection. Mr. Leventhal represented that all of the guns he owned were legally obtained and properly registered. In Exhibit "A", the Receiver demanded an inventory of the gun collection, both to ensure that the Receiver had an accurate list of the weapons owned by Mr. Leventhal and to determine the marketability and value of the gun collection. Although specifically requested by the Receiver, Mr. Leventhal has not turned over the

10

inventory of the gun collection as of the filing of this report.

37. Pursuant to the Receiver Order, the Receiver has requested a budget from Mr. Leventhal with respect to his living expenses which he has not provided. The Receiver has not interfered with Mr. Leventhal's day to day expenses or livelihood and has not closed his bank account. The Receiver had hoped that in light of the overall circumstances, the amounts at issue in this Receivership and in response to an olive branch from the Receiver, that Mr. Leventhal would take advantage of the opportunity offered by the Receiver to voluntarily obey and comply with the Receiver Order, but this has not occurred. Frankly, the Receiver views Mr. Leventhal's conduct as self-destructive and harmful to resolving these matters which could be efficiently administered with simple cooperation. Third parties in these transactions have expressed concern regarding his conduct and authority to close the transactions and the Receiver has kept them fully informed as to the Receiver's intentions.

38. As noted above, the Receiver will shortly be filing a Contempt Motion to enforce the provisions of the Receiver Order and to seek other relief from Mr. Leventhal related to his failure to comply with the Receiver Order as well as seek third party discovery to ensure receipt of accurate information with respect to Mr. Leventhal. The Receiver will no longer accord Mr. Leventhal the courtesies and time granted to date and will specifically enforce the terms of the Receiver Order.

**G. Receiver Fees and Expenses to Date.**

39. The Receiver has spent substantial time to date working on this matter and discharging his duties herein. The Receiver's work has been complicated by Mr. Leventhal's failure to cooperate. Had he produced he financial statement, corporate records and

11

waterfall information, the Receiver's work would have been much simpler. In addition, the matters at issue --- litigation and transactions --- are complex with millions of dollars at issue.

40. To date, the Receiver fees and professional fees and expenses incurred by the Receiver are approximately:

| | |
|---|---|
| Receiver: | $36,000 |
| Accountants: | $11,000 |
| Counsel: | $38,000 |
| Total: | $85,000 |

41. At present, Florida counsel has not been required to spend any significant time on this matter and their fees are estimated to be less that $5,000.

42. The Receiver fees and expenses will be paid out of the Receiver Estate and/or Choate and added to the Choate Judgment against Mr. Leventhal . The Receiver will do everything possible to efficiently manage this matter and keep fees to a minimum Going forward, the amount of fees will be driven primarily by Mr. Leventhal's conduct and compliance with the Receiver Order and cooperation with the Receiver.

43. The Receiver is pleased to answer or address any questions or concerns the Court may

have at the convenience of the Court.

This 22nd day of June, 2021

**_S. Gregory Hays, Receiver_**
S. Gregory Hays, solely in his capacity as Receiver.

## CERTIFICATE OF SERVICE

I certify that on June 22, 2021, I electronically filed the foregoing Pleading which automatically will send email notification of such filing to all attorneys of record.

This 22nd day of June, 2021

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Law Offices of Henry F. Sewell, Jr. LLC
2964 Peachtree Road, NW
Suite 555
Atlanta, Georgia 30305
Telephone:  (404) 926-0053
Email: hsewell@sewellfirm.com

14

# EXHIBIT A

## LAW OFFICES OF HENRY F. SEWELL, JR., LLC
### ATTORNEYS AT LAW

Henry F. Sewell, Jr.

Suite 555, 2964 Peachtree Road NW,  Atlanta, Georgia 30305
TEL: (404) 926-0053 • EMAIL: hsewell@sewellfirm.com

Hylton B. Dupree, Jr., Esq.
Dupree, Kimbrough, Carl & Reilly, LLP
49 Green Street
Marietta, G A 30060
Post Office Box 525          Sent electronically to hdupree@dupree-lawfirm.com
M rietta, G A 30061

RE:   S. Gregory Hays, as Receiver ("Receiver") for the estate (the "Receivership
      Estate") of Defendant Scott L. Leventhal in Civil Action Nos. 05-1-06700 and 18-
      1-5244 in the Superior Court of Cobb County, State of Georgia.

Dear Hylton:

This letter is sent in connection with Mr. Leventhal's compliance with the Receiver Order entered May 26, 2021. As you know, Mr. Leventhal was supposed to produce certain information as specified in Paragraphs 11 -14 of the Order.

I have attached to this letter a list of all of the information received from Mr. Leventhal as required by the Order.   A review of this information demonstrates that Mr. Leventhal is not in compliance with the Receiver Order and that the Receiver has no choice but to file a Contempt Motion with the Court.

