## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **SCOTT LOREN LEVENTHAL** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Case No.: 21-55036-pwb** |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**EMERGENCY MOTION FOR ENTRY OF ORDER DISMISSING
BANKRUPTCY CASE OR, IN THE ALTERNATIVE (I) SUSPENDING
BANKRUPTCY CASE TO ALLOW RECEIVER TO PROCEED WITH
ASSET SALES; (II) EXCUSING RECEIVER FROM COMPLIANCE
WITH SECTION 543 OF THE BANKRUPTCY CODE AND
AUTHORIZING RECEIVER TO SELL PROPERTY IN RECEIVERSHIP;
OR (III) REMOVING THE DEBTOR IN POSSESSION;
AND SCHEDULING AN EXPEDITED HEARING**

Choate Construction Company ("**Choate**"), by and through its undersigned counsel and as a creditor of Mr. Scott Loren Leventhal ("**Mr. Leventhal**" or the "**Debtor**"), an individual and the above-captioned chapter 11 debtor, hereby moves this Court for an order (i) dismissing this chapter 11 case or, in the alternative, (ii) directing that all proceedings in this case be suspended pursuant to section 305 of the Bankruptcy Code to authorize the Receiver (as defined below) to proceed with one or more asset sales, (iii) in the event the case is neither dismissed nor suspended, excusing the Receiver from compliance with section 543 of the Bankruptcy Code and authorizing the Receiver to continue the receivership in accordance with the Receiver Order (as defined below), or (iv) removing the debtor in possession pursuant to section 1185 of the Bankruptcy Code and appointing an appropriate fiduciary over the estate. In support of this motion (the "**Motion**"), Choate shows the Court as follows:

1

## PRELIMINARY STATEMENT

1.    Mr. Leventhal is anything but the honest but unfortunate debtor the bankruptcy system is designed to help.[1]   He has a proven, judicially-established record of fraud and misrepresentations to courts and creditors to avoid paying his debts and satisfying judgments against him.  His record shows he manipulates assets within his control for the express purpose of evading creditors by any means possible.  His debts are not the kind one would expect of an honest debtor facing financial difficulties, such as might result from disruption in the economy or changes in a particular industry, but instead are debts that arise out of misdeeds and intentional bad acts, and are certainly not the kinds of debts of someone who should be entitled to the protections and benefits of the bankruptcy system.  At a minimum, the existence of these types of debt demonstrates that this Debtor cannot be allowed or trusted to be in control of assets for the benefit of his creditors, and he especially should not be allowed to control the distribution of significant proceeds expected from near-term asset sales involving companies he owns or controls.

2.    Choate, a commercial construction company, holds a fraudulent transfer judgment against Mr. Leventhal and various companies he controlled, entered in 2016 by the Cobb County Superior Court, which court found that Mr. Leventhal perpetrated a "**scheme of fraudulent transfers**" by manipulating various businesses he owned and controlled to avoid paying Choate amounts owed on an underlying commercial construction contract/settlement

---

[1]      As the Supreme Court recently noted, there is a "basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'"  *Lamar, Archer & Cofrin, LLP v. Appling*, -- U.S. --,138 S. Ct. 1752, 1758, 201 L. Ed. 2d 102 (2018).  The "honest but unfortunate debtor" is a bedrock principle with a long history stretching back to well before the enactment of the modern Bankruptcy Code.  *See e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934).  Conversely, where a debtor has, for example, incurred or obtained debt through fraudulent means, the Code's discharge exceptions ensure that such a debtor may not necessarily enjoy the fresh start provided by bankruptcy law.  *E.g., Lamar,* 138 S.Ct. at 1758-59.

agreement, including by moving property from one company to another without legitimate consideration.[2]

3.      For the next five years, Choate diligently pursued post-judgment collection efforts, but Mr. Leventhal actively thwarted Choate's efforts by lying about his assets (while under oath) and continuing to manipulate businesses he owns or controls to ensure Choate's judgment remained unsatisfied.  Because of Mr. Leventhal's actions, by order entered May 26, 2021, the Cobb County Superior Court took "exclusive jurisdiction and possession" of Mr. Leventhal's assets and appointed S. Gregory Hays as Receiver for the resulting receivership estate.  In doing so, the Cobb County Superior Court found that: (i) "Leventhal **Lied** to Choate About his Assets in Response to Post-Judgment Discovery;" (ii) "Leventhal **Lied** to Choate to Hide Salary Payments that He Was Making to Himself from Trillist that Choate Could Have Garnished;" and (iii) "Leventhal has also been **dissipating his assets** charged with payment [to] Choate."[3]

4.      Mr. Leventhal failed and refused to comply with the Superior Court's receivership order.  The Receiver filed an emergency contempt motion to compel his cooperation, and on July 1, 2021, the Superior Court ordered that a hearing be conducted on the Receiver's contempt motion later in July.  Four days later, Mr. Leventhal filed this case.

