IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>SCOTT LOREN LEVENTHAL,<br><br>    DEBTOR. | CASE NO. 21–55036-PWB<br><br>CHAPTER 11 |

**EMERGENCY MOTION OF JOSEPH KAVANA AND KGH INTERNATIONAL DEVELOPMENT, LLC FOR (I) ENTRY OF AN ORDER DECLARING THAT THE AUTOMATIC STAY DOES NOT APPLY OR
MODIFYING THE AUTOMATIC STAY TO THE
EXTENT APPLICABLE AND (II) EXPEDITED HEARING**

Joseph Kavana ("Kavana") and KGH International Development, LLC ("KGH"), by and through undersigned counsel, move the Court for entry of an Order (the "Motion") finding that the automatic stay imposed by 11 U.S.C. § 362 does not apply to two pending actions involving Scott Leventhal (the "Debtor" or "Leventhal") and certain non-debtors or, to the extent it applies, modifying it to allow those actions to proceed. The first of those actions, which is pending in the United States District Court for the Southern District of Florida (the "District Court"), is a shareholders' rights dispute that the Debtor initiated against Kavana. *See* Complaint, *Leventhal v. Kavana*, Case No. 21–60349 (S.D. Fla. Feb. 12, 2021) (the "District Court Action") (attached hereto as **Exhibit 1**). The other action is, ostensibly, a declaratory relief action initiated by KGH in circuit court in Miami-Dade County, Florida (the "State Court") against three non-debtor entities. *See* Am. Compl. *KGH International Dev., LLC v. Scott Leventhal, et al.*, Case No. 2021–011007-CA-01 (43) (the "State Court Action") (attached hereto as **Exhibit 2**).[1] In support of the Motion, Kavana and KGH state as follows:

---

[1] Contemporaneously with the filing of this Motion, KGH filed a notice withdrawing its claims against the Debtor without prejudice.

16807773v3

## JURISDICTION, VENUE, CORE MATTER, STATUTORY AND PROCEDURAL PREDICATE

1.      This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to sections 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory basis for this Motion is section 362 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The procedural predicate for the requested relief sought herein is Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## INTRODUCTION

2.      The Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code just days after the District Court entered an order enjoining what he may do as the Chief Executive Officer and Operating Officer of nondebtor The Trillist Companies, Inc. ("Trillist"), a Delaware corporation in which Leventhal and Kavana are each 50% shareholders. *See* Order Resolving Expedited Motion for Temporary Restraining Order or, in the Alternative, a Preliminary Injunction, *Leventhal v. Kavana*, Case No. 21–60349 (S.D. Fla. June 29, 2021) (attached hereto as **Exhibit 3**) (cited to throughout as "Status Quo Order").

3.      Leventhal carefully timed his bankruptcy filing to extricate himself from the Status Quo Order, which restrains Leventhal's ability, as Operating Officer of Trillist, to distribute the proceeds of two impending real estate transactions—one involving an apartment rental building called Yoo on the Park; the other involving a piece of land at 1122 Crescent Avenue NE, Atlanta, Georgia.

4.      Trillist's Chairman, Joseph Kavana, brings this motion to confirm that the parties' dispute, which *Leventhal* initiated, is not subject to the automatic stay, and to further confirm that the Status Quo Order (entered by the District Court)—which Leventhal has already violated in

2

numerous respects—remains enforceable.

5. An affiliate of Kavana, KGH, joins in the Motion to confirm that its suit, which seeks injunctive and declaratory relief only against non-debtors Trillist, TPKG 13th Street Sponsor, LLC ("TPKG Sponsor") and Tivoli Investment Holdings, LLC ("Tivoli") in the State Court Action, is likewise not subject to the stay.

