**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| **SCOTT LOREN LEVENTHAL,** | ) | **Case No. 21-55036** |
| | ) | |
| Debtor. | ) | |

**RECEIVER'S REPLY**
**TO**
**RESPONSE OF SUBCHAPTER V TRUSTEE**
**AND**
**DEBTOR'S RESPONSE**
**AND**
**RESPONSE OF 13TH STREET HOLDINGS LLC**
**TO**
**RECEIVER'S (A) ACCOUNTING; (B) EMERGENCY MOTION FOR ORDER**
**EXCUSING RECEIVER FROM COMPLIANCE WITH SECTION 543 OF THE**
**BANKRUPTCY CODE; (C) EMERGENCY MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY AND (D) MOTION FOR EXPEDITED HEARING**

**COMES NOW** S. Gregory Hays, not individually, but as Receiver ("**Receiver**")

appointed pursuant to the Order Appointing Receiver dated May 26, 2021 ("**Receiver Order**")

that was entered by the Superior Court of Cobb County Georgia (the "**Superior Court**") in the

Case Nos. 05-1-06700 and 18-1-5244 (the "**Receivership**"), by and through counsel, and files this

*Reply to Response of SubChapter V Trustee and Debtor's Response and Response of 13th Street*

*Holdings LLC to Receiver's (A) Accounting; (B) Emergency Motion for Order Excusing Receiver*

*from Compliance with Section 543 of the Bankruptcy Code; (C) Emergency Motion for Relief*

*from the Automatic Stay and (D) Motion For Expedited Hearing* (the "**Receiver's Motion**"),

respectfully showing the Court as follows:

## PRELIMINARY STATEMENT

1.     On July 12, 2021, the Receiver filed his *(A) Accounting; (B) Emergency Motion for Order Excusing Receiver from Compliance with Section 543 of the Bankruptcy Code; (C) Emergency Motion for Relief from the Automatic Stay and (D) Motion For Expedited Hearing* (the "Receiver's Motion").

2.     On July 14, 2021, the Subchapter V Trustee (the "SubV Trustee") herein filed his Response to the Receiver's Motion. (Docket No. 32).   In his Response, the SubV Trustee opposes the Receiver's Motion and asserts that he has obtained the cooperation of the Debtor and certain insiders to formulate a plan of reorganization.   These insiders are the Debtor's parents, Dorothy and Ronald Leventhal (collectively, the "Debtor's Parents").

3.     On July 21, 2021, the Debtor filed his Response to the Receiver Motion (Docket No. 42).  In his Response, the Debtor makes false accusations against the Receiver and repeats the assertion that the Debtor and other insiders have agreed to cooperate with the SubV Trustee in formulating a plan of reorganization in this case.   In particular, the Debtor claims his father, Ronald, identified in the Response as "BHI Controlling Member" and 13th Street Holding LLC (controlled by his mother Dorothy) will agree to permit some, uncertain amount of funds otherwise payable to them from the YOO on the Park transaction to be used to fund a plan of reorganization.

4.     On July 22, 2021, 13th Street Holdings, LLC filed its Response in Opposition to the Receiver Motion (Docket No. 46).    In its Response, 13th Street Holdings largely re-stated arguments already heard and rejected by the Cobb County Superior Court relating to the authority of the Receiver and the enforceability of the Receiver Order.

5.      As a preliminary matter, during the Receivership, the Receiver requested documents and information from the Debtor regarding the claims of 13th Street Holding and the BHI Controlling Member.  The Receiver had explained to Debtor that if his parents had legitimate claims, he needed to provide proof to the Receiver so the Receiver could understand the claim. The Debtor promised to provide this information but never did so.

6.      The Receiver cannot state that any of the Debtor's Parents, 13th Street Holdings or Blue Horseshoe have any legitimate claims against any funds which may emanate from the YOO on the Park Transaction.  In their Responses, the Debtor and 13th Street Holdings make numerous unsubstantiated assertions concerning the rights held by the Debtor's parents and reference agreements never produced by them.  To date, the claims and  rights purportedly asserted with respect to Tivoli and Blue Horseshoe are based on nothing more than hearsay.

7.      In fact, an independent forensic accounting of the transactions by and between the Debtor and the Debtor's Parents, which go back over ten years, which the Receiver intended to conduct, could well demonstrate that the Debtor transferred funds to his parents and their related entities and that claims may actually exist against them.  There is currently no independent fiduciary in place to conduct any independent examination of these transactions and to pursue claims related thereto.  The Receiver believes that such an investigation will be a pre-requisite for non-insider creditors to even consider the Debtor's proposed subordination of non-insider creditor claims to those of the Debtor's Parents and would certainly be required for the consideration of any plan which may be filed by the Debtor.

8.      Indeed, the Receiver believes that the primary issue in the administration of the Debtor's assets and payment of creditors is the brewing dispute between non-insider creditors and

the Debtor's Parents as to their rights to the YOO on the Park proceeds.   This dispute and the resolution of this dispute will drive the results of either this case or the Receivership Case.

9.     The Receiver is not surprised that the Debtor and Debtor's Parents are now claiming they will work cooperatively to "reorganize" his affairs.  Upon his appointment, similar assurances were made by the Debtor and his parents that they would seek to settle the disputes at issue.  No such effort was ever made, however, and the Debtor and the Debtor's Parents quickly turned to litigation against the Receiver culminating in the Receiver's First Contempt Motion (Exhibit D to Receiver's Motion).

10.     The Receiver will not re-hash the lengthy record of the Debtor herein which plainly shows that statements of the Debtor cannot be taken at face value.    However, and although the Receiver reserves the right to address other issues raised in the Responses, the Receiver believes that it imperative that he quickly respond to or address the following issues raised by the Responses:

A.  **The Receiver did not interfere with or diminish the return for YOO on the Park.**

11.     The Debtor makes the incredible claim that the Receiver improperly interfered with the YOO on the Park Transaction and caused a downward adjustment in the purchase price.  The first claim ignores the clear direction given to the Receiver by the Cobb County Superior Court and the latter claim is an attempt to blame the Receiver for the Debtor's own negligence in failing to properly supervise the construction of the building.  Both ignore the actual efforts of the Receiver which were in accordance with the terms of the Order and welcomed by the parties to the transaction.

12.     First, any reading of the Receiver Order makes clear that diversion of funds from the YOO on the Park Transaction was a concern to the Court in appointing the Receiver.  (Receiver Order, Paragraphs 11 – 13).  Further, among the duties assigned to the Receiver were the power to vote all membership interests of Leventhal in any entity he held and to "oversee and exercise approval authority over any decision or action by Leventhal which may directly or indirectly impact the Receivership Assets or Receivership Estate." (Receiver Order, 8E and O).   These powers were clearly provided to prevent any dissipation of assets.

13.     In light of the Court-mandated restrictions on Leventhal's legal authority, it was incumbent upon the Receiver to ensure that the parties to the YOO on the Park Transaction were aware of same and, to the extent that the consent of the Receiver was required, to provide such consent in order that any sale be properly authorized.  The Receiver reported his activities to the Court and to the parties in the Cobb County Superior Court action in both his First and Second Interim Reports (Exhibits B and C to the Receiver Motion).

14.     The Receiver made no demands upon any party to the YOO on the Park Transaction and simply advised the parties of his appointment and of his commitment to help close the transaction to the extent his consent was required.   Moreover, the Receiver did not issue the approvals required by the Receiver Order until after the Debtor had himself approved the form of same and executed the documents.   The Receiver did not demand or attempt to force the Debtor to take any action or concede any issue and worked cooperatively with all of the parties involved in the transaction to ensure that the transaction was properly documented and any approvals required by the Receiver were issued.  The Receiver reported his activities to the Court.  The Receiver actually refrained from aggressive enforcement of the Receiver Order until the sale documents for the YOO on the Park Transaction were executed and the deposit paid by the

purchaser.  Indeed, the Receiver understood that one of his primary functions was to ensure that the transaction closed and to preserve the proceeds of the transaction for creditors.  This was accomplished by the Receiver pursuant to the Receiver Order, with full and contemporaneous disclosures to the Court and the parties and coordination with the Debtor's pre-petition counsel.

15.    Second, the transaction was not "two days" away from contract execution at the time the Receiver was appointed as alleged by the Debtor.   As a preliminary matter, at the time of the Receiver's appointment, the Purchase and Sale Agreement was in its tenth draft and was being edited by Jones Day, counsel for the seller.   There was no final draft of the agreement and the agreement was being continuously edited by the parties.  On June 4, 2021, Jones Day turned an eleventh draft of the sale agreement back to counsel for the purchaser.  Shortly after turning that draft, Jones Day withdrew from the transaction because they, like many of the Debtor's lawyers, had not been paid.

16.    A further complication to the transaction was that the Debtor had not advised Joseph Kavana, the 50% owner of Trillist and owner of KGH International Development, LLC, of the status of the transaction or provided any waterfall analysis of the transaction to him.  There was no question that Mr. Kavana was entitled to this information and even the attorney representing the Debtor in the litigation with Mr. Kavana could not articulate any reason to the Receiver to withhold it from Mr. Kavana.   On several occasions, Mr. Kavana threatened to not approve the sale due to the failure of the Debtor to provide information requested by him.  The Receiver spent substantial time dealing with accusations from Mr. Kavana regarding the Debtor's withholding of information and resolving these issues to ensure Kavana's cooperation with the sale.

17.     When version 11 of the sale agreement was turned to the purchaser on June 4, 2021 there was no expectation that the purchaser would simply execute this document. Several open issues remained. Indeed, as late as June 10, 2021, the purchaser returned a draft of the agreement containing six open issues including the issue related to the credit outlined in Paragraph 16 of the Debtor's Response. As a preliminary matter, the "credit" referred to in the Response was premised upon alleged violations of the Americans with Disability Act in the construction of the building. Essentially, the Debtor had failed to properly manage and supervise the construction of the building leading to the demand for this credit.

18.     On June 10, 2021, counsel for Atlantic American Federal Fund, L.P., ("AAFF") who was running the transaction at that point, advised the Receiver, with respect to this credit, that, "This issue has been raised by the Purchaser before, but this was the first time that they had put a number on it." Thus, contrary to the Debtor's allegation that the Receiver caused some delay which led to the demand for this credit, this issue was outstanding and unresolved at the time of the Receiver's appointment and was still outstanding nearly fourteen days after the Receiver's appointment. The Receiver's appointment and involvement in the transaction had no impact on the amount of the credit which was largely negotiated by AAFF's counsel and, again, was directly related to the alleged failure of the Debtor, as the manager of the project, to ensure that the building was in compliance with applicable codes and laws.

19.     The Debtor's allegations with respect to this credit in the Response are simply false and are intended to distract from his own responsibility for the alleged construction defects which gave rise to this claim.

B. **The Debtor Proposes to Provide Favorable and Unwarranted Protection to his Parents**.

20.    The Debtor's Response clearly indicates that the Debtor proposed plan is based upon --- and dependent upon --- the consent of the Debtor's Parents.   At page 10 of the Response, the Debtor states that once funds are disbursed to Tivoli from the YOO on the Park Transaction:

> Following the satisfaction of claims against Tivoli, the remaining funds, which should total hundreds of thousands of dollars or more, that will be available for distribution to BHI, which is an entity jointly owned by the Debtor and the BHI Controlling Member."