First, Paragraph 11 requires Mr. Leventhal to provide a sworn declaration complete with documents.  No sworn statement was delivered to the Receiver or filed with the Court.

Second, Mr. Leventhal apparently attempts to comply with the Order by producing three schedules listed as Schedules 11(B), (C) and (E). There is no sworn statement that these schedules are accurate and no information is provided in response to Paragraphs 11(A), (D), and (F).

Third, with respect to Paragraphs 13 and 14, Mr. Leventhal has not produced any personal financial statements or other documents required by these items.

Outside of those specific items, but as required in the Receiver Order, the Receiver has requested to inspect Mr. Leventhal's residence and any personalty contained therein. The Receiver specifically requested that Mr.,. Leventhal turn over both any remaining credit cards in his personal name as well as the Rolex watch as discussed in last week's meeting.  Further, the  Receiver has

June 15, 2021
Page 2 of 4

requested a meeting at Mr. Leventhal's office to review the Blue Horshoe and other files maintained at his office related to his interests in companies and property. Over the past two days, Mr. Leventhal has ignored these requests after earlier agreeing to cooperate with the Receiver on these issues.

One other specific item is that Mr. Leventhal mentioned having a number of weapons and guns. Although the Receiver is undecided on whether to sell these items, the Receiver does require a list of the guns and weapons owned by Mr. Leventhal.

Finally, during last week's meeting, additional information was requested from Mr. Leventhal regarding entities in which he owned or controlled an interest. A list of those entities and the information requested is attached. None of this information has been provided.

These discrepancies need to be cured immediately.

To the extent not cured, these discrepancies will be the subject of a contempt motion to be filed on June 17.

Please advise Mr. Leventhal accordingly and if you have any questions about this, please do not hesitate to contact me.

Sincerely,

*/s/ Henry F. Sewell, Jr.*

Henry F. Sewell, Jr.

cc:  S. Gregory Hays, Receiver

June 15, 2021
Page 3 of 4

## ITEMS PRODUCED BY MR. LEVENTHAL

1. Citi Credit Card Statements
2. 13th & Crescent-Best and Final Bid Matrix
3. Asset Management Agreement-TPKG 13th Street Development, LLC
4. Brokerage Account Statements- E Trade   **(Jan-April 2021)**
5. Brokerage Account Statements-Robinhood  **(Jan-May 2021)**
6. Checking Account Statements- Renasant Bank  **(May 2019 – May 2021)**
7. Letter of Intent to Purchase 0.63 acres at 1122 Crescent Ave.
8. Limited Liability Company Declaration of Trillist Realty Advisors, LLC
9. Mill Creek-LOI-13th Crescent 5-25-2021
10. Operating Agreement of TPKG 13th Street Member, LLC Dated 2/13/15
11. Savings Account Statements-Renasant Bank  **(10/14/2020 – 5/27/2021)**
12. Schedule 11 (B) Bank, Brokerage, and other financial accounts
13. Schedule 11 (C) Credit, bank, charge, debit or other eferred payment cards
14. Schedule 11 (E) Expenditures exceeding $1,000  **(Jan 1, 2019 to June 11, 2021)**
15. Statements- Bank of America  **(July 28, 2020 – May 27, 2021)**
16. Tax Return (2018) Scott L. Leventhal
17. Tax Return (2019) Scott L. Leventhal

## LIST OF ADDITIONAL DOCUMENTS

**13TH Street Holdings**:  Operating Agreement, Minute Book, Bank Statements, and Most Recent Tax Return

**Tivoli Investments**: Operating Agreement, Minute Book, Bank Statements, and Most Recent Tax Return

**Tivoli Properties**: Operating Agreement, Minute Book, Bankr Statements and Most Recent Tax Return

**Blue Horshoe Investments  LLC (Wyoming LLC)**:  Bank Statements, Most Recent Tax Return

**BHI 1138 Peachtree, LLC**:  Operating Agreement, Minute Book, Bank Statements, Most Recent Tax Return

**BHI 1138 Peachtree Member LLC:**  Operating Agreement, Minute Book, Bank Statements, Most Recent Tax Return

Redemption Agreements and Closing Statements related to the redemption or purchase of John Williams (or related entities) interests in 1138 Peachtree; and

June 15, 2021
Page 4 of 4

> BHI Sponsor Note and/or Sponsor Note listed in summary of 1138 Refinancing in the amount of $1,1 Million

**1138 Peachtree Land Holdings Member LLC**: Operating Agreement, Minute Book, Bank Statement and Most Recent Tax Return

**1122 Crescent Land Holdings Member LLC**: Operating Agreement, Minute Book, Bank Statements, Most Recent Tax Return

# EXHIBIT B

## LAW OFFICES OF HENRY F. SEWELL, JR., LLC
## ATTORNEYS AT LAW

Henry F. Sewell, Jr.