5.      Contemporaneously, on June 29, 2021, the United States District Court for the Southern District of Florida entered an order removing Mr. Leventhal from sole control of a number of business entities, including those involved with the critical properties that are proposed

---

[2]      *See, Order Appointing Receiver*, entered May 26, 2021 in the Superior Court of Cobb County, State of Georgia, in Civil Action No.: 05-1-6700, 18-1-5244, and defined below as the Receiver Order.  In addition to the details provided herein, much of the background concerning the underlying fraudulent transfer judgment and Choate's efforts pursuing its claims against the Debtor can be found in the reported decision of the Court of Appeals of Georgia of *Interfinancial Midtown, Inc. v. Choate Construction Co.*, 343 Ga.App. 793 (2017).

[3] Receiver Order, ¶¶ 5(a)-(b), 6 (*emphasis added*).

to be sold as described herein.  Mr. Leventhal had actually consented to entry of that order, ostensibly agreeing to maintain the status quo until resolution of the underlying litigation before that court.  Six days later, Mr. Leventhal filed this case, and has since taken the position that such order no longer controls his rights and actions.  Almost certainly he was fully aware that he would be filing this case, and accordingly he consented to the entry of that federal court order with the present intention of attempting an end-run around it by filing bankruptcy.

6.      To Mr. Leventhal, this case is simply another tactic in his continuing effort to frustrate his creditors and prevent them from finally obtaining satisfaction on their claims.  This Court should not countenance his attempt to use his bankruptcy as a shield and a sword by trying to use it to re-establish personal control of his business assets and affairs in direct contravention of orders of other courts.

7.      Mr. Leventhal has fraudulently transferred assets, lied under oath in post-judgment discovery about his assets and salary, dissipated assets charged to the payment of Choate's fraudulent transfer judgment, and unrepentantly flouted orders entered by the Cobb County Superior Court and the Florida District Court.  If ever there was a debtor who should not be trusted with protecting the interests of his creditors, it is Mr. Leventhal, and Choate respectfully requests that this Court take emergency action to deprive him of any further opportunity to misappropriate assets charged for the benefit of his creditors, and instead ensure that a trusted fiduciary control such assets.  Choate respectfully submits that the Receiver appointed by the Cobb Superior Court is best positioned to do so, given his progress made since his appointment in May to understand Mr. Leventhal's complicated array of business assets and to ensure that the proceeds of any near-term asset sales are realized and protected for the benefit of Mr. Leventhal's creditors.

## RELIEF REQUESTED

8.      Choate requests that the Court dismiss the Debtor's bankruptcy case with prejudice pursuant to 11 U.S.C. §§ 105, 305, and/or 1112(b).  In the alternative, Choate requests that the Court: (a) abstain or suspend the bankruptcy case pursuant to 11 U.S.C. § 305 to allow the Receiver sufficient time to consummate one or more sales of the property subject in the Receivership Estate (as defined below) and modify the automatic stay accordingly; (b) in accordance with section 543(d) of the Bankruptcy Code, excuse the Receiver from compliance with the turnover and accounting provisions of section 543 of the Bankruptcy Code and authorize the Receiver to continue to administer the property subject to the Receivership Estate;  or (c) in the alternative, remove the debtor in possession pursuant to section 1185(a) of the Bankruptcy Code and expand the duties of the subchapter V trustee for the Debtor in accordance with section 1183(b)(5) of the Bankruptcy Code. Finally, due the exigent circumstances of this matter, Choate requests an expedited hearing on the relief sought herein.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      Choate's Judgments Against the Debtor.**

10.      In 2010, Choate obtained a judgment against Interfinancial Midtown, Inc., an entity solely controlled by Debtor, for unpaid construction services provided by Choate in 2001 for a development project of the Debtor known as Piedmont Fountains (the "**Choate Construction**

**Judgment**").  In 2004, after Choate had commenced suit against Interfinancial Midtown, Inc. for the unpaid construction debts, the Debtor incorporated a new entity, Piedmont Fountains, Inc., to which the Debtor caused the property under development to be transferred. The Debtor controlled the entities on both sides of the transfer, and determined the price at which the property changed hands.  No proceeds from the undocumented sale transaction were used to pay the outstanding construction costs owed to Choate, but instead were used by the Debtor to compensate himself.