## BACKGROUND

### I.   The Federal District Court Action

6. On February 11, 2021, pursuant to the terms of Trillist's Shareholder Agreement, Kavana served a notice on Leventhal removing him as Chief Executive Officer and Operating Officer of Trillist because Leventhal engaged in acts of fraud and gross mismanagement. *See* Countercl. ¶ 10, Leventhal *v. Kavana*, Case No. 21–60349 (S.D. Fla. Mar. 26, 2021) [ECF No. 21] (cited to throughout as "Countercl.") (attached hereto as **Exhibit 4**).

7. Rather than step down, as he was obligated to do, Leventhal raced to the courthouse and filed suit the next day, asking the court to declare that he can maintain day-to-day operating control of Trillist (and entities related to Trillist).

8. Kavana later counter-sued, alleging that Leventhal could not maintain day-to-day operating control, and was subject to removal under the Shareholders' Agreement because he engaged in fraud and other bad acts. Countercl. at 20 (wherefore clause) (Ex. 4).

9. Neither party brought a claim for money damages; the only claims at issue are for declaratory relief and specific performance.

10. The parties' principally dispute who should manage the day-to-day operations of Trillist.

11. Soon after the parties brought their respective claims, Kavana discovered, through third-party discovery, that Leventhal set in motion a stealth plan to divest Trillist of all its assets

3

to ensure that he controlled the distribution of proceeds of those property sales. Kavana further unearthed that Leventhal planned to abscond with a portion of the funds that were not lawfully his.

12.     That led Kavana to move for an emergency motion for a temporary restraining order or, in the alternative, a preliminary injunction to enjoin Leventhal from continuing to breach the parties' Shareholders' Agreement. *See* Expedited Motion for Temporary Restraining Order or, in the Alternative, a Preliminary Injunction, *Leventhal v. Kavana*, Case No. 21–60349 (S.D. Fla. May 27, 2021) [ECF No. 36] (attached hereto as **Exhibit 5**).

13.     Rather than contest the motion—and to avoid an all-day evidentiary hearing that the trial court scheduled—Leventhal capitulated. He advised the district court that he "agrees . . . with Kavana that the portion of the proceeds from those [property] sales that would otherwise be available to Leventhal and Kavana should be frozen." Leventhal's Resp. to Motion for TRO/Preliminary Injunction at 1, *Leventhal v. Kavana*, Case No. 21–60349 (S.D. Fla. May 27, 2021) [ECF No. 36] (attached hereto as **Exhibit 6**). Leventhal also represented that he "wants to preserve the status quo pending the resolution of the current litigation." *Id.*

14.     To that end, the Court entered the Status Quo Order granting Kavana's motion, and observed that the Order would "help[] preserve the status quo and otherwise assists the parties to conduct business until the factual and legal issues in this case can be fully and finally resolved." Status Quo Order at 2 (Ex. 3).

## II.     The State Court Action

15.     The State Court Action was brought by KGH against three non-debtors for declaratory relief (and against Leventhal for damages, which request for relief has been voluntarily withdrawn without prejudice). In the State Court Action, KGH alleges there was, through Trillist, a scheme to strip KGH of its rights as a 50% member of TPKG Sponsor—an

4

entity managed by Trillist and owned by KGH and Tivoli Investment Holdings, LLC ("Tivoli") (an entity in which Leventhal owns an indirect interest alongside his father). KGH Compl. ¶ 1 (Ex. 2).

16. What initially began as a stealth attempt to hide funds from his judgment creditor, Choate Construction Company, transitioned into a scheme to dilute the ownership interests of KGH in TPKG Sponsor in favor of Tivoli, a business that, on information and belief, Leventhal indirectly owns with his father and mother. By using his powers as Operating Officer of Trillist, Leventhal allowed Tivoli to make additional, undisclosed capital contributions to TPKG Sponsor that KGH did not have the opportunity to match. KGH Compl. ¶ 10 (Ex. 2).

17. KGH sued TPKG Sponsor, Trillist and Tivoli for, among other things, several forms of injunctive and declaratory relief to (i) enjoin TPKG Sponsor from converting these unauthorized capital contributions into additional equity, (ii) freeze all accounts of TPKG Sponsor and (iii) order a complete and accurate accounting of all monies transferred to and from TPKG Sponsor.