Presumably, the BHI Controlling Member, who is the Debtor's father, will then consent to some portion of these funds to be paid to non-insider creditors and fund a plan in this case.  No specifics are provided.  There are several problems with this "plan":

a. First, the satisfaction of claims against Tivoli refers to claims asserted by 13th Street Holdings, an entity controlled by the Debtor's mother and in which the Debtor has stated under oath that he owns a membership interest;

b. Second, the Debtor advised the Receiver that the potential share payable to Tivoli from the YOO on the Park Transaction could be in excess of $2 Million, meaning the Debtor contemplates paying over $1 Million from the YOO on the Park Transaction to his mother, leaving "hundreds of thousands" for BHI;

c. Third, it is clear that the Debtor's father, after receiving what is left after the Debtor's mother takes over $1Million, will agree to only a portion of the remaining funds to be disbursed to non-insider creditors;

d. Fourth, the entire plan presumes that the Debtor's Parents claims will be treated as valid; and

e. Finally, whatever pittance is left over after the Debtor has paid his Parents will not be nearly sufficient to pay the claims identified to date and there is no other source of recovery for creditors identified in the Responses.

21. The Debtor asserts that creditors will be protected by freezing funds pending resolution of disputes. The Debtor (and the SubV Trustee) ignore that the Receiver already such arrangements in place with Kavana and an agreement with Kavana to not only freeze funds but to carefully monitor and control the flow of funds from the YOO on the Park Transaction. Indeed, Kavana had obtained a TRO in the Florida District Court to protect his rights. Of particular concern to the Receiver, and Mr. Kavana, was that if the Debtor were left in control of the transaction, either through Trillist or one of the TPKG entities (See Exhibit F to the Receiver's Motion), that funds could be diverted by the Debtor before reaching TPKG Sponsor, the entity which presumably would pay funds to Tivoli upon reaching an agreement with Mr. Kavana. As noted in the Receiver's Motion, the Debtor has already attempted to divert $50,000 to his girlfriend.

22. The Debtor further asserts that there will be complete transparency and cooperation from him and his parents. Given the record in this case as outlined not only in the Receiver's Motion but also in the Motions filed by Choate and Kavana, any claim of cooperation and

transparency from this Debtor should be treated skeptically --- at best.  However, this Court should also be wary of such promises from the Debtor's Parents who refused to cooperate with the Receiver or provide any information to the Receiver.[1]    This is particularly true of Ronald Leventhal, the purported BHI Controlling Member, who has a problematic record in this and other Courts which the Receiver discovered through his own due diligence when it became apparent that the Debtor's Parents would not cooperate with the Receiver.

23.     As noted in the *Affidavit of J. Robert Williamson in Support of Debtor's Application to For Approval to Employ Attorneys for the Debtor* ("**Williamson Affidavit**") (Docket No. 24, Pages 5 – 7 of 9), Debtor's proposed counsel represented several entities controlled by Ronald Leventhal in the Chapter 11 Case styled *In Re Hampton Island Owner's Association,* Case No. 15-64711.  Not mentioned therein is that the Honorable Mary Grace Diehl assessed a $40,000 discovery sanction against the Ronald Leventhal-Controlled Entities.  A copy of this Order is attached hereto as Exhibit A (the "Sanctions Order").  As noted by the District Court in affirming the Sanctions Order, Judge Diehl issued this order, " 'as a consequence of [the Ronald Leventhal-Controlled Entities] *defiance* of the January 15, 2016 Order,' and their bad faith."  (emphasis supplied) (Case No. 15-64711, Docket No. 146, Page 7 of 28).

24.     Debtor's proposed counsel withdrew from its then representation of the Ronald Leventhal-Controlled Entities shortly after the Sanctions Order was entered.  No reason was given

---

[1] The Receiver notes the Debtor's assertion that he provided documents to the United States Trustee.  The Debtor does not state whether those records included the records requested by the Receiver and which are the subject of the Contempt Motion, including records relating to the claims of the Debtor's Parents.

or disclosed for the withdrawal, including whether any amounts were owed to the Debtor's proposed counsel.

25.    Instead of paying the amount awarded in the Sanctions Order or seeking some resolution of the issue, the Ronald Leventhal-Controlled Entities pursued an appeal of the Sanctions Order up to the Eleventh Circuit and the Eleventh Circuit ultimately affirmed the Sanction Order on May 22, 2018, approximately eighteen months after the Sanctions Order was entered.  The Receiver does not know if the sanctions awarded were ever paid and it seems certain that the litigiousness of these entities, directed by Mr. Ronald Leventhal, caused the aggrieved parties to incur even more attorneys fees defending the Sanctions Order.

26.    Beau Howard, then of FreedHoward LLP, represented the Ronald Leventhal-Controlled Entities in these appeals.   Mr. Howard's current firm, Fox Rothschild, is listed as a creditor herein with a debt of $123,000 arising from Mr. Howard's representation of the Debtor in the Kavana litigation.

27.    Ronald Leventhal has also been involved in contentious litigation with investors in the Hampton Island development going back to 2006.  The Debtor apparently has some interest in this development, although the Receiver has not been able to verify the extent of that interest.  The most succinct description of this litigation is contained in an Order entered by the Georgia Court of Appeals holding that the parties suing Mr. Leventhal and his entities had stated valid claims for relief.  A copy of this Order is attached as Exhibit B.  As noted therein, allegations of fraudulent conveyances and a collusive and fraudulent receiver appointment have been made against Ronald Leventhal.   Recently, the Fulton County Superior Court appointed a Special Master.  The Court, in footnote 1 on page 1, cited the length and complexity of the litigation, discovery disputes and

amounts at issue (damages between $2.8 Million and $100 Million) as the basis for the Special Master Appointment.  A copy of this Order is attached at Exhibit C.

28.     Ronald Leventhal and his related companies were represented by Beau Howard and by Taylor English in that litigation.  Taylor English has now withdrawn from that case and is also listed as a creditor in this case.  Despite the amounts at issue, Ronald Leventhal is now representing himself *pro-se* in the Fulton County Superior Court, although the Receiver has no information as to whether it is because of lack of funds or some other issue.

29.     Neither the Debtor nor Ronald Leventhal have any track record of transparency or cooperation.  Simply put, the reliance of the Debtor and, frankly, the SubV Trustee, on vague, oral promises of transparency and cooperation from the Debtor and the Debtor's Parents is untenable and cannot be relied upon as a basis to oppose the Receiver's Motion.

C. **The Administration of this Debtor's Assets Requires a Fiduciary with Broad Powers**.

30.     As noted above, the primary issue in the administration of this Debtor's assets, whether that administration takes place in this Court or in any other Court, is the demand of the Debtor's Parents that their claims be paid prior to any non-insider claims and the desire of this Debtor to effectuate that result.   The Debtor claims that the Receiver cannot seek control of funds otherwise payable to Tivoli and that the Debtor's Parents cooperation is critical to payments to creditors.  This is simply wrong.

31.     First, a reading of the Order appointing the Receiver indicates that the Receiver was appointed for two primary reasons:  (i) the Debtor's history of deception and (ii) the Debtor's

frustration of the ability of creditors to be paid through charging orders against the many entities established by the Debtor.

32.     In order to address this, the primary powers granted to the Receiver were the rights to hold and vote the membership and stock interests of the Debtor in any entity in which he had an ownership interest.  Any remedy which did not enable the Receiver to address the Debtor's transfers of assets among many entities and to contest his Parents' claims would be entirely ineffective.  The Debtor complains about this and alleges that the Receiver does not or should not have this power.

33.     The Receiver does note that the Debtor appealed the Receiver Order.  This was also noted in the Receiver's First Report (Exhibit B to the Receiver's Motion) in which the Receiver stated, with respect to the appeal, "Pursuant to O.C.G.A. 9-11-62(a), there is no automatic stay of the Receiver Order and the Receiver will therefore continue to discharge his duties during the pendency of Mr. Leventhal's appeal unless otherwise directed by this Court." (Paragraph 3).   The Receiver kept the Cobb County Superior Court and the parties advised of his activities.

34.     On June 17, 2021, some  three weeks after the appointment of the Receiver, each 13th Street Holdings sought to stay the Receiver Order.   This request was rejected by the Cobb County Superior Court.  On June 28, 2021, the Debtor filed a Motion for Stay of the Receiver Order with the Georgia Court of Appeals.  The arguments made to the Cobb County Superior Court and the Georgia Court of Appeals are identical to arguments made to this Court in the 13th Street Response.  If the Cobb County Superior Court or the Georgia Court of Appeals believed that the Receiver was acting outside of his authority, or thought that the now-repeated arguments of 13th Street Holdings and the Debtor had any merit, either Court had every opportunity to stay

the Receivership or limit the activities of the Receiver. The pleadings filed by the Debtor with the Court of Appeals and the Order are attached as Exhibit D.

35.    With each of the Cobb County Superior Court and the Georgia Court of Appeals rejecting requests for a stay, the Receiver acted properly in continuing to discharge his duties under the Receiver Order.

36.    Further, there is no basis to argue that the Cobb County Superior Court lacked authority.  As a preliminary matter, "A limited liability company interest is personal property." *See* O.C.G.A. § 14-11-501 (A). In placing the Debtor's assets in the Receivership, the Cobb County Superior Court was simply clarifying that the Receiver was granted authority over all of the Debtor's assets and personal property, including the membership interests.

37.    When the assets of a receivership include a membership interest, the receiver is in control of such membership interest pursuant to the terms of the order appointing the receiver. *See Sec. & Exch. Comm'n v. Champion-Cain*, No. 3:19-CV-1628-LAB-AHG, 2020 WL 8674186, at *1 (S.D. Cal. Mar. 6, 2020) (noting that receiver controlled the membership interest since receivership entities funded the membership interest subject to sale). Since the Receiver has not found any Georgia authority prohibiting a receiver from controlling a membership interest, the Superior Court properly authorized the Receiver to control the membership interests.

38.    Rather than restricting the ability of the Receiver to perform certain conduct, Georgia law clearly provides that the "terms on which a receiver is appointed shall be in the discretion of the court." O.C.G.A. § 9-8-3. Indeed, "a trial court has discretion 'to grant the receiver the necessary powers to do the job that he had been properly appointed to do.'" *Pittman v. State*, 288 Ga. 589, 592, 706 S.E.2d 398, 402 (2011)(finding that court did not abuse its discretion by

enjoining disposition of documents and assets and continuing receivership). Notably, a "court of equity has broad power in the appointment of receivers for property having no one to manage it, or for property charged with the payment of debts." *See Kirchman v. Kirchman*, 212 Ga. 488, 493, 93 S.E.2d 685, 689 (1956).

39.     Other courts in Georgia have explained that, in "managing a receivership, courts sit in equity. In shaping equity decrees, the Court has broad powers and wide discretion." *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 2930965, at *1 (N.D. Ga. May 19, 2016)(citation omitted) (noting that receiver was granted broad power to control assets of entity and that parties shall execute an assignment of policies of such entity). Indeed, the "Court's broad equitable powers include the inherent equitable authority to issue a variety of ancillary relief to protect the receivership, and the scope of possible relief is not limited to parties before the court." *Hill v. Duscio*, No. 1:16-CV-4767-WSD, 2017 WL 10795024, at *1 (N.D. Ga. Mar. 31, 2017) "'Therefore, [a]ny action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.'" *S.E.C. v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 961 (11th Cir. 2010) (citation and internal quotes omitted)(noting that the discretion of the court "'derives from the inherent powers of an equity court to fashion relief'").