Suite 555, 2964 Peachtree Road NW,  Atlanta, Georgia 30305
TEL: (404) 926-0053  •  EMAIL: hsewell@sewellfirm.com

Hylton B. Dupree, Jr., Esq.
Dupree, Kimbrough, Carl & Reilly, LLP
49 Green Street
Marietta, G A 30060
Post Office Box 525          Sent electronically to hdupree@dupree-lawfirm.com
Marietta, GA  30061

RE:    S. Gregory Hays, as Receiver ("Receiver") for the estate (the "Receivership
       Estate") of Defendant Scott L. Leventhal in Civil Action Nos. 05-1-06700 and 18-
       1-5244 in the Superior Court of Cobb County, State of Georgia; Reversion of
       security interest related to property located at 5887 Riverstone Circle, Atlanta,
       Georgia 30339 (the "Property") and notice of intent to sell Property

Dear Hylton:

Enclosed is a title report related to the above-referenced Property that includes documents
related to a security interest previously held by Dorothy A. Leventhal in the Property.

A copy of this letter and the title report is being emailed to Mrs. Dorothy Leventhal who
has separately emailed me about the house on several occasions.

Simply put, based on our research, the security interest of Mrs. Leventhal in the Property
reverted on January 1, 2020, and is now included in the Receivership Estate unencumbered by such
interest.    This correspondence provides notice of the intent of the Receiver to proceed with the
sale of the Property and to place both Mr. Scott Leventhal and Mrs. Dorothy Leventhal on notice
of the Receiver's position and claims and to demand compliance from each of them with respect
to the requirements of the Receiver Order.

Mrs. Leventhal has separately asserted that she is currently a mortgagee-in-possession;
however, to the extent she is asserting such a position she has no legal right to do so.

The Receiver will separately notify Choate of his conclusions since it appears that Choate
now holds the first position lien against the Property.

To address any issues that you may have with regard to the reversion, we note that the
original promissory note and deed to secure debt (the "Original Security Deed") are dated
September 28, 2004, and anticipate final payment on March 28, 2005. Such documents were
subsequently amended with the most recent deed (the "Third Amended Deed") being dated June
4, 2010, and providing for a maturity of December 31, 2012. Seven years after such maturity date

June 11, 2021
Page 2 of 3

is January 1, 2020 (the "Reversion Date"). Ms. Leventhal failed to commence a foreclosure proceeding with regard to the Property prior to the Reversion Date. Notably, no "action to foreclose and no action to recover property under a conveyance of real property to secure debt shall be commenced and no power contained in or conferred by a conveyance of real property to secure debt shall be exercised after the title thereby conveyed has reverted." O.C.G.A. § 44-14-83. Furthermore, no "action shall be brought to recover property under a conveyance of real property to secure debt when an action to foreclose and the exercise of power of sale are barred." O.C.G.A. § 44-14-82.

"Georgia's default reversion period for real property conveyed to secure a debt is seven years from the debt's maturity date unless 'the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts." *See Bell v. Freeport Title & Guar., Inc.*, 355 Ga. App. 94, 99, 842 S.E.2d 565, 569 (2020) (citing OCGA § 44-14-80 (a) (1) and finding that security deed without an affirmative statement to establish perpetual or indefinite interest was subject to 7-year, rather than 20-year, reversionary period after noting that security deed provided for a fixed maturity date for a loan of a specific sum and the extensions contained fixed maturity dates). More specifically, pursuant to O.C.G.A. 44-14-80(a)(1), title "to secure a debt or debts shall revert to the grantor . . . at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance."

Here, the 7-year reversion period applies as the Third Amended Deed does not include any affirmative statement to establish a perpetual or indefinite security interest. Notably, the use of the word "forever" in the habendum clause of the Original Security Deed refers to the duration of the estate being granted rather than the nature of the security interest and is insufficient to invoke a longer reversionary period without any other indication that parties intended to invoke a longer reversionary period. *See Vineville Cap. Grp., LLC v. McCook*, 329 Ga. App. 790, 795, 766 S.E.2d 156, 161 (2014)(noting that the "word 'forever' in the habendum clause indicates the unlimited duration of the estate rather than the nature of the security interest" and does not by itself invoke the 20-year reversionary period). Furthermore, even if any of the deeds stated that it was secured by all renewals, extensions, and modifications, such language does not evidence an intent to perpetual or indefinite security interest in the real property where such document also references a date certain for maturity. *See Matson v. Bayview Loan Servicing, LLC*, 339 Ga. App. 890, 892–93, 795 S.E.2d 195, 197 (2016)(finding that reversion period was not extended upon recording of renewal). As noted previously, the original security deed contains a fixed maturity date for a loan of a specific sum and does not contain any other language indicating that the parties intended to invoke the 20-year reversionary period for deeds to secure debt. Furthermore, the Third Amended Deed also contains a fixed maturity date without any language indicating that the parties intended to invoke the 20-year reversionary period for deeds to secure debt.