11.    On November 21, 2016, in a separate suit commenced by Choate asserting claims for violations of Georgia's Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70 *et seq.*, in the matter styled *Choate Construction Company v. Interfinancial Midtown, Inc. et. al.*, CAFN: 005-1-6700-48 (the "**Fraudulent Transfer Action**"), the Superior Court of Cobb County, Georgia (the "**Superior Court**") entered a judgment (the "**Choate Fraudulent Transfer Judgment**") jointly and severally against the Debtor and three of his affiliated entities.  The Choate Fraudulent Transfer Judgment, which also included an award of punitive damages solely against the Debtor, now totals over **$2.28** million with the inclusion of interest through the date of this filing.  Since entry of the Choate Fraudulent Transfer Judgment, Choate has pursued post-judgment discovery and its available legal remedies (garnishments, charging orders, levies, etc.) in an attempt to collect from the Debtor.  The Debtor, however, in a continuing and disturbing pattern he has used for years in litigation with Choate, has deployed all manner of misrepresentations and obstruction to frustrate Choate's collection efforts and hide the truth about the existence and location of assets that could have been used to satisfy Choate's judgment.

### B.    The Prepetition Receivership

12.    Pursuant to Choate's *Renewed Emergency Motion for Appointment of Special Master/Auditor and Receiver* filed in the Fraudulent Transfer Action seeking, among other things, the appointment of a receiver over the assets of the debtor, the Superior Court entered its *Order*

*Appointing Receiver* dated May 26, 2021 (the "**Receiver Order**"), a copy of which is attached hereto as **Exhibit A**, and appointed the Receiver for the prepetition estate of the Debtor (the "**Receivership Estate**").[4]

13.    The Superior Court included in the Receiver Order specific findings of fact and conclusions of law, including that: (i) the Choate Fraudulent Transfer Judgment was entered against the Debtor "personally for manipulating the various businesses he owned and controlled to perpetrate a scheme of fraudulent transfers to avoid paying monies owed to Choate" – in other words, transfers with actual fraudulent intent; and (ii) the Debtor "both for himself and for the companies he owns, manages, and controls, has repeatedly withheld relevant information from Choate and intentionally misrepresented and misled both Choate *and the Court* at to what assets he possesses for satisfaction the [Choate Fraudulent Transfer Judgment], rendering Choate's efforts to employ its legal remedies meaningless." *See* Receiver Order at ¶¶ 1 and 5 (emphasis added).

14.    The Superior Court ruled that the Debtor lied on several occasions, specifically finding that Mr. Leventhal lied about his assets during post-judgment discovery when he testified under oath in verified interrogatory responses in July of 2018 that his only assets worth more than $5,000 were his watch, his car and a piece of property at 5887 Riverstone Circle in Atlanta, and also produced to Choate personal financial statements representing that he was insolvent. These falsehoods were contradicted by the consolidated financial statements he prepared and provided to certain banks and lenders in connection with credit applications (which he failed to produce to Choate) in which he asserted a personal net worth of $6.3 million, and specifically included the

---

[4]    By *Notice of Appeal* filed May 27, 2021, the Debtor provided his notice of appeal of the Receiver Order. On July 1, 2021, the Superior Court entered an order (a copy of which is attached hereto as Exhibit B) denying the Debtor's motion for a protective order, or alternatively for a stay, pending appeal of the Receiver Order.

Choate Fraudulent Transfer Judgment as a contingent liability that could be paid out of the pool of consolidated assets. Receiver Order ¶ 5(a)(i-iii), (b).

15.     The Superior Court also found that Mr. Leventhal lied in discovery about his salary.  The Superior Court found that he submitted a Paycheck Protection Program loan application in April of 2020 in which he represented, as President and CEO of The Trillist Companies, Inc. ("**Trillist**"), under penalty of perjury, that he received actual gross wages of $187,499.88 as an employee of that company for the period from January 1, 2019, through December 31, 2019, with the payments actually being made during the six-month period from April 2019 through August 2019.  *See* Receiver Order ¶ 5(b)(i) and (ii).  The Superior Court further found that, during that same six-month period, in May 2019 and June 2019, while under Mr. Leventhal's control, Trillist specifically represented to Choate and the Superior Court that it did not have any documents reflecting salary payments to Leventhal.  *See* Receiver Order ¶ 5(b)(iii).

16.     The Receiver Order further found that Leventhal was: (a) dissipating assets charged with payment of the Choate Fraudulent Transfer Judgment including by drawing on a revolving line of credit that he issued to himself incident to his interest in Blue Horseshoe Investments, LLC ("**Blue Horseshoe**"); (b) subject to claims by his business partner seeking to remove him as CEO/COO of Trillist; and (c) being sued for allegedly engaging in a scheme to divert assets from Choate.  Receiver Order ¶¶ 6, 7, and 8.