## RELIEF REQUESTED

18. For the reasons set forth below, Kavana and KGH seek the entry of an Order either declaring that the automatic stay imposed by section 362 of the Bankruptcy Code does not apply, or modifying it to the extent applicable, to (i) confirm that the Status Quo Order is enforceable by the District Court, (ii) permit the District Court Action to proceed, and (iii) permit the State Court Action to proceed.

## BASIS FOR RELIEF

19. 11 U.S.C. § 362(a) provides that a bankruptcy petition stays the "continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case."

16807773v3

20. Bankruptcy courts are uniformly of the view that the "stay of 'acts against the debtor' is to be strictly construed." *In re Nilhan Devs., LLC*, 622 B.R. 795, 802 (Bankr. N.D. Ga. 2020) (Hagenau, C.J.).

21. But, the stay does not extend to actions initiated by the debtor. *See Crosby v. Monroe County*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

22. Nor does the stay extend to actions against *non-debtors* unless the "claim against the non-debtor will have an immediate and adverse economic consequence for the debtor's estate." *In re Nilhan Developers, LLC*, 622 B.R. 795, 802 (N.D. Ga. 2020); *see also, e.g.*, *In re Penn*, 2010 WL 9445533, at *4 (N.D. Ga. Apr. 2, 2010) (Drake) (rejecting the argument that stay protected a limited liability company in which debtor owned a 100% interest); *In re McCormick*, 381 B.R. 594, 602 (S.D.N.Y. 2008) (concluding that the stay did not apply to an LLC in which the debtor held a membership interest because the court had no "evidence that the pending action against the LLC will have an immediate adverse economic consequence *to the estate's interest in the LLC's stock*"). This is so even where the non-debtor is a co-defendant of the debtor. "The automatic stay does not extend to third-party defendants 'even if they are in a similar legal or factual nexus with the debtor.'" *Glob. One Fin., Inc. v. Back Pain Inst. Of Cleveland, LLC*, 2009 WL 2568064, at *1 (N.D. Ga. Aug. 17, 2009) (quoting *Maritime Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1991)); *Marcus, Stowell & Beye Government Securities, Inc. v. Jefferson Investment Corp.*, 797 F.2d 227, 230 n. 4 (5th Cir.1986) ("The well established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.").

23. Finally, and relevant here, the automatic stay "was not intended to preclude post-petition suits to enjoin unlawful conduct," *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d

6

757, 761 (6th Cir. 2012), and is not a sword to pierce previously issued injunctions by other courts. If it were, debtors "could violate plaintiffs' rights with impunity." *Id.* Where, as here, the underlying "order is designed to uphold the dignity of the court and not to effectuate collection of a judgment," *Forsberg v. Pefanis*, 2010 WL 2331465, at *1 (N.D. Ga. June 7, 2010), courts are uniformly of the view that the stay does not free a debtor of an order for injunctive relief, much less a contempt order based on a violation of that order. *Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999). The phrase "action . . . against the debtor," as used in § 362(a), does not cover "contempt proceedings arising out of disobedience of a state [or federal] order may prior to the stay." *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir. 1977) (holding that "it was entirely consistent for the trial court to grant a stay of the principal proceedings but to continue to order the corporate defendant and its managing agent to comply with a prior discovery order").

### I. Leventhal Cannot Ignore the District Court's Status Quo Order

24. Kavana files this Motion to ensure that the District Court's Status Quo Order remains in place, that the Status Quo order is enforceable in the District Court, and that the underlying governance dispute, which is scheduled for trial in early January, is not subject to the automatic stay.