40.     There is no legal or factual basis to support the contention that the granting of authority over the Debtor's membership interests was improper or outside the scope of the Court's authority and this was an issue certainly considered by the Receiver in accepting his appointment from the Cobb County Superior Court.

41.     Finally, the Debtor misstates the Receiver's intentions with respect to the funds payable to Tivoli.   The Receiver entered into agreements with Kavana to monitor the flow of funds and to freeze funds at the TPKG Sponsor level in order to ensure that the Debtor did not have control of same and that no funds would be paid to Tivoli until the Debtor's Parents claims had been fully investigated.   To the extent that the Debtor's Parents claim or all or part of the funds payable to Tivoli from the YOO on the Park Transaction, investigation and litigation of those claims is required.  In fact, there cannot even be any meaningful settlement discussions without the full disclosures and forensic accounting of those claims.  The Receiver suggests that if the Debtor's Parents are truly interested in their son solving the problems which led to the appointment of the Receiver, that they should disclaim any interest in any monies from YOO on the Park.

42.     Further, since the Receiver held the membership interests of the Debtor in these various entities, he has standing to pursue claims and adjudicate the Debtor's rights in those entities.   The Receiver respectfully submits that the Debtor's Parents funded this bankruptcy case precisely because of their fear of litigating these issues in the Cobb County Superior Court.   In addition, the Receiver had already begun the process of investigating the possible expansion of the Receivership to include Tivoli and Blue Horseshoe in order to ensure jurisdiction over those entities.   The Cobb County Superior Court specifically granted the Receiver the right to seek expansion of the Receivership.  (Receiver Order at 8V).

43.     At present, the Debtor remains a debtor in possession pursuant to Section 1184 of the Bankruptcy Code.  Moreover, because of the strategic filing of this case under SubChapter V, the Debtor has essentially frustrated the ability of this Court to appoint either an examiner or trustee

for the Debtor.  The Debtor retains the sole power and authority to object to claims and to propose a plan of reorganization and to manage his affairs.

44.    The Receiver recognizes that the Debtor may be removed as a debtor-in-possession and that the powers of the SubV Trustee may be expanded.   No such relief has been requested or suggested in this case.  However, even if this were to occur, and under any circumstance, only the debtor may file a plan of reorganization.   Unless the debtor files a plan that  the court confirms or amends the election, or unless the court reinstates the debtor's possession, the case must conclude through either dismissal or conversion.   Bonapfel, *A Guide To The Small Business Reorganization Act of 2019*, 93 Amer. Bankr. L.J. 571 (2019), *revised July 2021*, at pp. 72 – 73.

45.    Even if an investigation conducted by the SubV Trustee determined that the Debtor's Parents had no claims or that the Debtor's Parents were actually indebted to the Debtor, it is difficult to conceive of any circumstance in which this Debtor, given all of this history,  would propose a plan which did not provide for his Parents or that his Parents would consent to such a result.

46.    At present, the only potential fiduciary who has no conflict or prior relationship with the Debtor or his parents and with the authority to investigate and litigate the issues required to administer this Debtor's affair, to possibly expand the Receivership to include other entities and make arrangements to distribute such assets is the Receiver. This is the ultimate basis of the Receiver's Motion and the reason why the Receiver filed the Receiver's Motion.  Moreover, the Receiver has already developed the trust necessary to work with the Debtor's business partners to maximize the value of the Debtor's remaining assets.  Further, because of the limitations on the authority of the SubV Trustee, this Court cannot appoint a fiduciary in this case with the same

level of authority of the Receiver unless this case is converted to Chapter 7 or the Debtor amends the SubV election.

47.     One additional factor to consider with respect to the Receiver's Motion and possibly other motions pending before this Court is that because Section 1115(a) does not apply, post-petition assets and earnings of an individual are not property of the estate.   Bonapfel, *A Guide To The Small Business Reorganization Act of 2019*, 93 Amer. Bankr. L.J. 571 (2019), *revised July 2021*, at p. 168.   By filing this case as a SubV, this Debtor has essentially sheltered post-petition earnings from his creditors.  On the other hand, the Receiver can liquidate any assets of this Debtor until his creditors are paid.

D.  **There is Nothing Here to Reorganize**.

48.     The Debtor's Response largely confirms the Receiver's contentions in the Receiver Motion that there is no business here to reorganize and that the Debtor's ability to pay creditors arises solely from the liquidation of assets in which the Debtor holds indirect interests and in which other persons and entities also hold interests.      This case amounts to nothing more than a liquidation of these assets.   Further, the Debtor largely confirms that he has virtually no assets in his name and no ability to fund a case.

49.     The Receiver notes that substantial questions may exist concerning the eligibility of the Debtor to file under SubChapter V.  The Debtor has not yet filed his schedules and the Receiver leaves this issue to either creditors or the United States Trustee for further determination.

E.  **The Debtor has Failed to Notice Stakeholders in 1138 Peachtree.**

50.     As noted in the several briefs, the Debtor holds indirect interests in 1138 Peachtree. Pursuant to the chart attached as Exhibit I and other information available to the Receiver, several other entities and individuals have an interest in this property.  Indeed, the Debtor's indirect interest is a minority interest and the Receiver is informed and advised that this interest is subject to an option which he must be exercised prior to 2024.   Moreover, the Debtor solicited investors for this development.  The Receiver had requested all documents on the 1138 Peachtree option and has not received the critical documents to fully understand this transaction.

51.     However, in reviewing the Debtor's Petition and the creditor matrix herein, the Receiver has discovered that the Debtor did not identify the participants in this transaction as creditors or notice them of this case.   The additional parties who the Receiver believes should be notified of this case are:

> Crescent Street, LLC
> Crescent Street Manager, LLC
> Parking Company of America, Inc.
> Manuel Chavez
> David Sterling
> Mona Gory
> Brett P. Garver of Morritt Hock & Hamroff LLP, counsel for Mr. Sterling and Ms. Gory
> TRA 1138 Sponsor, LLC
> Thrillist ATL, LLC
> 1138 Peachtree Land Holdings, LLC

52.     The wholesale failure to identify any interested party in this transaction in his Petition while listing the interested parties from the YOO on the Park and 1122 Crescent is troubling, to say the least.

F.  **The Receiver's Fees are the Direct Result of the Debtor's Lack of Cooperation.**

53.     The Debtor complains about the amount of the Receiver's fees and expenses.   The Debtor makes this argument without regard to the amount of fees incurred by Choate, Kavana, Angel Oak and other creditors and parties in interest caused directly by his own misconduct or failure to comply with agreements.   These fees are likely in the hundreds of thousands of dollars and because the Receiver worked to develop working relationships with these parties, their fees were likely substantially reduced by the appointment of the Receiver.  Further, given the claim amounts listed by attorneys representing the Debtor, the Debtor's costs were also likely substantially lessened by the appointment of the Receiver.

54.     The amount of the Receiver's fees have been driven directly by the failure of the Debtor to cooperate with the Receiver.  The Receiver's fees would have been substantially less had the Debtor simply complied with the Order of the Cobb County Superior Court.

## <u>CONCLUSION</u>

55.     The Debtor's and SubV Trustee's opposition to the Receiver's Motion is premised almost entirely upon vague, oral promises of cooperation from the Debtor and the Debtor's Parents.  The opposition of 13th Street Holdings is premised upon arguments related to the authority of the Receiver already heard and rejected by the Cobb County Superior Court.  Based on the information set forth herein and in other pleadings filed by other non-insider creditors, there is no basis for this Court to leave the Debtor as a debtor-in-possession based on these unenforceable

promises.    The Receiver respectfully submits that the Receiver Motion should be granted.

**Dated: July 22, 2021.**

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

*Counsel for S. Gregory Hays, not individually, but as Receiver for the estate of Scott L. Leventhal*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day a true and correct copy of the foregoing *Reply* was filed with the Clerk of Court and served upon all parties of record via the Court's CM/ECF electronic filing system, and I served the parties by email below

Rob Williamson rwilliamson@swlawfirm.com

Hayden Kepner hkepner@swlawfirm.com

Todd Hennings Thennings@maceywilensky.com

Vanessa Leo Vanessa.A.Leo@usdoj.gov

Bryan Bates bbates@phrd.com

Lou McBryan lmcbryan@mcbryanlaw.com

**Dated: July 22, 2021.**

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

*Counsel for S. Gregory Hays, not individually, but as Receiver for the estate of Scott L. Leventhal*

EXHIBIT A

SANCTIONS ORDER



**IT IS ORDERED as set forth below:**

**Date: September 16, 2016**

_Mary Grace Diehl_

_____

**Mary Grace Diehl**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NUMBER |
| | : | |
| **HAMPTON ISLAND OWNERS'** | : | **15-64711-MGD** |
| **ASSOCIATION, INC.,** | : | |
| | : | CHAPTER 11 |
| Debtor. | : | |
| _____ | : | |

**ORDER AWARDING SANCTIONS**

The Court gave an oral ruling on August 30, 2016 on the Motion of Spottail Landing,
LLC et al.[1] ("Movants") for Sanctions ("Motion for Sanctions") (Doc. 107) against Hampton
Island Club, LLC et al.[2] ("Respondents"). In its oral ruling, the Court awarded Movants
$40,000.00, representing Movants' reasonable attorney's fees and expenses, and detailed its
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052(a)(1). The Court's
findings of fact and conclusions of law are summarized in this Order.

---

[1] Spottail Landing, LLC; Copeland, LLC; The Kenneth Brooks and Anita Wolke Brooks Family, LLC; Lee Burton;
Thomas Burton; Rebecca Tallman; Edward Tallman; HAOP, LLC; and HI, LLC.
[2] Hampton Island, LLC; Fulcrum Loan Holdings, Inc.; The Hampton Island Club, LLC; Liberty Capital, LLC;
Hampton Land Holdings, LLC; Reflections House, LLC; Blue Heron Investments, LLC; and Turtle Lake
Holdings, LLC.

I.    **Procedural Background**

On August 3, 2015, Hampton Island Owner's Association, Inc. ("Debtor") filed a petition for relief under Chapter 11. (Doc. 1). Movants filed a motion for Rule 2004 examinations of Debtor and Respondents and production of documents, which was granted on November 4, 2015. (Docs. 41, 45). A month later, Debtor moved to dismiss its Chapter 11 case. (Doc. 50). Movants opposed the dismissal. (Doc. 52). On December 18, 2015, Movants moved to compel discovery through their Rule 2004 examinations and related document requests. (Doc. 53). On January 15, 2016, this Court entered an order denying Debtor's motion to dismiss and granting Movants' motion to compel. (Doc. 66). The order required Respondents to produce the documents contained in Exhibit A to the Rule 2004 examination orders and file any objections by February 3, 2016. (Doc. 66).

Respondents did not file any objections and did not produce all of the required documents by February 3. (Doc. 97). On February 12, 2016, Movants filed a Motion to Compel Compliance, For Contempt and For Sanctions ("Motion to Compel"). (Doc. 78). A hearing on the Motion to Compel was scheduled for March 24, 2016. (Doc. 84). After Movants filed the Motion to Compel and before the hearing, Respondents produced a substantial number of documents. (Doc. 97).