Under the circumstances, the Receiver intends to proceed with a sale of the Property.

We trust that Mr. Leventhal will cooperate with the Receiver in the sale process. We further trust that Mrs. Dorothy Leventhal will also cooperate and not interfere in the sale process. Please

June 11, 2021
Page 3 of 3

note that should Mr. Leventhal or Mrs. Dorothy Leventhal not cooperate, the Receiver is prepared to enforce the Receiver Order with the Court.

The Receiver has separately reached out to Mr. Leventhal to arrange for an inspection by a real estate broker and to begin the sale process.

Finally, this issue will also be addressed in the Receiver's report to be filed next week.

If you have any questions about this, please do not hesitate to contact me.

Sincerely,

*/s/ Henry F. Sewell, Jr.*

Henry F. Sewell, Jr.

cc: Ms. Dorothy A. Leventhal (*via email*)

# EXHIBIT C

## ACTIVE ENTITIES

| | |
|---|---|
| 1138 Peachtree Land Holdings Member, LLC | GA |
| 13th Street Holdings, LLC | GA |
| BHI 1138 Peachtree, LLC | GA |
| Blue Horseshoe, LLC | GA |
| Blue Horseshoe Investments, LLC | WY |
| Fulcrum Manager, Inc. | DE |
| Hdp, LLC | GA |
| Interfinancial Midtown, Inc. | GA |
| Interfinancial Properties, Inc. | GA |
| TPKG 13th Street Development, LLC | GA |
| The Trillist Companies, Inc. | GA |
| Trillist Management, LLC | DE |
| Tivoli Realty Services, Inc. | GA |
| TPKG 13th Street Holdings, LLC | DE |
| TPKG 13th Street Member, LLC | DE |
| TPKG 13th Street Sponsor, LLC | DE |
| TPKG 13th Street Development, LLC | DE |
| Tivoli Investment Holdings, LLC | DE |
| The Trillist Companies, Inc | DE |
| TRA 1138 Sponsor, LP | DE |

## INACTIVE Entities

| | |
|---|---|
| 13th Street Lending, LLC | GA |
| 2171 Peachtree Holdings, LLC | GA |
| 2171 Peachtree Holdings Manager, LLC | GA |
| Aqua Development GP, LLC | GA |
| Aqua Development, LP | GA |
| Cumberland Creek Place, LLC | GA |
| JCC Holdings, LLC | GA |
| Mezzo Member, LLC | GA |
| Mezzo Holdings, LLC | GA |
| Mezzo Development, LLC | GA |
| Mezzo Manager, LLC | GA |
| SLL 1138, LLC | GA |
| SLL 2171 Peachtree, LLC | GA |
| SLL Summit, LLC | GA |
| SLL Aqua, LLC | GA |
| Ten Side Holdings, LLC | GA |
| Ten Side Member, LLC | GA |
| Ten Side Manager, LLC | GA |
| Tivoli 2171 Peachtree, LLC | GA |
| Tivoli Investments I, LLC | GA |
| Tivoli Properties, LLC | GA |
| Tivoli Summit GP, LLC | GA |

| | |
|---|---|
| Tivoli Summit, LLC | GA |
| Tivoli Summit Limited I, LLC | GA |
| TP 1138 Manager, LLC | GA |
| TP 13th Street Holdings, LLC | GA |
| TP 1138 Peachtree, LLC | GA |
| TP 1138 Peachtree Sponsor, LLC | |

# EXHIBIT D

IN WITNESS WHEREOF, the parties hereto have executed and sealed this Agreement as of the date first above written.

OWNER:

TPKG 13TH STREET DEVELOPMENT, LLC, a Delaware limited liability company

By:  TPKG 13th Street Holdings, LLC, a Delaware limited liability company, its sole Managing Member

By:  TPKG 13th Street Sponsor, LLC, a Delaware limited liability company, its sole Managing Member

By:  The Trillist Companies, Inc., a Delaware corporation, its Manager

By: _____

Scott L. Leventhal, President and Chief Executive Officer

ASSET MANAGER:

TRILLIST REALTY ADVISORS, LLC, a Delaware limited liability company

By: _____

Scott L. Leventhal, President