17.     The Superior Court, being familiar with the Debtor's history and the decades-spanning efforts of Choate to hold the Debtor accountable and to recover on the Choate Fraudulent Transfer Judgment, found that the Debtor has an "*established record*…of manipulating the businesses that he owns and controls to engage in fraudulent transfers to avoid paying Choate." *See* Receiver Order ¶ 9 (emphasis added).  The Superior Court, looking at the entirety of the

circumstances, and noting specifically the Debtor's established record of fraudulent transfers, the Debtor's "*ongoing misrepresentations* about his available assets…to evade and render meaningless Choate's legal remedies," the Debtor's "*ongoing actions to dissipate* his assets," and the possibility that the Debtor is "*diverting assets* into the companies he controls to avoid paying Choate," concluded that there were "*extraordinary circumstances [that] give rise to a manifest danger of continued loss, destruction, and dissipation* of and material injury to Choate and Choate's interests in Leventhal's assets." *Id.* (emphasis added).

18.     The Superior Court, building on its finding of extraordinary circumstances, further found that the "record also reflects an imminent and urgent need for the appointment of a receiver" because of the active marketing and pending sale of assets "in which the Debtor holds an interest and stands personally to benefit financially from their sale through his ownership and control of The Trillist Companies, Inc., Tivoli Investment Holdings, LLC, and Blue Horseshoe Investments, LLC." *See* Receiver Order ¶ 10.

**C.     The Florida Lawsuit.**

19.     The Debtor's misconduct in the operation of certain of his affiliated companies has also resulted in a legal battle in Florida with Mr. Joseph Kavana ("**Kavana**"), a business partner in Trillist with the Debtor. *See Joseph Kavana's Counterclaim, Answer and Affirmative Defenses to Claim III of Scott Leventhal's Complaint*, filed in the case of *Scott L. Leventhal v. Joseph Kavana*, Case No.: 21-cv-60349-RKA, pending before the United States District Court for the Southern District of Florida [Docket No. 21, filed March 26, 2021], and the allegations of misconduct set forth therein at ¶¶ 1-2, 9, 22, 68, 72, 75, 82-85, 91, (the "**Florida Lawsuit**") a copy of which is attached hereto as **Exhibit C.**  In the Florida Lawsuit, which was commenced in mid-February 2021, Kavana seeks the removal of Leventhal as CEO/COO of Trillist for breach of their Shareholders' Agreement by, amongst other things, "[operating] Trillist as a sole proprietorship,

unlawfully paying himself (and others) millions of dollars while defaulting on numerous debt obligations, blocking Mr. Kavana from accessing Trillist's bank accounts, withholding key financial documents and making irreversible changes to Trillist's organizational structure." Id.

**D.    Pending Sale of Yoo on the Park**

20.    The Debtor commenced his case on the cusp of the closing of the sale of Yoo on the Park (the "**Yoo Project**"), a residential development in the vicinity of Piedmont Park in Atlanta, Georgia and a primary asset of Trillist, which is expected to generate gross sale proceeds of approximately $110 million.  The Yoo Project was already the subject of a Letter of Intent with a potential buyer as of the appointment of the Receiver (the "**Yoo Transaction**"). *See* Receiver Order ¶ 11. With the assistance and involvement of the Receiver, the agreements relating to the sale of the Yoo Project have been fully executed and the sale of this property is anticipated to close potentially as soon as shortly before the end of this month.

21.    The Debtor stands to personally benefit, potentially in the millions of dollars, from the sale through the Debtor's affiliated companies.  *See*, Property Listing for Yoo on the Park, attached hereto as **Exhibit D**; Curbed Atlanta Article dated February 25, 2020, "Developer Trillist offloading Midtown hotel site across from 46-story residential project," attached hereto as **Exhibit E**; Yoo on the Park Organization Chart, attached hereto as **Exhibit F.**  The Debtor also stands to benefit from the pending sale of certain real property located at 1122 Crescent Avenue, Atlanta, GA (the "**Crescent Ave Property**" and together with the Yoo Project, the "**Sale Properties**"). *See*, 1122 Crescent Call for Offers attached hereto as **Exhibit G.**

22.    It is critically important to Choate, and indeed all of the Debtor's creditors, that the proceeds from the proposed sales of the Sale Properties (and any others) be preserved by the Receiver and not dissipated by the Debtor, so that those proceeds can appropriately be used to pay valid obligations of the Debtor, including the Choate Fraudulent Transfer Judgment.  The Sale

Properties are among the assets the Debtor identified to his banks and lenders as being available to satisfy Choate's judgment against him, as evidenced by personal financial statements that the Debtor delivered to Bank of the Ozarks, and potentially other lenders and sources of financing. *See,* Receiver Order, ¶ 5(a)(11).  The Debtor's legal battle with Kavana over the Debtor's misconduct in the operation of Trillist, combined with the Debtor's efforts to regain control of the Sale Properties and the distribution of sale proceeds, confirms Choate's fears that the Debtor is continuing to manipulate his various affiliated business entities not just for his own benefit, but actively to the detriment of Choate and the Debtor's other creditors.