25. At a minimum, the Court should recognize that the District Court is entitled to enforce its Status Quo Order.

26. The Status Quo Order is in place "not to effectuate collection of a judgment" but to "uphold the dignity of the court," and ensure that Leventhal does not cause irreversible damage to Trillist—or the many stakeholders that invested in the real estate development companies managed by Trillist. *Forsberg*, 2010 WL 2331465, at *1. Although the automatic stay is a powerful protection it does not, as here, "permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge." *Stovall v. Stovall*, 126 B.R. 814, 816 (N.D. Ga. 1990).

27. As set out above, Leventhal filed his petition just days after the District Court entered a consensual Status Quo Order that the parties spent weeks negotiating. The District Court entered the order to "preserve[] the status quo until the merits of the controversy can be fully and fairly adjudicated" and to "assist[] the parties to conduct business until the factual and legal issues in this case can be fully and finally resolved. Status Quo Order at 2.

28. Leventhal has already flouted the District Court's Status Quo Order, and will continue to exceed his powers as Operating Officer of Trillist unless the District Court can enforce its own order, which only the District Court has the jurisdiction to do. *See Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) (observing that "it would wreak havoc on the federal courts to leave enforcement of the [an] injunctive order of a [district] court in one district to the interpretive whims of a bankruptcy court in another district"). The automatic stay does not limit the District Court's ability to enforce that order.

29. In deciding whether to allow proceedings against a debtor who refuses to abide by a court order, courts "draw[] a distinction between contempt proceedings intended to effectuate collection of a judgment and those intended to 'uphold the dignity of the court.'" *Stovall v. Stovall*, 126 B.R. 814, 815 (N.D. Ga. 1990).

30. The Status Quo Order falls firmly in the latter camp. It simply restricts what Leventhal may do as Operating Officer, preserves the status quo and "assists the parties to conduct business until the factual and legal issues in this case can be fully and finally resolved." Status Quo Order at 2. Nothing in the Court's order threatens the property of the estate. In fact, it is just the opposite. If anything, the Order *enhances* Leventhal's estate by permitting him to draw a salary from Trillist to which he is not entitled.

31. "Although the automatic bankruptcy stay 'protects interests in a debtor's

property," it does not, as here, permit Leventhal to "post-petition [] violate [Kavana's] rights with impunity." *Dominic's Restaurant*, 683 F.2d at 760–61. If it were otherwise, the "court's orders could be rendered almost meaningless." *Freedom Medical, Inc. v. Sewpersaud*, 2020 WL 6193837, at *1 (M.D. Fla. Oct. 16, 2020). Courts in the Eleventh Circuit are uniformly of the view that bankruptcy proceedings do "not give [debtors] permission to violate [a] Court's [pre-bankruptcy] injunctive orders," so long as the "orders were injunctive—neither imposing a monetary judgment." *Id.*; *see also, e.g.*, *Burr & Forman, LLP v. Perihelion Glob., Inc.*, 2010 WL 11561483 (N.D. Ala. Jan. 15, 2010) (concluding that a defendant's "filing for bankruptcy the week of its show cause hearing to address [his] contumacious defiance of [the] pre-bankruptcy order to compel document discovery does not curtail the court's power to sanction [defendant]'s conduct").

32. Because the District Court's Status Quo Order here was purely injunctive, Leventhal cannot use his bankruptcy petition to avoid it. Kavana thus seeks an order confirming that the District Court's Status Quo Order is not subject to the automatic stay.

## II. The Court Should Allow the District Court Action to Continue

33. The stay likewise does not extend to the District Court Action between Leventhal and Kavana. Not only is it an action that Leventhal initiated, the equitable claims at issue relate exclusively to the exercise of Leventhal's and Kavana's rights as 50% shareholders of Trillist. To the extent Leventhal's counterclaim is subject to the automatic stay, there is more than sufficient cause to grant relief from the stay.

### A. The automatic stay does not extend to the District Court Action because Leventhal initiated the action and, in any event, it involves only equitable claims.