At the hearing on March 24, the Court determined that certain of the documents that had not been produced must be produced, and the Court ordered Respondents to make two individuals available for further examination pursuant to Rule 2004. (Doc. 98). The Court also awarded Movants fees and costs of $16,223.96 related to the December 18, 2015 motion to compel. (Doc. 98). After the March 24 hearing, Respondents provided the additional documents and the examinations were held. (Doc. 100).

2

Another group of homeowners filed a motion to dismiss the Chapter 11 case on March 22, 2016. (Doc. 89). At the May 19, 2016 hearing on the motion to dismiss, Movants announced their non-opposition to the dismissal but requested that the court retain jurisdiction over their Motion for Sanctions. (Doc. 108). Movants' Motion for Sanctions was filed on May 27, 2016. (Doc. 107). An evidentiary hearing on the Motion for Sanctions was held on August 4 and 5, 2016. (Doc. 111).

Movants seek a total of $111,705.26 in attorney's fees and expenses as summarized in Exhibit O-25, which was admitted into evidence at the hearing. This amount includes a fifteen percent discount on the time and expenses through August of 2016 and an estimate of $10,000 for additional hearing fees.

## II.    Legal Standards

This Court has the authority to award attorney's fees and expenses as a sanction for contempt under the court's inherent powers, § 105(a) of the Bankruptcy Code, and Federal Rule of Civil Procedure 37. In this case, the court's inherent powers, § 105(a), and Rule 37 each independently provide a basis for awarding sanctions.

### A.    The Court's Inherent Powers

The Supreme Court has recognized that "'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The Eleventh Circuit has recognized that bankruptcy courts possess these inherent powers. *In re O'Lone*, 405 Fed. App'x 413, 415 (11th Cir. 2010). A finding of civil contempt under the court's inherent authority requires a finding of bad faith. *Gordy v. Stafford (In re Gordy)*, No. 12-06003, 2013 Bankr. LEXIS 4110 (Bankr. S.D. Ga. Oct. 1, 2013)

3

(citing *Durrett v. Jenkins Birckyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982)). Courts within the Eleventh Circuit have also found that "[r]efusal to comply with court-ordered discovery is contemptuous behavior," sanctionable under the court's inherent powers. *Bailey v. Hako-Med USA, Inc. (In re Bailey)*, No. 09-4002, 2011 Bankr. LEXIS 5424, at *3 (Bankr. S.D. Ga. July 29, 2011) (citing FED. R. CIV. P. 37(b)(2)(A)(vii)). Here, the Court finds that Respondents' delay in producing the requested documents amounts to bad faith.

### B.    Section 105

Courts have also looked to § 105 as a statutory basis for the civil contempt power. The court's power under § 105 is separate and distinct from its inherent power. *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996). Under § 105(a), no finding of bad faith is required to impose sanctions. *Id*. The Eleventh Circuit has held that § 105 includes "any type of order, whether injunctive, compensatory or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Hardy*, 97 F.3d at 1390.

### C.    Rule 37

Federal Rule of Civil Procedure 37 is applicable in adversary proceedings through Bankruptcy Rule 7037 and contested matters through Bankruptcy Rule 9014(c). "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). The Court "has broad authority under Rule 37 to control discovery . . . ." *Id.* In the Eleventh Circuit, a court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

When a motion to compel is granted, Rule 37(a)(5)(A) requires the court to order the

4

party whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). "[S]anctions under Rule 37(a)(5)(A) . . . are limited to the amount that can reasonably cover an attorney's effort in preparing a motion to compel." *Pate v. Winn-Dixie Stores, Inc.*, No. CV 213-166, 2014 WL 5460629, at *5 (S.D. Ga. Oct. 27, 2014).

In addition, "Rule 37(b)(2) authorizes the court to impose sanctions upon a party or an attorney for failure to obey a court order to provide or permit discovery." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993). Rule 37(b)(2) "provides for the award of reasonable expenses and attorney's fees 'caused by the failure' to obey a court order to provide or permit discovery. Expenses incurred outside of this particular context are not provided for in Rule 37(b)(2)." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385–86 (9th Cir. 1988).

### D.    Reasonableness of Attorney's Fees

While Rule 37 explicitly provides that an award of attorney's fees must be reasonable, an award of attorney's fees as a sanction under the court's inherent powers or § 105(a) is also guided by reasonableness. *See e.g.*, *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008) (affirming the bankruptcy court's awarding of reasonable attorney's fees as a sanction under its inherent powers); *In Re Glob. Prot. USA, Inc.*, 546 B.R. 586, 631–32 (Bankr. D.N.J. 2016) (finding that "'reasonableness' in attorney's fees guides the sanction power" under § 105).

In the Eleventh Circuit, courts determine the reasonableness of attorney's fees by applying the "lodestar" method. *Norman*, 836 F.2d at 1299. In determining the value of a lawyer's services, the starting point of the "lodestar" method is "to multiply hours reasonably expended by a reasonable hourly rate." *Id.* After determining the lodestar by multiplying a reasonable hourly rate by the hours reasonably expended, "the court must next consider the

5

necessity of an adjustment for results obtained." *Id.* at 1302. "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350–51 (11th Cir. 2008).

## III.    Discussion

The Court must determine the costs reasonably incurred by Movants as a consequence of Respondents' defiance of the Court's January 15, 2016 Order. The Court finds that the hourly rate is reasonable. In calculating the number of hours reasonably expended, the Court is guided by six conclusions.

First, it was reasonable for Movants to file the Motion to Compel because Respondents did not substantially comply with the Court's order until after the motion had been filed. Second, the time spent reviewing the documents produced is not compensable because timely production would nonetheless have resulted in the need to review the documents. Third, the time spent taking the 2004 exams after the March 24 hearing is not compensable because it was not related to the failure to comply timely with the Court's order. Fourth, the Motion to Compel and supporting documents appear to be "over-lawyered." Though the Court does not criticize the thoroughness and quality of the legal work, in terms of determining what is "reasonable," the court must consider what would have been sufficient to obtain the result. Fifth, the time spent at the hearing must be allocated in proportion to the results obtained. The length of the hearing and preparation time includes amounts for efforts that were neither reasonable nor successful. Had the breadth of the motion been smaller, the hearing and preparation would have taken less time. Sixth, time spent in conferring with attorneys for the Respondents in attempts to obtain compliance is compensable.

Taking into consideration the hourly rate and these six conclusions, the Court finds that a reasonable award of attorney's fees and expenses is $40,000.00.

**IV.    Conclusion**

For the reasons stated above and on the record, it is

**ORDERED** that Movants are **AWARDED** $40,000.00 payable jointly and severally by Respondents, representing Movants' attorney's fees and expenses. Such payment shall be made **within thirty days of the date of entry of this Order** to Counsel for Movants. Counsel for Movants is directed to file an affidavit indicating receipt of payment. If payment is not received in compliance with this Order, Counsel for Movants is directed to file an affidavit attesting to the non-payment.

The Clerk is directed to serve a copy of this Order upon Debtor and the parties on the attached distribution list.

**END OF DOCUMENT**

Distribution List

Robert G. Brazier
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, GA 30326

Vivieon E. Kelley
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

John A. Christy
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, Suite 800
Atlanta, GA 30309-4516

J. Hayden Kepner, Jr.
Scroggins & Williamson, P.C.
One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30327

Ronald S. Leventhal
1360 Peachtree St NE, Ste 750
Atlanta, GA 30309

# EXHIBIT B

# COURT OF APPEALS ORDER



## REMITTITUR

## Court of Appeals of Georgia

Atlanta, March 13, 2020

Case No. A19A1702. WAYNE LYLE et al. v. FULCRUM LOAN HOLDINGS, LLC et al..

Upon consideration of this case, which came before this Court on appeal from the Superior Court of Fulton County, this Court rendered the following decision:

<span style="color:blue">Fulton County Superior Court
***EFILED***QW
Date: 11/18/2020 12:08 PM
Cathelene Robinson, Clerk</span>

**Judgment reversed.**

**McFadden, C. J., Doyle, P. J., and Coomer, J., concur.**



LC NUMBERS:
2017CV295620

Costs paid in the Court of Appeals: $300



*Court of Appeals of the State of Georgia*
*Clerk's Office, Atlanta, November 17, 2020.*

*I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*

*Witness my signature and the seal of said court hereto affixed the day and year last above written.*

*Stephen E. Castlen* , *Clerk.*

Copy from re:SearchGA

**FOURTH DIVISION**
**McFADDEN, C. J.,**
**DOYLE, P. J. and COOMER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1702. LYLE et al. v. FULCRUM LOAN HOLDINGS, LLC et al.

DOYLE, Presiding Judge.

Plaintiffs Wayne Lyle and Charles Cary ("the plaintiffs") filed the instant case against defendants Liberty Capital, LLC; Hampton Island, LLC ("HI"); Fulcrum Loan Holdings, LLC; and Ronald S. Leventhal (collectively, "the defendants"), seeking the following relief: (1) to set aside a 2013 consent judgment approving the transfer of assets by Liberty and HI to Fulcrum, alleging that the lawsuit was collusive, fraudulent, and intended to shelter the assets from a separate judgment later obtained by the plaintiffs against Liberty; (2) fraudulent/voidable transfer; (3) constructive trust/attachment; (4) piercing the corporate veil; and (5) bad faith. The defendants

Copy from re:SearchGA

moved to dismiss the case on multiple grounds, and the trial court granted the motion. For the reasons that follow, we reverse.

The trial court granted the defendants' motion to dismiss the complaint for failure to state a claim under OCGA § 9-11-12 (b) (6).[1] Such a motion

> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[2]

---

[1] Because the plaintiffs' brief opposing the motion to dismiss exhibited materials outside the pleadings, and the trial court's order recites that it "consider[ed] the submissions of the parties and arguments of counsel and party pro se," we must determine whether the motion was converted to one for summary judgment. See *Thompson v. Avion Systems*, 284 Ga. 15, 16-17 (663 SE2d 236) (2008). We conclude that it was not. The order, which cites only to the plaintiffs' complaint, taken as a whole, reflects that the trial court did not consider those exhibits.

[2] (Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014).

2

Copy from re:SearchGA

In other words, "[t]his [C]ourt reviews a trial court's ruling on a motion to dismiss de novo, viewing as true all well-pleaded material allegations in the complaint."[3]

So construed, the allegations in the complaint stated that the plaintiffs are judgment creditors of Liberty. Before the plaintiffs obtained their judgment, Liberty's sole owner, Leventhal, took steps to transfer Liberty's assets away from that entity and into Fulcrum, another entity that he owned and controlled. Leventhal did so with the purpose of defeating Liberty's creditors, including the plaintiffs.

To that end, Leventhal had Liberty file a complaint in the Superior Court of Fulton County against HI, another entity that he owned and controlled. Leventhal verified that complaint, which contained material allegations that were untrue, and concealed the fact that he owned and controlled both the plaintiff and defendant entities. Among other things, Liberty's complaint alleged that HI was in default on notes in favor of Liberty, was likely to refuse to pay rents to Liberty, and was likely to waste Liberty's collateral on the notes, real property in which Liberty had a secured interest.