23.    The Debtor has engaged in numerous acts that demonstrate that good reason exists to question the Debtor's honesty, candor, and ultimately, his willingness to obey and respect the authority of the orders of this or any other court.  Just six days before commencing this case, the Debtor consented to the entry of the *Order Resolving Expedited Motion for Temporary Restraining Order or, in the Alternative, a Preliminary Injunction* [Docket No. 67, entered June 29, 2021] (the "**Consent Order**") in the Florida Lawsuit, a copy of which is attached hereto as **Exhibit H**.   In the Consent Order, the Debtor agreed to share control over bank accounts and other assets with Kavana, and to provide substantial detailed information concerning the financial affairs of their business entities.  Yet mere days after consenting to entry of that order, the Debtor flouted the authority of the Florida federal district court and filed this case, hoping to retake control of those matters as though the Consent Order did not exist.

24.    At this juncture, there is significant concern among **all** creditors that the proceeds from the sales of the Yoo Project, Crescent Ave Property, and any others will dissipate if the Debtor has any involvement in the sale process or any control over any sale proceeds,

potentially by way of disbursements to affiliated entities and entities in which the Debtor has an indirect or unknow interest.

## REQUESTS FOR RELIEF

### A. This Bankruptcy Case Should be Dismissed Pursuant to 11 U.S.C. § 1112(b)(1) Because it Was Not Filed in Good Faith

25.    Choate respectfully asks the Court to dismiss this bankruptcy case pursuant to 11 U.S.C. § 1112(b)(1).  Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case . . . to a case under chapter 7 . . . or dismiss a case under [Chapter 11], whichever is in the best interests of creditors and the estate, for cause."  11 U.S.C. § 1112(b)(1).

26.    Although not expressly enumerated as "cause" in Section 1112(b)(4), courts have expressly indicated that "[a] debtor's lack of good faith in filing a bankruptcy petition constitutes 'cause' for relief."  *See In re Clinton Fields, Inc.*, 168 B.R. 265, 268 (Bankr. M.D. Ga. 1994).  Accordingly, a bankruptcy case can be dismissed for cause as a result of the filing of a bankruptcy case in bad faith.  *See, e.g., In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) (affirming dismissal of bankruptcy case where debtor filed the case to delay or frustrate attempts by creditors to foreclose on sole asset of debtor and noting that possibility of successful reorganization or equity in property does not transform bad faith filing to one undertaken in good faith); *State St. Houses, Inc. v. N.Y. State Urban Dev. Corp. (In re State Street Houses, Inc.)*, 356 F.3d 1345, 1346-47 (11th Cir. 2004).

27.    Instead of applying a particular test for determining whether a petition has been filed in bad faith, courts consider any factors that evidence "'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the

petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Phoenix Piccadilly*, 849 F.2d at 1394.

28.    A determination of bad faith is a question of fact and must be made on a case-by-case basis. *In re Sb Props., Inc.*, 185 B.R. 198, 204 (E.D. Pa. 1995).  There is no particular test for determining whether a case was filed or is proceeding in bad faith, but courts have considered the following factors:

(1)    Whether the debtor has few or no unsecured creditors;
(2)    Whether there has been a previous bankruptcy petition by the debtor or a related entity;
(3)    Whether the pre-petition conduct of the debtor has been improper;
(4)    Whether the petition effectively allows the debtor to evade court orders;
(5)    Whether there are few debts to non-moving creditors;
(6)    Whether the petition was filed on the eve of foreclosure;
(7)    Whether the foreclosed property is the sole or major asset of the debtor;
(8)    Whether the debtor has no ongoing business or employees;
(9)    Whether there is no possibility of reorganization;
(10)   Whether the debtor's income is sufficient to operate;
(11)   Whether there was no pressure from non-moving creditors;
(12)   Whether reorganization essentially involves the resolution of a two-party dispute;
(13)   Whether a corporate debtor was formed and received title to its major assets immediately before the petition; and
(14)   Whether the debtor filed solely to create the automatic stay.