34. Because § 362(a) applies only to actions "against the debtor"—a phrase that courts strictly construe, *Nilhan Devs.*, 622 B.R. at 802—it does not, as here, extend to actions

9

initiated by the debtor. *See Crosby*, 394 F.3d at 1331 n.2; *Petrano v. Nationwide Mut. Fire Ins. Co.*, 2013 WL 811876, at *2 (N.D. Fla. Mar. 4, 2013) ("Under the plain language of the statute, it is actions against the debtor—not initiated by the debtor—that are stayed when the debtor files for bankruptcy."). The stay thus does not bar Kavana from defending himself in the federal litigation, as the "Code does not "prevent[] persons whom the bankrupt has sued from protecting their legal rights." *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 576 (7th Cir. 1989).

35.　Kavana's counterclaim is likewise not subject to the stay even though it is an action against Leventhal. This is because Kavana's counterclaim seeks only equitable relief and is simply an "exercise of [his] shareholders' corporate governance rights," which the "automatic stay provisions of the Bankruptcy Code [do] not implicate[]." *In re Marvel Ent. Group, Inc.*, 209 B.R. 832, 838 (D. Del. 1997). As a shareholder of Trillist, Kavana's "rights to participate in the governance of the business in which [he] hold equity interests are neither enjoined automatically nor abrogated upon the filing of a bankruptcy petition." *Matter of Am. Media Distributors, LLC*, 216 B.R. 486, 488 (Bankr. E.D.N.Y. 1998); *see also, e.g.*, *In re SS Body Armor I, Inc.*, 527 B.R. 597, 606–07 (Bankr. D. Del. 2015) ("The right of a shareholder to compel a shareholder's meeting for the purpose of election of a new board of directors continues during bankruptcy and the automatic stay is inapplicable to the exercise of that right, including the inception of state court proceedings to compel a shareholder meeting.").

36.　These principles are particularly apt here given that Leventhal himself disputes who may govern the day-to-day operations as Operating Officer of Trillist, and seeks affirmative relief in the District Court Action to confirm that, notwithstanding the notice of removal that Kavana served on Leventhal, Leventhal may still "manage the day-to-day operations of the

10

Company in his role as President in accordance with the Company's by-laws." Compl. ¶ 83, *Leventhal v. Kavana*, 21-cv-60349 (S.D. Fla. Feb. 12, 2021) (Ex. 1).

### B. Even if the stay did apply to Kavana's counterclaim in the District Court Action, there is cause to lift the stay under § 362(d).

37. Even if the stay does apply to Kavana's counterclaim, there is cause to lift the stay under section 362(d) of the Bankruptcy Code. Although the Bankruptcy Code does not define the term "cause," there are a "broad set of circumstances constituting 'cause' for stay relief." *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006). Courts have considerable discretion to lift the stay for cause, *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989), and must "consider the totality of the circumstances" in making that determination. *Mack*, 347 B.R. at 915. Courts routinely lift the stay to "permit proceedings to continue in their original place of origin," where, as here, "no great prejudice to the bankruptcy estate will result." *In re Citrus Tower Blvd. Imaging Center, LLC*, 460 B.R. 334, 339 (Bankr. N.D. Ga. 2011) (Diehl).

38. The test to determine whether the automatic stay should be lifted to allow continuation of a pending lawsuit is:

> (a) Whether any 'great prejudice' to either the bankrupt estate or the debtor will result from continuation of a civil suit;
>
> (b) Whether the hardship to the [non-bankrupt] by maintenance of the stay considerably outweighs the hardship of the debtor; and
>
> (c) Whether the hardship to the [non-bankrupt] by maintenance of the stay considerably outweighs the hardship of the debtor.

*Id.* The application of those three factors here counsels strongly in favor of lifting the stay.