---

[3] *Villa Sonoma at Perimeter Summit Condo. Assn. v. Commercial Indus. Bldg. Owners Alliance*, 349 Ga. App. 666, 667 (1) (824 SE2d 738) (2019).

3

Copy from re:SearchGA

Liberty convinced the Fulton County court to appoint a receiver, which Leventhal or his representatives selected and engaged. Leventhal or his representatives also served as the receiver's sole source of information and provided the receiver with untrue information about HI's alleged default and likely wasting of Liberty's collateral. To satisfy HI's debt to Liberty, the receiver authorized a foreclosure and sale of the collateral, which was sold to Fulcrum for $50,000, a "fraction of its worth" and an amount significantly less than the amount Liberty owed to the plaintiffs pursuant to their judgment against Liberty. Liberty and HI obtained a consent judgment from the Fulton County court approving this transfer.

The plaintiffs filed the instant case against Liberty, HI, Fulcrum, and Leventhal, seeking the following relief: setting aside the consent judgment; fraudulent/voidable transfer; constructive trust/attachment; piercing the corporate veil; and bad faith. The defendants moved to dismiss the complaint in its entirety on multiple grounds, including that it was untimely and failed to state a claim, and the trial court granted the motion. This appeal followed.

1. *Challenge to the consent judgment.* The plaintiffs allege that the trial court erred by dismissing their challenge to the prior consent judgment. We agree.

4

Copy from re:SearchGA

The plaintiffs sought to set aside the prior consent judgment under OCGA § 9-11-60 and to attack the judgment as the result of the defendants' fraud and collusion under OCGA § 9-12-17. Their challenge under OCGA § 9-11-60 is without merit. They cannot proceed under OCGA § 9-11-60 (a) because their challenge to the judgment, as they have alleged it in their complaint, was not a defect that would have "appear[ed] on the face of the record or pleadings."[4] They cannot proceed under OCGA § 9-11-60 (b) because that subdivision concerns only motions for new trial or to set aside, not complaints asserting the challenge as a cause of action. "A third person not a party to the record cannot go into a court and move to set aside a judgment which is not against him" under this Code section.[5]

Thus, while the trial court properly analyzed the motion under OCGA § 9-11-60, it erred by dismissing the plaintiffs' challenge to the consent judgment under OCGA § 9-12-17, which permits "[c]reditors or bona fide purchasers [to] attack a judgment . . . for fraud or collusion, whenever and wherever it interferes with their

---

[4] (Citation omitted.) *Lawing v. Erwin*, 251 Ga. 134, 135 (303 SE2d 444) (1983).

[5] (Citations and punctuation omitted.) *Peek v. Southern Guar. Ins. Co.*, 142 Ga. App. 671, 672 (1) (236 SE2d 767) (1977), rev'd on other grounds, *Peek v. Southern Guar. Inc. Co.*, 240 Ga. 498, 499-500 (1) (241 SE2d 210) (1978).

Copy from re:SearchGA

rights, either at law or in equity."[6] We find meritless the defendants' argument that

the procedures in OCGA § 9-11-60 of the Civil Practice Act superseded those in

OCGA § 9-12-17. Although OCGA § 9-11-60 (a) provides that "[i]n all . . . instances

[other than when a judgment is void on its face], judgments shall be subject to an

attack only by a direct proceeding brought for that purpose in one of the methods

---

[6] We note that in their complaint, the plaintiffs sought to set aside the consent judgment based solely on OCGA § 9-11-60, without citation to OCGA § 9-12-17, a fact that complicated the trial court's analysis when deciding the motion to dismiss. The plaintiffs did, however, assert OCGA § 9-12-17 in response to the motion to dismiss. And more importantly, they allege in the complaint that Leventhal, Liberty, and HI employed "fraud, deception, and collusion" to convince the Fulton county court to execute the consent judgment, and they list ten "direct and false representations made by Leventhal under oath" in pleadings to that court.

> [T]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act. Thus, a motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. Put another way, if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Punctuation omitted.) *Campbell v. Ailion*, 338 Ga. App. 382, 384-385 (790 SE2d 68) (2016). Here, because the allegations of the complaint gave the defendants fair notice that the plaintiffs sought to set aside the consent judgment based on fraud and collusion, their failure to specifically cite OCGA § 9-12-17 is not fatal to their claim. See id.

6

Copy from re:SearchGA

provided in [OCGA § 9-11-60]," Georgia courts have recognized OCGA § 9-12-17 as a "statutory exception" to this provision.[7] And when our General Assembly chose to re-codify OCGA § 9-12-17 in 1983, it did so in light of both the set-aside procedures of what is now codified as OCGA § 9-11-60 and the Georgia decisions recognizing the statutory exception to those procedures. The General Assembly is presumed to have had full knowledge of this interpretation when it re-codified OCGA § 9-12-17.[8]

"At this time, it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiffs] would not be entitled to [the] relief [described in OCGA § 9-12-17] under *any* state of provable facts asserted in support."[9] To the contrary, the plaintiffs alleged that the defendants worked together to mislead both

---

[7] See *Wasden v. Rusco Indus.*, 233 Ga. 439, 444 (2) (211 SE2d 733) (1975) (including predecessor to OCGA § 9-12-17 as one of the "statutory exceptions" to procedures of predecessor to OCGA § 9-11-60), overruled in part on another ground by *Murphy v. Murphy*, 263 Ga. 280, 283 (430 SE2d 749) (1993); *Albitus v. Farmers & Merchants Bank*, 159 Ga. App. 406, 409 (2) (283 SE2d 632) (1981) (same).

[8] See generally *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984) ("it is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it") (citations and punctuation omitted).

[9] (Emphasis in original.) *Austin*, 294 Ga. 775.

Copy from re:SearchGA

the Fulton County court and the receiver appointed by that court in order to obtain a transfer of real property (in which Liberty possessed a secured interest) to Fulcrum at a fraction of its value so that those assets could not be used to satisfy Liberty's obligations to its creditors. Whether the plaintiffs ultimately will be able to prove their allegations is not relevant at this stage in the proceedings. Any "factual evidence [on that point] which may or may not be developed during discovery . . . can be considered on a subsequent motion for summary judgment."[10] Therefore, the trial court erred in dismissing this claim.

2. *Claim for fraudulent transfer.* The plaintiffs also argue that the trial court erred by dismissing their claim for fraudulent transfer. We agree.

The plaintiffs seek to void the transfer of assets to Fulcrum pursuant to OCGA § 18-2-70 et. seq. The version of that statute in effect at the time of the 2013 transfer permits a creditor to bring an action for relief against a fraudulent transfer, OCGA § 18-2-77 (a) (2013), and it provides, among other things, that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the

---

[10] Id.

8

Copy from re:SearchGA

transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]"[11]

As we concluded with regard to the plaintiffs' challenge to the consent judgment, "[a]t this time, it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiffs] would not be entitled to [the] relief [provided for in OCGA § 18-2-70 et seq. (2013)] under *any* state of provable facts asserted in support."[12] The complaint alleged that the plaintiffs are creditors with claims against Liberty.[13] And the complaint alleged that, with intent to defraud its creditors, Liberty took steps to have the real property in which it held security interests transferred to Fulcrum through the bankruptcy sale. The statute broadly defines "transfers" to include "every mode, direct or indirect, absolute or conditional,

---

[11] OCGA § 18-2-74 (a) (1) (2013).

[12] (Emphasis in original.) *Austin*, 294 Ga. at 775.

[13] See OCGA § 18-2-71 (3) (2013) (defining "claim" to be "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); OCGA § 18-2-71 (4) (2013) (defining "creditor" to be "a person who has a claim").

9

Copy from re:SearchGA

voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. . . ."[14]

Given the breadth of these definitions, we are not persuaded by the defendants' argument that the plaintiffs lack standing because the foreclosure sale did not transfer assets of their debtor, Liberty. We are also unpersuaded by their argument that Liberty's security interest in the real property, as described in the complaint allegations, is excluded from the statute's definition of "asset."[15] It is simply too soon in this case to conclude, as a matter of law, that the plaintiffs cannot present evidence satisfying these statutory elements. Finally, we find meritless the defendants' argument that the statute of limitation has expired on this claim. The complaint alleges the fraudulent transfer to be the bankruptcy sale to Fulcrum, which occurred on October 1, 2013.[16] The plaintiffs filed their complaint on September 22, 2017, within the four-year limitation period set forth in OCGA § 18-2-79 (1) (2013).

---

[14] OCGA § 18-2-71 (12) (2013).

[15] See OCGA § 18-2-71 (2) (2013) ("'Asset' means property of a debtor, but the term does not include: (A) Property to the extent it is encumbered by a valid lien; (B) Property to the extent it is generally exempt under nonbankruptcy law; or (C) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.").

[16] See OCGA § 18-2-76 (1) (A) (2013) (stating when transfer is made).

Copy from re:SearchGA

Accordingly, the trial court erred by dismissing the plaintiffs' claim for fraudulent transfer.

4. *Claim for constructive trust.* The plaintiffs further contend that the trial court erred by dismissing their claim for a constructive trust. Again, we agree.

The plaintiffs allege that pursuant to OCGA § 53-12-132, they have a constructive trust on the assets transferred to Fulcrum. That Code section provides that "[a] constructive trust is implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[17] It arises "by equity with respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it."[18] It is true "that a claim for the imposition of a constructive trust is not an independent cause of action. In this case, however, [the plaintiffs] have sufficiently alleged a supporting cause of action[, the fraud discussed above]."[19]

---

[17] OCGA § 53-12-132 (a).

[18] *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172 (1) (244 SE2d 46) (1978) (construing predecessor statute).

[19] *Morrison v. Morrison*, 284 Ga. 112, 113 (1) (663 SE2d 714) (2008).

11

Copy from re:SearchGA

Because evidence could show within the framework of the complaint that would permit the imposition of a constructive trust over assets transferred to Fulcrum, the trial court erred by dismissing this claim.

5. *Claim for piercing the corporate veil.* The trial court also erred by dismissing the plaintiffs' claim that the corporate veil between Leventhal and the defendant entities was pierced.

"Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused."[20] In their complaint, the plaintiffs alleged facts that, taken as true, show that Leventhal abused the corporate form of the defendant entities: that he disregarded corporate formalities; intermingled corporate and personal funds, staff, and property; undercapitalized the entities to avoid creditors; used corporate funds to pay individual obligations; and siphoned off corporate funds for himself, his family, and other entities he controls. While the defendants

> are correct that to the extent [the plaintiffs] seek to reach the assets of [the defendant entities] for any judgment debt personally incurred by [Leventhal] under the theory of outsider reverse veil-piercing, such a

---

[20] *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (1) (612 SE2d 296) (2005).

12

Copy from re:SearchGA

claim is foreclosed by Georgia law. However, construed in the light most favorable to [the plaintiffs] with all doubts resolved in their favor, [their] complaint state[s] a claim for holding [Leventhal] liable for any judgment debt incurred by [the defendant entities] under a veil-piercing theory[.][21]

Thus, the trial court erred by dismissing this claim.

6. *Bad faith*. Finally, the trial court erred by dismissing the plaintiffs' claim for attorney fees and expenses under OCGA § 13-6-11.