*SummitBridge Nat'l Invs. VI, LLC v. Orchard Hills Baptist Church, Inc. (In re Orchard Hills Baptist Church, Inc.)*, 608 B.R. 309, 314-15 (Bankr. N.D. Ga. 2019).

29.    The facts here overwhelmingly support a finding that Mr. Leventhal filed this bankruptcy in bad faith.  Mr. Leventhal's improper pre-petition conduct is the clearest evidence of his bad faith.  Choate's entire claim against Mr. Leventhal is based on a fraudulent transfer judgment entered after a jury verdict establishing the fraud, stemming from him manipulating businesses he owns and controls with the actual intent to avoid paying amounts due to Choate on

an underlying construction contract.  Thereafter, the Cobb County Superior Court has expressly ruled that Mr. Leventhal lied in post-judgment discovery proceedings, to both Choate and to the Court, and has continued in his schemes to manipulate businesses he owns and controls to dissipate assets and avoid paying amounts due to Choate.  Mr. Leventhal has no respect for judicial authority, the judicial process, or the duties of a sworn oath to be truthful.  His pre-petition conduct is the epitome of a bad actor who does not deserve the protection of the bankruptcy process, and there is no basis to believe that Mr. Leventhal will change the fraudulent manner in which he operates simply because he has now filed bankruptcy and is before this Court.  Accordingly, his case should be summarily dismissed.

30.    That Mr. Leventhal filed bankruptcy in an effort to evade court orders further evidences his bad faith.  This bankruptcy is merely a continuation by Mr. Leventhal to deploy all manner of delay tactics to avoid collection activities and judicial remedies by his creditors.  This case was filed barely a month after the Receiver was appointed and on the cusp of a contempt hearing because Mr. Leventhal has refused to cooperate with the Receiver.  Furthermore, this case was filed less than a week after Mr. Leventhal agreed to entry of the Consent Order granting control rights to Kavana, his business partner.  It seems obvious that Mr. Leventhal filed this case to use the automatic stay to evade the Receivership Order and the Consent Order, for the express purpose of re-establishing control over his business operations.  Courts have dismissed bankruptcy cases in circumstances like this, where the sole purpose is to delay collection activities or to circumvent a liquidation order.  *See, e.g., In re FL.Invest.USA, Inc.*, 2013 WL 4039807 (Bankr. E.D. Cal. Aug. 7, 2013) (petition filed in bad faith two days after appointment of state court receiver because "the debtor's primary motive was avoidance of judicial process and collection activities"); *Matter of*

*Ofty Corp.*, 44 B.R. 479 (Bankr. D. Del. 1984) (granting motion to dismiss where it was clear that the sole purpose of the filing was to circumvent a receivership liquidation order).

31.    Moreover, there is no possibility of reorganization in this case.  Although Mr. Leventhal filed this case ostensibly as a reorganization case under chapter 11, the actual assets available to fund any reorganization are not before this Court.  Mr. Leventhal intends to fund any plan payments through liquidation of the very corporate assets that he previously controlled prior to entry of the Receivership Order and the Consent Order.  Mr. Leventhal contends that, by virtue of this bankruptcy filing, he has now re-established control of those assets.  Mr. Leventhal's judicially-established record of deceit and malfeasance prior to this bankruptcy evidences that he cannot be trusted to manage any assets in this case, and any claim by him that he now intends to justly liquidate assets to pay his creditors must be viewed with great skepticism.  Any liquidation of his assets, or the assets he controls, must be controlled by a fiduciary.  Choate respectfully submits that the Receiver is in the best position to efficiently administer such liquidation, given the authority granted in the Receiver Order, and accordingly this case should be dismissed to allow the Receiver to continue his efforts under the authority provided by the Cobb County Superior Court.

**B.    Pursuant to 11 U.S.C. § 305(a), the Bankruptcy Case Should Be Dismissed, or, Alternatively, Suspended to Allow the Receiver Sufficient Time to Consummate the Sale of Assets in the Receivership Estate**

32.    The bankruptcy case should also be dismissed pursuant to 11 U.S.C. § 305, which provides that "[t]he court, after notice and a hearing, may dismiss a [bankruptcy case], or may suspend all proceedings in a case . . ., at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C. § 305(a).