39. *First*, neither Leventhal nor the estate could suffer any prejudice—much less, "great prejudice"—as Kavana's counterclaim's for equitable relief mirrors Leventhal's affirmative claim for affirmative relief. Leventhal's lawsuit asks the district court to declare that Kavana cannot "utilize § 5.4(c) of the Shareholders' Agreement to remove [Leventhal] from his

11

positions." Compl. ¶ 83 (Ex. 1). Kavana asks the Court to order the opposite: that Leventhal must "transition[] the office of the Chief Executive Officer and the Operating Officer to Kavana." Countercl. at 20–21 (Wherefore Clause ¶ (b)) (Ex. 4). Because Leventhal's affirmative suit is not stayed, there is no basis to block Kavana from pursuing the opposite relief when all of the relevant facts that apply to Leventhal's suit will apply just the same to Kavana's suit.

40. *Second*, the balance of hardships disproportionately favors Kavana. Leventhal's stunning and documented pattern of fraudulent acts and gross mismanagement endangers Kavana, Trillist and the various third parties that invested in real estate projects developed or marketed by Trillist. Leventhal, in contrast, will suffer no incremental harm if the Court lifts the stay as to Kavana's counterclaim because, again, Leventhal's initiated the action and has brought claims for declaratory relief that involve facts and circumstances that perfectly overlap with Kavana's single claim for equitable relief.

41. *Third*, Kavana's likelihood of prevailing on his claim that he properly removed Leventhal as Operating Officer of Trillist is more than substantial. For evidence of that, the Court here need look no further than the motion for injunctive relief that Kavana filed and that the district court granted.

42. Accordingly, to the extent the Court concludes that the automatic stay applies, cause exists to grant relief from the automatic stay to allow Kavana to litigate his claim for equitable relief in the Southern District of Florida.

### III. The Automatic Stay Does Not Bar KGH's State Court Action Against the Non-Debtor Entities

43. By its plain terms, § 362(a) does not limit KGH's ability to seek declaratory relief against Trillist, TPKG Sponsor or Tivoli in the pending state court litigation because none of the three parties are debtors and none of the claims against the three parties "will have an immediate

12

and adverse economic consequence for [Leventhal]'s estate." *In re Nilhan Developers, LLC*, 622 B.R. 795, 802 (N.D. Ga. 2020). "Although the automatic stay is 'extremely broad in scope . . . and should apply to almost any type of formal or informal action against the debtor or the property of the estate,' it does not extend 'to separate legal entities such as corporate affiliates; partners in debtor partnerships or to codefendants in pending litigation.'" *In re Johnson*, 608 B.R. 784, 788–89 (Bankr. S.D. Ga. 2019).

44. Nevertheless, KGH seeks this relief because (a) many judges presiding in the State Court require such relief prior to proceeding against non-debtor entities in an abundance of caution, and (b) the Debtor here, without explanation, asserts that the stay might apply to these claims.

45. For starters, none of the claims that KGH brings against Trillist, TPKG Sponsor or Tivoli seek money damages. The claims seek exclusively equitable relief—principally, declaratory relief to confirm that purported "Additional Capital Contributions" that Tivoli made to TPKG Sponsor were unauthorized, as were certain "Shortfall Loans" that Tivoli extended to KGH. KGH Complaint at 24 (wherefore clause ¶¶ (a)–(b)) (Ex. 2). KGH seeks the further declaration that Tivoli cannot "convert any such Shortfall Loans into a Capital Contribution," thereby diluting KGH's 50% ownership interest in TPKG Sponsor and his right to vote that full interest. *Id.* at 24 (wherefore clause ¶ (b)) (Ex. 2).

46. Second, and most importantly, the actions do not threaten the property of Leventhal's estate. To the extent Leventhal has an ownership interest in Tivoli, it is an *indirect* interest that he maintains through his *partial* ownership of Blue Horseshoe Investment Holdings, LLC. Leventhal recently confirmed that much in a sworn affidavit, in which he represented that he does "not own any direct limited liability company membership interests in Tivoli Investment

13

Holdings, LLC." Aff. of S. Leventhal ¶ 6, *Choate Constr. Co. v. Interfinancial Midtown, Inc.*, Case No. 05–1-6700 (May 19, 2021) (attached hereto as **Exhibit 7**).