In support of this claim, the plaintiffs alleged that the defendants have acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense. These allegations are sufficient to state a claim under OCGA § 13-6-11.[22] Accordingly, the trial court erred by dismissing this claim.

*Judgment reversed. McFadden, C. J., and Coomer, J., concur.*

---

[21] (Citations omitted.) See *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190, 211 (6) (833 SE2d 317) (2019).

[22] See *Siavage v. Gandy*, 350 Ga. App. 562, 567 (3) (829 SE2d 787) (2019).

13

Copy from re:SearchGA

# EXHIBIT C

# SPECIAL MASTER ORDER

Fulton County Superior Court
***EFILED***JD
Date: 7/16/2021 1:29 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

Wayne Lyle and Charles Cary,                )
                                            )    CIVIL ACTION NO.
      Plaintiffs,                         )    2017CV295620
                                            )
v.                                          )
                                            )    JUDGE COX
Liberty Capital, LLC, Hampton Island,       )
LLC, Fulcrum Loan Holdings, LLC, and        )
Ronald S. Leventhal,                        )
                                            )
      Defendants.                         )

## NOTICE REGARDING APPOINTMENT OF SPECIAL MASTER

Having considered the record in the above-captioned case, the Court finds that the interests of the Parties and the orderly management of the Court's business would be served by appointment of a Special Master in the above-captioned case.[1]  Accordingly, the Court hereby provides notice and an opportunity to be heard regarding the appointment of **William A. DuPre, IV** as the Special Master in the above-captioned case.  Unif. Sup. Ct. R. 46(A)(1)(b).  The contact information for the Special Master is as follows: William A. DuPre, IV, email: bill.dupre@millermartin.com, address: 1180 West Peachtree Street, N.W., Suite 2100, Atlanta, Georgia, 30309-3407, phone: (404)

---

[1] By moving to appoint a Special Master in this case, the Court acknowledges the origins of the case, given that the first actions giving rise to the litigation occurred in 2006. The Court also notes the special challenges raised in the case as set forth in the June 9, 2021, Court ordered *Joint Report On Discovery Dispute And Related Matters*. The case involves complex issues related to the scope of discovery as it relates to banking and tax records, the transfer of assets and issues related to alter ego. Finally, the Court notes that in a recent filing a delta value differential was expressed in the case. Specifically, the dispute in this case ranges between a value of 2.8 million up to 100 million. Collectively, these issues make the case a prime candidate for the appointment of a Special Master.

Copy from re:SearchGA

962-6100.   If appointed, the Special Master would be subject to the terms and conditions set forth below.

## I. DUTIES

If appointed, the Special Master would address all pre-trial matters raised by the Parties, including but not limited to, resolution of discovery disputes, dispositive motions, and other motions filed by the Parties.

**A.    Case Management**

If appointed, the Special Master would have the authority to conduct scheduling conferences, establish supplemental case management orders, and otherwise perform such acts necessary to expeditiously and efficiently move the case through the pre-trial process.  As it relates to the supervision of the discovery process, the Special Master's authority would include but is not limited to managing any discovery of electronically stored information ("ESI").  This authority would consist of and not be limited to allocating the costs associated with ESI discovery, supervising the review of ESI, evaluating the scope, manner, necessity, and propriety of ESI discovery, conducting him privilege reviews for attorney-client, work product, trade secret, proprietary, and confidential information, making recommendations to the Court on the subject of spoliation, as well as considering disputes related to third-party discovery.

**B.    Conflict Resolution**

If appointed, the Special Master would have the power to entertain all motions for relief brought by the Parties and would issue written rulings upon submission to the

Copy from re:SearchGA

Special Master.  In this regard, the Special Master would have the authority to receive testimony under oath before a court reporter and to preside over the reception of evidence into the record.  Finally, as indicated in the Court's Case Management Order and as required by the Uniform Superior Court Rules, the Parties should first discuss the discovery dispute with the Special Master to resolve any such dispute before filing any discovery motions.

**C.     Settlement**

If appointed and requested, the Special Master may serve as a mediator to facilitate settlement of the above-captioned case.

**D.     Sanctions**

If appointed, the Special Master may impose sanctions upon any party for failure to comply with discovery requirements.

**E.     Report and Recommendation**

If appointed, the Special Master would consider the pleadings, review the evidence, and if appropriate, take evidence and hear oral argument regarding the merits of all motions and other pre-trial matters raised in the above-captioned case.  Upon completing such review and consideration, the Special Master would report the findings to the Court.  Contemporaneously, the Special Master would serve a copy of the Report upon the Parties.

Copy from re:SearchGA

**F.     Other Duties**

If appointed, the Special Master may perform, at the request of the Parties or the Court, such other and further tasks not specifically enumerated in this Notice.

## II.  CONDUCT OF THE PARTIES

If a Special Master is appointed, the Parties would be instructed to cooperate with the Special Master in all respects.  That cooperation would include, but not be limited to, making available to the Special Master any facilities, files, documents, or other materials the Special Master may request to fulfill the Special Master's duties.  The Parties would <u>not</u> be permitted to engage in *ex parte* communication with the Special Master or the Special Master's staff, except as would be permitted with the Court.  The Special Master may have *ex parte* communications with the Court to the extent the Court deems appropriate.

## III.  COMPENSATION OF THE SPECIAL MASTER

If a Special Master is appointed, the Parties will bear the cost of the Special Master on the following terms and conditions:  The Special Master would charge an hourly rate of $570.00 and would keep an account of all hours by tenths of an hour, and any expenses incurred by the Special Master in the performance of the Special Master's duties.  Provided that such attorneys / individuals do not bill at more than their standard hourly rate and their rate is lower than the Special Master's rate, the Special Master may

Copy from re:SearchGA

obtain assistance from other attorneys and support staff.[2]    In this regard, the Special

Master would issue an invoice describing the work performed and the hours attributable

to the work performed, plus the expenses incurred by item, to the Parties monthly

during the month following the month in which the Special Master's services were

performed. The Parties must each pay one-half of the charges reflected on the Special

Master's invoices within 30 days of receipt.  The cost of the Special Master may, upon

request of either Party, be allocated among the Parties as the Court deems appropriate

based upon the conduct of the Parties and such other factors as the Court may deem

appropriate. All issues regarding the allocation of costs shall be based upon the

recommendation of the Special Master. Finally, the Special Master would make a

specific recommendation to the Court as to the allocation of costs.  All issues regarding

reallocation of costs that have been ruled upon by the Court shall be trued up and paid

as between the Parties every 90 days. Neither a reallocation nor a request for

reallocation will relieve any Party each paying their one-half share to the Special Master

within 30 days of receipt of each invoice.

## IV.  APPEALS

Rulings of the Special Master may be appealed to this Court on a *de novo* basis.

However, absent an express Order from the Special Master relieving a party from

complying with any Order pending an appeal, the parties would need to comply with the

---

[2] Associates who may be used include without limitation Sarah Banda, Elizabeth
Marquardt, Destiney Randolph and Alex Vey at the rates of $310, $360, $300 and
$350 /hour, respectively. Paralegals may also be used where appropriate at rates
ranging from $260 to $300. All rates are subject to change annually.

Copy from re:SearchGA

Special Master's Orders while any such appeal is pending. Accordingly, the Parties may file, within ten (10) calendar days of its issuance, objections to the Special Master's Report to the Court. The Court shall review such objections based upon the applicable legal standard.

## V.  SPECIAL MASTER COMMUNICATION WITH COURT

If appointed, the Court would instruct the Special Master to maintain all pleadings and correspondence submitted by the Parties and to forward the entirety of such documents and records to the Court with his Final Report. Finally, by accepting the appointment, the Special Master would represent to the Court that there are no matters within the scope of the appointment for which the Special Master could or should be disqualified and that the Special Master accepts the terms and conditions of the appointment. The Order appointing the Special Master would be effective upon the submission by the Special Master of the affidavit required under Uniform Superior Court Rule 46.

## VI.  PARTIES' OPPORTUNITY TO BE HEARD

The parties are **DIRECTED** to submit correspondence indicating any objections to the appointment of William A. DuPre, IV as Special Master within fifteen days from the entry of this Notice. <u>See</u> Unif. Sup. Ct. R. 46(B)(1). Should the parties notify the Court that they consent to the appointment of the Special Master in advance of that deadline, the Court will proceed with entering an order appointing the Special Master.

Copy from re:SearchGA

**SO ORDERED**, this 16th day of July 2021.

**THOMAS A. COX, JR. JUDGE**
**SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**

Copy from re:SearchGA

# EXHIBIT D

# Court of Appeals
# of the State of Georgia

ATLANTA, June 29, 2021.

*The Court of Appeals hereby passes the following order*

**A21A1634. SCOTT L. LEVENTHAL v. CHOATE CONSTRUCTION COMPANY.**

Upon consideration of the APPELLANT'S RULE 40(B) EMERGENCY MOTION in the above styled case, it is ordered that the motion is hereby DENIED.



*Court of Appeals of the State of Georgia*
*Clerk's Office, Atlanta, June 29, 2021.*

*I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*

*Witness my signature and the seal of said court hereto affixed the day and year last above written.*

*Stephen E. Castlen* , *Clerk.*

# IN THE COURT OF APPEALS
## STATE OF GEORGIA

SCOTT L. LEVENTHAL,                )
                                )
      Appellant,           )
                                )
v.                                 )          APPEAL NO. A21A1634
                                )
CHOATE CONSTRUCTION                )
COMPANY,                           )
                                )
      Appellee.            )

---

## APPELLANT SCOTT L. LEVENTHAL'S
## EMERGENCY MOTION TO STAY

---

DUPREE, KIMBROUGH, CARL &
REILLY, LLP

HYLTON B. DUPREE, JR.
Georgia State Bar No. 234800
BLAKE R. CARL
Georgia State Bar No. 272829
Attorneys for Appellant
49 Green Street
Marietta, Georgia 30060
(770) 424-7171

## I.   INTRODUCTION

Scott L. Leventhal, Appellant, files this *Emergency Motion to Stay Order Appointing Receiver* pursuant to this Court's Rule 40(b) "to preserve jurisdiction of an appeal [and] to prevent the contested issue from becoming moot." The emergency relief requested to be ordered by this Court is necessary to stay the enforcement of the trial court's *Order Appointing Receiver* entered on May 26, 2021 (the "Order").[1] A true and correct copy of the Order is attached as **Exhibit 1**. A copy of the Notice of Appeal relating to the Order is attached as **Exhibit 2**.

The Order appoints a Receiver over the assets of Appellant for the purpose of collection of a judgment. Additionally, the Order compels Appellant to turn over to the Receiver books, financial records, bank accounts and similar records of entities owned *directly or indirectly* by Appellant, or controlled or managed by Appellant, including limited liability companies ("LLCs"), corporations or partnerships that are not judgment debtors ("Companies") to the sole creditor who brought the motion to appoint the receiver. This has all be done to determine what

---

[1]    This Emergency Motion is being filed in the instant appeals docketed before this Court on June 15, 2021, in Case Numbers: A21A1633 and A21A1634 (the "Instant Appeals"). Identical Orders were entered by the lower court in two separate cases and directly appealed to this Court. Thus, the Instant Appeals are related cases. These appeals are also related to Court of Appeals Case Numbers: A21A1476, A21A1477 and A21A1478, wherein the order appointing a Special Master/Auditor by the court below is related to the same subject matter of the Order that is the subject of this Emergency Motion *infra*.

assets of Appellant can be used to satisfy the judgment of the single creditor, Choate Construction Company ("Choate").