33.    "Congress undoubtedly recognized by enacting section 305 that a bankruptcy court in certain instances should decline to exercise jurisdiction over a case even when it has

15

jurisdiction." *Monsour Med. Ctr., Inc. v. Stein*, 154 B.R. 201, 206 (Bankr. W.D. Pa. 1993).  The

decision to dismiss under § 305 is discretionary, and must be made on a case-by-case basis.  Courts

consider a number of factors in evaluating whether to abstain from hearing or dismiss a bankruptcy

case:

> Such factors generally include: (1) economy and efficiency of
> administration; (2) whether another forum is available to protect the
> interests of both parties or there is already a pending proceeding in
> a state court; (3) whether federal proceedings are necessary to reach
> a just and equitable solution; (4) whether there is an alternative
> means of achieving the equitable distribution of assets; (5) whether
> the debtor and the creditors are able to work out a less expensive
> out-of-court arrangement which better serves all interests in the
> case; (6) whether a non-federal insolvency has proceeded so far in
> those proceedings that it would be costly and time consuming to
> start afresh with the federal bankruptcy process; and (7) the purpose
> for which bankruptcy jurisdiction has been sought.

*In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr. D.R.I. 1990).

34.    Here, several of these factors weigh in favor of dismissing, abstaining, or

suspending this bankruptcy case until the Receiver has completed the sale of the assets in the

Receivership Estate pursuant to the Receiver Order.  First, economy and efficiency would be better

served by dismissal, abstention, or suspension of this case given the status of the Receivership and

how far along the sale process for the Yoo Project has progressed under the Receiver's

stewardship.  The Debtor's case will duplicate matters and add another layer of administrative

expenses prior to any payment to creditors.

35.    Second, the Receivership has been pending since May 2021 and the interests of

the parties, including the Debtor, are protected in such proceeding at least until the sale of the

assets in the Receivership Estate and escrow of sale proceeds that might otherwise fall under the

direct or indirect control of the Debtor.  "Several courts have held that § 305 abstention or dismissal

is appropriate when another forum is available to determine the parties' interests, and in fact, such

16

an action has been commenced." *In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988) (abstaining under section 305 of the Bankruptcy Code to avoid clear case of duplication of efforts where receiver was already competently supervising property of the debtor and a trustee would otherwise need to be appointed).

36.    Third, federal proceedings are not necessary to allow the assets in the Receivership Estate to be sold, as all of the relevant assets are located within the State of Georgia.

37.     Fourth, allowing the Receiver to finalize a sale of the assets in the Receivership Estate would be less expensive and better serve the interests of the parties, including the Debtor's creditors.

38.    Finally, the bankruptcy case appears to have been filed for an improper purpose; that is, to hinder the sale of the assets in the Receivership Estate and enable the Debtor to attempt to direct the distribution of sale proceeds for his personal benefit, notwithstanding his entry into the Consent Order.

39.    Given that the Receiver has already made substantial progress in coordinating the upcoming sale of the Yoo Project (as well as the Crescent Ave Property), the interests of creditors and the Debtor are best served by this Court dismissing, abstaining, or suspending the Debtor's bankruptcy to allow the Receiver to proceed with a sale of the assets in the Receivership Estate, free from the interference of, or attempted control by, the Debtor.

40.    Accordingly, Choate requests that the Court dismiss the Debtor's case to allow the Receiver to consummate the sale of the Yoo Project and any further near-term asset sales, or, in the alternative, suspend the Debtor's bankruptcy proceedings to allow the Receiver sufficient time to consummate such sales.

**C.  In the Event that the Court Does Not Dismiss or Suspend the Bankruptcy Case, the Receiver Should be Excused from Complying with the Turnover and Accounting Requirements of 11 U.S.C. § 543 and be Granted Relief from the Automatic Stay to Allow the Receiver to Consummate the Sale of the Assets in the Receivership Estate.**

41.  Choate hereby joins in the *Receiver's (A) Accounting; (B) Emergency Motion for Order Excusing Receiver from Compliance with Section 543 of the Bankruptcy Code;(C) Emergency Motion For Relief From The Automatic Stay and (D) Motion For Expedited Hearing* [Docket No. 22, filed July 12, 2021] filed in this case (the "**Excusal Motion**"), adopts the arguments set forth therein, and joins in the Excusal Motion's requests for relief.

42.  Choate respectfully submits that under the circumstances the interests of creditors and parties-in-interest would be better served by excusing the Receiver from complying with the turnover and accounting requirements of section 543 of the Bankruptcy Code and permitting the Receiver, pursuant to the terms of the Receiver Order, to continue: (a) in possession, custody and control of the assets in the Receivership Estate; and (b) the orderly sale of the assets in the Receivership Estate, rather than by adding potentially significant professional fees and expenses to the cost of the Receiver and Receivership Estate on account of the Debtor's bankruptcy case.