47. That fact alone defeats any argument that KGH's equitable claims against Tivoli are subject to the automatic stay. Because Tivoli is a "separate legal entity that is established to hold property"—here, an interest in TPKG Sponsor—it must file its own petition "should [it] desire bankruptcy protection." *In re Penn*, 2010 WL 9445533, at *2 (Bankr. N.D. Ga. Apr. 2, 2010). "Having assumed whatever benefits flowed from that decision," Leventhal "cannot now ignore the existence of the LLC in order to escape its disadvantages." *Id.*

48. This is doubly so given that Leventhal does not directly own any interest in *Tivoli*—Blue Horseshoe does—making the facts here even further afield than those at issue in *Penn* where the debtor tried to protect the property of an LLC in which he directly owned a *100% interest*. *Id.*; *see also, e.g.*, *Johnson*, 608 B.R. at 789 (declining to extend the stay to assets owned by a corporation in which debtor owned a 100% interest).

**IV.    Waiver of the 14 day Stay under Rule 4001(a)(3)**

49. Rule 4001(a)(3) provides that an "order granting a motion for relief from an automatic stay … is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." Fed. R. Bank. P. 4001(a)(3) (emphasis added). To the extent the automatic stay applies, Kavana and KGH respectfully request that the Court waive the 14-day stay of Rule 4001(a)(3). Here, given that the closing of the YOO on the Park transaction is imminent, the Status Quo Order is essential to preventing dissipation of assets of the Debtor and non-debtors, time is of the essence in moving forward the sale of 1122 Crescent, and it is critical to maintain the status quo as the District Court did in its Status Quo Order, a delay after entry of an order lifting the automatic stay would prejudice Kavana, KGH and, indeed, creditors of the Debtor.

## CONCLUSION

50. To summarize, Kavana seeks to confirm that section 362(a) of the Bankruptcy Code does not displace the District Court's order granting Kavana's motion for injunctive relief, which preserves the status quo until the District Court enters a final judgment and may be enforced by the District Court. Kavana further seeks to confirm, with respect to further litigation of the District Court Action, that the stay does not apply to Kavana's pending counterclaim for equitable relief; alternatively, to the extent it applies, cause clearly exists to lift the stay—particularly when the facts and law relating to Leventhal's claims overlap with Kavana's counterclaim. Finally, KGH seeks to confirm that the claims it advanced in state court against the three non-debtors, Trillist, TPKG Sponsor and Tivoli, are not subject to the automatic stay.

## REQUEST FOR HEARING ON SHORTENED NOTICE

51. Kavana and KGH submit this Motion pursuant to § 105(a) of the Bankruptcy Code, Bankruptcy Rule 9006(c)(1) and Bankruptcy Local Rule 9006-2 for the entry of an order shortening applicable notice periods and scheduling a hearing on an expedited basis to consider this Motion.

52. The need for an expedited hearing on this Motion arises from the facts that the closing of the Yoo on the Park transaction is imminent, the Status Quo Order is essential to preventing dissipation of assets of the Debtor and non-debtors, time is of the essence in moving forward the sale of 1122 Crescent, and it is critical to maintain the status quo as the District Court did in its Status Quo Order.

53. Bankruptcy Local Rule 9006-2 provides that "[u]pon written motion and for good cause shown, the Bankruptcy Court may shorten the time for notice and hearing with regard to an emergency matter requiring immediate attention." Kavana and KGH request that this Court shorten applicable notice periods and hear this motion as soon as possible.

16807773v3

54. Hearing this Motion on an expedited basis will not unduly prejudice the rights of any party in interest in these cases. Conversely, to deny the request to consider this Motion on an expedited basis would likely result in irreparable harm to the creditors of the Debtor. Given these circumstances, good cause exists for both an emergency hearing and granting this Motion.