The Order violates the Georgia Supreme Court rule stated in *Acree v. McMahan*, 276 Ga. 880, 881, 585 S.E. 2d 873, 874 (2003), declaring that Georgia does not allow reverse-veil piercing, and this Court of Appeals binding precedent stated in *Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152 (2015), prohibiting accountings of LLC's and the production of LLC's business records to a judgment creditor of a member of the LLC, who is not also a creditor of the LLC.

The Order provides:[2]

> C.    To require the production by [Appellant] **and any affiliated business entity owned, managed, or controlled by [Appellant] of any documents, financial and accounting records, shareholders' agreements, membership agreements, partnership agreements, employment records, tax returns, financial statements, computer files, computer databases,** and any and all other documents and records evidencing, relating, or pertaining to any assets chargeable with the satisfaction of the Final Judgment and which are to be provided or paid to the Receiver under this Order; (Emphasis added).

> D. To take custody, control and possession and to the turnover of all Receivership Assets and records relevant thereto from

---

[2]    This Order is 26 pages long and the powers provided to the receiver is truly unlimited. In a recent hearing on June 23, 2012, before the lower court on 13th Street Holdings, LLC's ("13[th] Street") Emergency Motion to Intervene as party with a claim, the receiver who is seeking 13th Street's records argued against its intervention stating bluntly, "until we see all the records of this entity" we cannot determine if it is a party. The motion to intervene was denied, as was its Emergency Motion to Stay the Receiver Order, as the parties including the Receiver argued 13th Street was not a party under O.C.G.A. § 9-8-5.

[Appellant] or any other person or entity in possession of same, including, but not limited to, property interests, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, ownership interests, stocks, membership interests, partnership interests, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, **which [Appellant] owns, possesses, has a beneficial interest in, or controls directly or indirectly**; to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto; (Emphasis added).

E. To exercise all voting rights and other rights possessed by [Appellant] under any stockholders' agreement, membership agreement, partnership agreement, governing charters, by-laws, or other similar agreements;

Order at 10 ¶¶ 8C, 8D and 8E.

All for the purpose of liquidating the "assets" for the benefit of a single judgment creditor of Appellant, Choate.

This Court ruled in 2015 that neither a judgment creditor of an individual member in an LLC, nor of an individual shareholder in corporations, is entitled to obtain an accounting from the companies in which they own an interest who are non-judgment debtors, as such is irrelevant to post-judgment collection activities. *Gaslowitz, supra.* "[T]he court may charge the limited liability company interest of the [judgement-debtor member] or such assignee with payment of the unsatisfied amount of the judgement with interest. To the extent so charged, the judgment creditor *has only the rights of an assignee of the limited liability company interest.*" O.C.G.A. § 14-11-504. (Emphasis added).

-3-

The Order violates this Court's ruling in *Gaslowitz* by appointing a receiver

over Appellant—who is a judgement-debtor and owner of Companies—and grants

the receiver authority to directly obtain accountings and business records from those

Companies on behalf of the outsider judgment creditor. The Order further grants

the Receiver with authority to control those Companies by allowing the Receiver to

exercise voting and/or managerial control that is vested in the Companies' owner(s).

This circumvents Georgia law's limitations on the legal remedies available to a

judgement creditor which, with respect to (1) interests in LLCs, to obtain a charging

order against the judgement debtor's interest and thereby solely become an

assignee, and (2) stock in corporations, to levy the stock.

The Order further commands:

> . . . [Appellant] [to] turn over to the Receiver all documents and
> information relating to the sale of the Yoo on the Park and the
> Property located at 1122 Crescent Avenue, Atlanta, Georgia **and
> his direct and indirect interests in any of the proceeds to be
> generated from the sale of those properties by The Trillist
> Companies, Inc.** (Emphasis added).

> . . . [Appellant] [to] file with the Court and serve upon the Receiver
> and Choate a sworn statement, and accounting, with complete
> documentation, covering the period from January 1, 2019 to the
> present:. . . [o]f all Receivership Assets, wherever located, held by
> or in the name of Leventhal, **or in which he, directly or
> indirectly, has or had any beneficial interest, or over which he
> maintained or maintains and/or exercised or exercises control,
> including** . . . any and all accounts, including all funds held in
> such accounts, with any bank, brokerage or other financial
> institution held by, in the name of, or for the benefit of him,
> **directly or indirectly, or over which he maintained or**

**maintains and/or exercised or exercises any direct or indirect control, or in which he had or has a direct or indirect beneficial interest**, including the account statements from each bank, brokerage or other financial institution; (Emphasis added).

Order at 10, § III ¶ 10 at 12, ¶ 11A.

Evidence used by Choate in support of its motion to have the Receiver appointed clearly demonstrated how far-removed Appellant's interests are in the Yoo on the Park asset referenced in the Order *supra*. A copy of the organizational chart that Choate presented to the trial court, and which will be part of the record to be transmitted to this Court for this appeal, is attached hereto as **Exhibit 3**. The Receiver's actions since the entry of the Order in the business affairs and exercising of control over the Yoo on the Park asset, among other things, clearly violate the rule under *Gaslowitz* and *Acree*.

The Order was entered on an emergency basis after Appellee's attempts to obtain accountings from those Companies directly failed. The trial court appointed Patrick Braley (a non-lawyer) as special master/auditor pursuant to a second *Order Appointing Special Master/Auditor* on March 22, 2021 (the "Second SMO"). Appellant and Non-Party 13th Street Holdings, LLC ("13th Street") filed Notice of Appeals of the Second SMO on April 20, 2021, which are currently pending before this Court, and oral argument has been granted by this Court on 13th Street's appeal.[3]

---

[3]    13th Street's appeal of the Second SMO was docketed on May 19, 2021, in Case Number: A21A1478, and oral argument was granted by this Court

One week after the filing of the Notice of Appeals, Appellee, without due process and credible, admissible evidence, moved for the trial court to exercise an extraordinary equitable power to appoint the Receiver over Appellant's assets and expanded the Receiver's duties to include taking control and overseeing the assets of Companies. The Order had the effect of amending, altering, or modifying the Second SMO while that order was, and is, on appeal before this Court. Thus, the trial court was divested of jurisdiction to even enter the Order.

The Order is further fundamentally flawed because it rests on the theory of outsider reverse veil-piercing to reach the assets owned by Companies to collect a debt owed by a corporate shareholder or LLC member. As the Georgia Supreme Court decided, reverse veil-piercing is not recognized under Georgia law and prejudices the interests of other stakeholders. *Acree v. McMahan*, 276 Ga. 880, 881, 585 S.E. 2d 873, 874 (2003). Consequently, no LLC or corporation who is not also a judgement-debtor can be held liable for the debt of Appellant to Appellee under *Acree*, even assuming Appellant is the sole stockholder or member of any Company and the alter ego of Appellant. Certainly, under *Acree*, a receiver of a judgment-

---

within one day of request. Appellant's appeals of the Second SMO were docketed on May 19, 2021, in Case Numbers: A21A1476 and A21A1477. Appellate Case Numbers: A21A1476, A21A1477 and A21A1478 are the "Related Appeals". Identical Orders were entered by the lower court in two separate cases and directly appealed to this Court. Thus, the Related Appeals are related cases to each other and to the Instant Appeals.

debtor member should not be able to control a company because the judgement-debtor holds an interest, nor should it be entitled to obtain accountings from Companies based on this Court's rule in *Gaslowitz*.

Accordingly, to avoid this appeal becoming moot, Appellant respectfully requests that this Court issue an emergency order directing the Superior Court to stay the Order pending its appeal.

## II.    TYPE OF CASE, STATEMENT OF JURISDICTION AND SATISFACTION OF FILING PREREQUISITES

The instant appeal relates to collection of a judgment held by Appellee against Appellant. Appellee exercised its legal remedies to collect on its judgment, which have gone unopposed by Appellant. Appellant and the Companies, however, have opposed Appellee's efforts seek accountings and control over non-judgement debtor Companies.

Appellee has sought and obtained the extraordinary equitable remedy of the appointment of the Receiver over Appellant and assets and interests of Appellant in various Companies. Appellee's principal argument to the trial court for this emergency, extraordinary relief was based on the imminent sale of two real assets not even owned directly by Appellant.[4] Appellee alleged that the Receiver was

---

[4]    Yoo on the Park, an apartment building owned by TPKG 13th Street Development, LLC, and 1122 Crescent Avenue, an apartment building owned by 1122 Crescent Land Holdings, LLC, both of which have third-party investors and are not judgment debtors.

-7-

needed to safeguard the distribution of proceeds from the sales to Appellee—even though Appellee already holds a charging order against the entity in which Appellant holds indirectly his interest in <u>one</u> of the primary assets. The Order granted the Receiver—and Appellee—access to the books and records of Companies and permitted the Receiver to act in the name of Appellant in exercising managerial control over non-judgement debtor entities.

Indeed, without immediate intervention by this Court, irreparable harm and damage without the protection of a bond will continue to Appellant and non-judgment debtors, all of which will be subjugated to continued damages caused thereby.

This Court has jurisdiction of this case in light of O.C.G.A. §15-3-3.1 and because this Court has appellate jurisdiction "in all cases not reserved to the Georgia Supreme Court or conferred on other courts by law." Ga. Const. art. VI, § 5, ¶ 3. This case is not among the classes of cases reserved to the appellate jurisdiction of the Georgia Supreme Court. Ga. Const. art. VI, § 6,1112-3. This Court has the authority to grant the requested relief pursuant to Rule 40.

Appellant has satisfied all prerequisites to this Emergency Motion by: (1) providing explanation as to why relief is necessary and time sensitive; (2) attaching a file-stamped copy of the Order [Ex. 1]; (3) attaching a copy of the file-stamped

copy of the Notice of Appeals of the Order [Ex. 2]; (4) showing proper service (Certificate of Service); and (5) paying the filing fee.

### III.    PRELIMINARY ENUMERATION OF ERRORS

Appellant presents the following preliminary list of errors with respect to the Order:

1. The Order was entered without due process affecting non-parties by the authority granted to the Receiver;

2. The Order infringed on the constitutional authority of the Georgia General Assembly as the Order violates the Georgia Limited Liability Act (O.C.G.A. § 14-11-100 *et seq.*);[5]

3. The Order permitted outsider reverse-veil piercing;

4. The Order conflicts with Georgia law regarding the rights of a receiver over assets not owned by a judgment debtor;

5. The Order was entered after the Superior Court was divested of jurisdiction following the filing of the Notice of Appeals of the Second SMO, which Related Appeals are currently pending before this Court;

6. The Order saddled Appellee's judgment collection costs onto Appellant; and

---

[5]    The authorities of the States of Delaware and Wyoming have been likewise infringed since several the Companies are organized in those states.

7.    The Order was erroneous in that it constitutes a mandatory injunction

issued without consideration of evidence or the requirements for issuance.

## IV.    RELEVANT PROCEDURAL HISTORY

### A.    The Related Appeals.

Appellant requests that this Court review the record in the Related Appeals

for the relevant procedural history to the Instant Appeals. Specifically, the Brief of

13th Street filed on June 8, 2021, in Case Number A21A1478, and the Briefs of

Appellant filed on June 8, 2021, in Case Numbers A21A1476 and A21A1477

contain detailed relevant procedural history giving rise to the Related Appeals and

is relevant to the granting of this Emergency Motion.