43.  For the reasons set forth in the Excusal Motion, in the event that this Court does not dismiss or suspend this case, Choate submits that the Receiver is the third-party fiduciary best suited to efficiently administer the Receivership Assets for the benefit of all creditors, and should be excused from the requirement to turn over such assets to the estate.

**D.    If This Case is Not Dismissed or Suspended, the Debtor Should Be Removed from Possession and the Subchapter V Trustee Should Be Given Expanded Powers.**

44.    The Debtor has elected to proceed in this case as a subchapter V debtor.[5] Pursuant to 11 U.S.C. § 1185(a), "On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter."

45.    When a debtor in possession is removed under section 1185, section 1183(b)(5) of the Bankruptcy Code prescribes the additional duties that shall be performed by the subchapter V trustee.

46.    While Choate believes that the most appropriate relief in this instance is for this Court to dismiss this chapter 11 case or suspend the proceedings, as set forth above, in the event that the Court declines those remedies, the Debtor's judicially-established record of fraud, dishonesty, and mismanagement of his affairs prior to the commencement of this case (and perhaps after) requires that he be removed as debtor in possession.  Leaving the Debtor in possession and control of his assets and business affairs only provides him further opportunity to secrete and dissipate assets to the detriment of all creditors.

47.    As detailed herein, Mr. Leventhal has a history replete with instances of fraud, dishonesty, and deception.  The Cobb County Superior Court, having heard and considered the available evidence and the long record of the proceedings before it, specifically found in the

---

[5]      Choate reserves all rights to contest whether the Debtor is eligible to be a subchapter V debtor and seek appropriate related relief.

Receiver Order that the Debtor lied in sworn testimony, to both Choate and the Superior Court itself.  And prior to such post-judgment transgressions, in 2016, a jury verdict confirmed that Mr. Leventhal had committed numerous transfers with actual intent to hinder, delay, or defraud Choate, leading to the entry of the Choate Fraudulent Transfer Judgment against him.

48.     Mr. Leventhal has demonstrated dishonesty and gross mismanagement by his repeated flouting of the authority of various courts and court orders.   The Receiver was forced to file his motion for contempt due to Mr. Leventhal's stubborn refusal to comply with the dictates of the Receivership Order.  And in the Florida Lawsuit, Kavana had to file a motion for temporary restraining order to stop Mr. Leventhal from further misconduct, which resulted in the Consent Order entered by the Florida District Court.  Of course, Mr. Leventhal gave little deference to that court either, choosing instead to file this case in hopes of evading the proscriptions in his activities that he agreed to and that were ordered by the Florida court.

49.     In sum, this Debtor has a long, repeated, disturbing, and egregious pattern of fraud, dishonesty, and gross mismanagement and should under no circumstances be allowed to remain in possession or control of his assets or his affairs.  If this Court is not inclined to dismiss this case or suspend proceedings, it should at the very least remove the Debtor as debtor in possession under section 1185(a), and allow the subchapter V trustee to take over the additional responsibilities provided under section 1183(b)(5).

### E.     The Court Should Grant Such Other and Further Relief as is Necessary to Maintain the *Status Quo*.

50.     In addition to and based upon all of the foregoing, Choate hereby requests that the Court grant such other and further relief as the court may be necessary and appropriate in order to maintain the *status quo* to the fullest extent possible, including without limitation, by preventing the Debtor from accessing or in any way controlling the proceeds and

distributions thereof from the sale of any assets amongst the labyrinth of entities that he controls.

## **CONCLUSION**

51.    Based on the foregoing, Choate submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtor, the Debtor's estate, and the Debtor's creditors, and should be granted in all respects.

WHEREFORE, Choate respectfully requests that the Court:

(i)    dismiss this chapter 11 case or, in the alternative,

(ii)    direct that all proceedings in this case be suspended pursuant to section 305 of the Bankruptcy Code to authorize the Receiver to proceed with one or more asset sales,

(iii)    in the event the case is neither dismissed nor suspended, excuse the Receiver from compliance with section 543 of the Bankruptcy Code and authorize the Receiver to continue the receivership in accordance with the Receiver Order, or

(iv)    remove the debtor in possession pursuant to section 1185 of the Bankruptcy Code and appoint an appropriate fiduciary over the estate, and

(v)    grant such other and further relief as is appropriate.

Dated July 14, 2021

*/s/  Bryan E. Bates*
Bryan E. Bates
Georgia Bar No. 140856
Eric W. Anderson
Georgia Bar No. 016810

**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree St NE
Suite 3600
Atlanta, Georgia 30308
(404) 420-4333
bbates@phrd.com
eanderson@phrd.com

*Attorneys for Choate Construction Company*