WHEREFORE, Kavana and KGH respectfully request that the Court (A) enter an Order: (i) either declaring that the automatic stay imposed by section 362 of the Bankruptcy Code does not apply, or modifying it to the extent applicable, to (a) confirm that the Status Quo Order is enforceable by the District Court, (b) permit the District Court Action to proceed, and (c) permit the State Court Action to proceed, and (ii) waiving the stay of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure to the extent the automatic stay applies, (B) hear this Motion on an expedited basis, and (C) grant Kavana and KGH such other and further relief as may be just and proper.

Respectfully submitted this 14th day of July 2021.

                                            ARNALL GOLDEN GREGORY LLP
                                            *Attorneys for Kavana and KGH*

171 17th Street NW, Suite 2100        By: */s/ Darryl S. Laddin*
Atlanta, GA 30363-1031                   Georgia Bar No. 460793
(404) 873-8500 (telephone)              darryl.laddin@agg.com

                                            -and-

16807773v3

|  |  |
|---|---|
|  | STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A. |
|  | *Attorneys for Kavana and KGH* |
| Museum Tower, Suite 2200 |  |
| 150 West Flagler Street | By: */s/ Albert D. Lichy* |
| Miami, FL 33130 | Albert D. Lichy |
| (305) 789-3428 (telephone) | Florida Bar No. 94272 |
|  | (Admission *Pro Hac Vice* Pending) |
|  | Eric J. Silver |
|  | Florida Bar No. 057262 |
|  | (Admission *Pro Hac Vice* Pending) |
|  | alichy@stearnsweaver.com |
|  | esilver@stearnsweaver.com |

16807773v3

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2021, the foregoing *Emergency Motion of Joseph Kavana and KGH Development, LLC for (I) Entry of an Order Declaring that the Automatic Stay Does Not Apply or Modifying the Automatic Stay to the Extent Applicable and (II) Expedited Hearing* was electronically filed using the Court's CM/ECF system, which sends a notice of this document and an accompanying link to this document to all counsel of record registered in this case through CM/ECF and was further served via first class, United States Mail upon:

J. Robert Williamson
Scroggins & Williamson, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA 30327

J. Hayden Kepner, Jr.
Scroggins & Williamson, P.C.
One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30327

Vaness A. Leo
Office of the U.S. Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
Attn: Vanessa A Leo, Esq.

Todd E. Hennings, Esq.
Chapter 11 Subchapter V Trustee
Macey, Wilensky & Hennings, LLP
5500 Interstate Parkway North, Suite 435
Sandy Springs, GA 30328

Scott Loren Leventhal
1360 Peachtree Street
Suite 750
Atlanta, GA 30309

John A. Christy, Esq.
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, NE, Suite 800
Atlanta, Georgia 30309

Eric W. Anderson
Parker Hudson Rainer & Dobbs LLP
303 Peachtree St NE
Suite 3600
Atlanta, Georgia 30308

Bryan E. Bates
Parker Hudson Rainer & Dobbs LLP
303 Peachtree St NE
Suite 3600
Atlanta, Georgia 30308

John Michael Levengood
Law Office of J. Michael Levengood, LLC
150 S. Perry St., Suite 208
Lawrenceville, GA 30046

Henry F. Sewell, Jr., Esq.
Law Offices of Henry F. Sewell, Jr., LLC
2964 Peachtree Road, Suite 555
Atlanta, GA 30305

16807773v3

Louis G. McByran
McBryan, LLC
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, GA 30328

                                    ARNALL GOLDEN GREGORY LLP
                                    *Attorneys for Kavana and KGH*

171 17th Street NW, Suite 2100      By: */s/ Darryl S. Laddin*
Atlanta, GA 30363-1031                   Georgia Bar No. 460793
(404) 873-8500 (telephone)           darryl.laddin@agg.com

#9641591 v1
16807773v3