### B.    The Instant Appeals.

One week following the filing of Notice of Appeals of the Second SMO,

Appellee filed a *Renewed Emergency Motion for Appointment of Special

Master/Auditor and Receiver* on April 27, 2021. In its motion, Appellee sought to

expand Patrick Braley's authority as special master into a receiver. Specifically, the

motion requested Mr. Braley act as: (1) special master to review Appellee's

discovery and oversee full and complete responses by Appellant ***and various

Leventhal Affiliated Entities and banks*** and to report to Appellee and the trial court

regarding Appellant's available assets (***including every company in which***

*Appellant has an ownership interest and which may hold assets for Appellant's benefit*); (2) as receiver to take possession and control for purposes of preservation and satisfaction of Appellee's judgement (against Appellant) . . . any funds from the sale of two real estate assets not owned by Appellant which are to be distributed directly to Appellant *or indirectly to Appellant through any business entity, and any other assets of Appellant (inclusive of assets held within Appellant's wholly owned companies for Appellant's benefit)*; and (3) taxing the costs of the special master and receiver and Appellee's attorneys' fees against Appellant.

In support of its motion, Appellee submitted conclusory evidence, including, by example, excerpts from unverified pleadings from unrelated cases. The trial court deprived Appellant's request to cross-examine the only witness who provided an affidavit in support of the motion.

A hearing was conducted on the motion on May 11, 2021. On or the day before the hearing, Appellee submitted a proposed order that suggested the appointment of a different receiver than Mr. Braley and submitted its proposed Order which was adopted and entered by the trial court on May 26, 2021. Notice of Appeals were filed by Appellant on May 27, 2021. The Instant Appeals were docketed with this Court on June 15, 2021.

On June 16, 2021, Appellant filed Motions for Protective Order or, in the Alternative, Motion to Stay the Execution of the Order, until such time as this Court

-11-

has entered an opinion on the Related Appeals and the Instant Appeals. Motions to

Stay the Order were also filed by 13th Street on June 17, 2021.

At a hearing conducted on June 23, 2021, the trial court stated that the

pending motions to stay the Order are going to be denied, and Appellant has now

filed this Emergency Motion before this Court.

## V.   STANDARD OF REVIEW

Appellant asserts that the Order was decided as a matter of law, and a *de novo*

review on appeal. Since no deference is owed to the trial court's ruling on a legal

question, the "plain legal error" standard of review is applied. *Suarez v. Halbert*,

246 Ga. App. 822, 824 (1) (543 S.E.2d 733) (2000), as the Order violates the due

process and the right to access to the Courts afforded Appellant under the Georgia

Constitution.

## VI.   ARGUMENTS AND CITATIONS OF AUTHORITIES

**A.   The Order Erroneously Permits Illegal Reverse-Veil Piercing and Allows for Accountings, Business Records and Control over Non-Judgment-Debtor Entities.**

Georgia law provides for the appointment of a receiver "[w]hen any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected[.]" OCGA § 9-8-1. This is an equitable remedy, similar to an interlocutory injunction. *See* generally *Patel v. State of Ga.*, 289 Ga. 479, 482 (1), 713 S.E.2d 381 (2011) (interlocutory injunction and receivership both apply equitable principles to protect parties during pendency of litigation). As such, it is appropriate "only where there is no available adequate and complete

-12-

remedy at law." *Cantrell v. Henry County*, 250 Ga. 822, 824 (1), 301 S.E.2d 870 (1983). *See* generally OCGA § 23-1-3 ("Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done."). "The power of appointing receivers should be prudently and cautiously exercised and except in clear and urgent cases should not be resorted to." OCGA § 9-8-4.

*Nayyar v. Bhatia*, 824 S.E.2d 675 (Ga. App. 2019).

In this instant case, there is no "fund or property" at issue in this litigation. The Receiver Order is overly broad and merely identifies the "assets" to be "protected" as everything he owns directly or indirectly or manages or controls, even though he does not own it.

The Supreme Court of Georgia held there is no cause of action for "reverse-piercing" of the corporate veil whereby the traditional veil piercing doctrine is extended to allow a third-party creditor to pierce the veil to satisfy the debts of an individual out of the corporation's assets. *Acree*, 881– 883. The Supreme Court refused to recognize a plaintiff's "reverse piercing" claim as an equitable cause of action because there were other adequate remedies available at law. *Id.* at 883, 585 S.E.2d 873. The Order is directly violative of the rule established in *Acree*. Appellee has availed itself of its available legal remedies such as the obtainment of charging orders, garnishments, and stock levy.

The Order requires an expansive production of confidential books and records of non-judgment debtor entities. Order at ¶¶ 8C and 8D, § II. This relief

-13-

sidesteps well established Georgia statue and law. O.C.G.A. § 14-11-504. ("[T]he court may charge the limited liability company interest of the [judgement-debtor member] or such assignee with payment of the unsatisfied amount of the judgement with interest. To the extent so charged, the judgment creditor ***has only the rights of an assignee of the limited liability company interest***.") (Emphasis added).

Further, as this Court noted, "[i]n *Gaslowitz,* we held that a judgment creditor of a member of an LLC has no right to seek an accounting of the assets of the LLC. 331 Ga. App. at 115(2), 770 S.E.2d 245." *Merrill Ranch Properties, LLC v. Austell*, 336 Ga. App. 722, n.20 (2016). "Thus, from the limited liability company's standpoint, it is business as usual except that any distributions to the member subject to the charging order are diverted to the judgment creditor." *Mahalo Investments III, LLC v. First Citizens Bank & Trust Co., Inc.,* 330 Ga. App. 737, 743, 769 S.E.2d 154 (2015).

A judgment creditor is not entitled to expansive post-judgment discovery of information that is not relevant to its potential post-judgment collection activities, particularly information about the assets of non-judgement parties. *Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152 (2015); *Esaky v. Forrest*, 231 Ga. App. 488 (the proper scope of Appellee's discovery is those assets "which are subject to levy to satisfy the judgment"); *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411 (2016) (allowing discovery of "information which would lead to any property

-14-

or sources of income of the judgment debtor"). In this case, the appointed Receiver is clearly acting for the benefit of the judgment creditor Choate. The Order specifically states: Leventhal shall answer under oath to the Receiver all questions which the Receiver may put to him and produce all documents as required by the Receiver regarding the business of Leventhal and the Receivership Assets, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Choate. Order at 14 ¶15.

A judgement creditor is only entitled to discover a judgment debtor's interest in entities to levy or seek a charging order against those interests. It does not follow that a creditor is entitled to discover the assets or financial affairs of those entities as a member of an LLC has no right to the specific assets of that company. O.C.G.A. § 14-11-501. As a result, the assets of an LLC are not subject to levy to satisfy Appellee's judgment and those assets are irrelevant to post judgment discovery or actual collection. *Gaslowitz*, 331 Ga. App. at 156; *Merrill*, 336 Ga. App. at 730 ("[W]here the creditor of a member of the LLC does not also have a debtor-creditor relationship with the LLC, the creditor does not also become a creditor of the LLC by obtaining a charging order against the LLC."); *Workman v. RL BB ACQ 1-GA CVL, LLC*, 814 S.E.2d 696, 697-701 (Ga. 2018) (After being awarded a protective order barring a judgment creditor from seeking financial information of non-

-15-

debtors, such non-debtors were entitled to seek attorneys' fees under O.C.G.A. § 9-11-37(a)(4(A)).

**B.    The Order Was Erroneously Issued After the Trial Court Was Divested with Jurisdiction.**

The Order was entered after the trial court's jurisdiction terminated. This error independently requires ultimate reversal and a stay of the Order currently.

It is well established in Georgia that the trial court loses jurisdiction upon the filing of a Notice of Appeal and is prohibited from modifying or enforcing the order or judgment on appeal. *See Fred Jones Enters., LLC v. Williams*, 331 Ga. App. 481 *; 771 S.E.2d 163 **; 2015 Ga. App. LEXIS 181. *** ("Notice of appeal divests the trial court of jurisdiction to supplement, amend, alter, or modify the judgment while the appeal of that judgment remains pending."). Here, on March 22, 2021, the trial court entered the Second SMO. The Second SMO was appealed on April 30, 2021, to this Court. The Second SMO was a final order of the trial court because it required an accounting to be provided by Appellant and non-party, non-judgment debtor entities, that are not liable to Appellee. Nevertheless, although the loss of jurisdiction was brought to the trial court's attention in advance of the entry of the Order, the Order supplemented, amended, altered or modified the relief granted in the Second SMO since the relief in the Order granted similar relief to the relief in

-16-

Respectfully submitted this 28th day of June 2021.

DUPREE, KIMBROUGH, CARL &
REILLY, LLP

/S/ Hylton B. Dupree, Jr.
HYLTON B. DUPREE, JR.
GEORGIA STATE BAR NO. 234800
ATTORNEY FOR APPELLANT

/S/ Blake R. Carl.
BLAKE R. CARL
GEORGIA STATE BAR NO. 272829
ATTORNEY FOR APPELLANT

49 Green Street
Marietta, Georgia 30060
(770) 424-7171

## IX.

## <u>CERTIFICATE OF SERVICE</u>

This will certify that I have, this day, delivered and served a true and exact

copy of **APPELLANT SCOTT L. LEVENTHAL'S EMERGENCY MOTION**

**TO STAY**, upon the opposing counsel, by email and electronic service Pursuant to

Rule 40(b)(4), as well as by placing a true and exact copy of same in the United

States Mail with adequate postage affixed thereto and addressed as follows:

Chad Hayes, Esq.
Kevin Hudson, Esq.
Fay Slaveikis, Esq.
<u>HUDSON PARROTT WALKER, LLC</u>
<u>3575 Piedmont Road</u>
<u>Fifteen Piedmont Center, Suite 850</u>
<u>Atlanta, Georgia 30305</u>
<u>khudson@hlpwlaw.com</u>
<u>chayes@hlpwlaw.com</u>
<u>FSlaveikis@hlpwlaw.com</u>

Patrick Braley, Esq.
BENNETT THRASHER
Riverwood 200
3300 Riverwood Parkway
Suite 700
Atlanta, Georgia 30339
<u>Patrick.Braley@btcpa.net</u>

Henry Sewell, Esq.
2964 Peachtree Road, NW
Suite 555
Atlanta, Georgia 30305
<u>hsewell@sewellfirm.com</u>

Louis McBryan, Esq.

1

McBryan, LLC.
6849 Peachtree Dunwoody Road
Building B-3, Suite 100
Atlanta, Georgia 30328
lmcbryan@mcbryanlaw.com

This 28th day of June, 2021.

DUPREE, KIMBROUGH, CARL &
REILLY, LLP

/S/ Hylton B. Dupree, Jr.
HYLTON B. DUPREE, JR.
GEORGIA STATE BAR NO. 234800
ATTORNEY FOR APPELLANT

/S/ Blake R. Carl
BLAKE R. CARL
GEORGIA STATE BAR NO. 272829
ATTORNEY FOR APPELLANT

49 Green Street
Marietta, Georgia 30060
(770) 424-7171

2